IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Orly TAITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:14-cv-00119 |
| | ) | |
| v. | ) | |
| | ) | |
| Jeh JOHNSON, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

## **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................... 1

BACKGROUND.................................................................................................... 3

    A.    Plaintiff's Allegations and Claims.................................................... 3

    B.    Legal Background. ............................................................................ 5

        1.    Executive Authority to Administer Immigration and Immigration Proceedings.................................................................. 5

        2.    The Executive Branch's Enforcement Discretion........................... 8

        3.    Deferred Action for Childhood Arrivals ("DACA"). ..................... 9

        4.    Laws Relating to Health and Immigration. ................................... 11

LEGAL STANDARD. ......................................................................................... 12

ARGUMENT. ...................................................................................................... 13

    I.    Plaintiff Cannot Meet the Elements Required to Warrant a Preliminary Injunction.. 13

        A.    Plaintiff Has Not Established a Likelihood of Success on the Merits........... 13

            1.    Plaintiff lacks standing to bring her claims. ..................................... 13

                a.    Article III Standing. ................................................. 13

                b.    Plaintiff lacks prudential standing to challenge the Secretary's Enforcement of the INA. ..................................... 17

            2.    The case is otherwise beyond the Court's jurisdiction. .................... 17

            3.    Even if this Court had jurisdiction, Plaintiff cannot prevail on the merits of her claims.. ......................................................... 20

        B.    Plaintiff cannot show a likelihood of irreparable harm in the absence of preliminary relief.. ......................................................... 21

        C.    The balance of equities does not tip in Plaintiff's favor.. .............................. 22

        D.    The relief requested is not in the public interest.. ........................................... 22

    II.    This Court should either strike or deny Plaintiff's subsequent motions.

CONCLUSION. ....................................................................................................... 25

## TABLE OF AUTHORITIES

## CASES

Arizona v. United States,
    132 S. Ct. 2492 (2012). ........................................................................ 2, passim

Aransas Project v. Shaw,
    --- F.3d. -- 2014 WL 2932514 (5th Cir. June 30, 2014). .................................. 14

Bennett v. Spear,
    520 U.S. 154 (1997). ...................................................................................... 17

Califano v. Yamasaki,
    442 U.S. 682 (1979). ...................................................................................... 24

Chamber of Greater Baton Rouge v. EPA,
    323 F. Supp. 2d 769 (M.D. La. 2004) ............................................................. 19

Clapper v. Amnesty Int'l USA,
    133 S.Ct. 1138 (2013). .................................................................................. 14

Clinton County Com'rs v. EPA,
    116 F.3d 1018 (3d Cir. 1997). ........................................................................ 19

DaimlerChrysler Corp. v. Cuno,
    547 U.S. 332 (2006). ...................................................................................... 13

Erickson v. Pardus,
    551 U.S. 89 (U.S. 2007). .................................................................................. 3

Federation for Am. Immigration Reform v. Reno,
    93 F.3d 897 (D.C. Cir. 1996) cert. denied, 521 U.S. 1119 (1997). .................. 17

Flores v. Reno,
    CV-85-4544-RJK (C.D. Cal.). ..................................................................... 7, 19

Heckler v. Chaney,
    470 U.S. 821 (1985). ...................................................................................... 17

Karsha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,
    335 F.3d 357 (5th Cir. 2003). ......................................................................... 13

Kentucky v. Graham,
    473 U.S. 159 (1985).......................................................................................... 19

Knauff v. Shaughnessy,
    338 U.S. 537 (1950)........................................................................................... 5

Lance v. Coffman,
    549 U.S. 437 (2007).......................................................................................... 15

Lion Health Serv., Inc. v. Sebelius,
    635 F.3d 693 (5th Cir. 2011). .......................................................................... 24

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992).......................................................................................... 15

Lummis v. White,
    629 F.2d 397 (5th Cir.1980), *rev'd on other grounds*, *Cory v. White*, 457 U.S. 85 (1982)
    ................................................................................................................... 20

Munaf v. Geren,
    553 U.S. 674 (2008).......................................................................................... 13

NAACP v. Kyle,
    626 F.3d 233 (5th Cir. 2010). .......................................................................... 13

Nat'l Rifle Ass'n v. ATF,
    700 F.3d 185 (5th Cir. 2012). .......................................................................... 13

Norton v. S. Utah Wilderness Alliance,
    542 U.S. 55 (2004)............................................................................................ 24

Reno v. Am.-Arab Anti-Discrimination Comm. ("AAADC"),
    525 U.S. 471 (1999)...................................................................................... 8, 18

Ridgely v. FEMA,
    512 F.3d 727 (5th Cir. 2008). .......................................................................... 22

Summers v. Earth Island Inst.,
    555 U.S. 488 (2009).......................................................................................... 14

Texas v. United States,
    106 F.3d 661 (5th Cir. 1997). .......................................................................... 18

U.S. v. Nava-Martinez,
    No. B-13-441-1, 2013 WL 8844097 (S.D. Tex Dec. 13, 2013). ................................. 7, 21

-iv-

United States v. Richardson,
  418 U.S. 166 (1974)............................................................ 15

United States v. White Mountain Apache Tribe,
  537 U.S. 465 (2003)............................................................ 19

Valley Forge Christian College v. Americans United for Separation of Church & State,
  454 U.S. 464 (1981)............................................................ 16

Winter v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008)............................................................ 12, 21

## STATUTES

8 U.S.C. § 1101 *et seq*............................................................ 2

8 U.S.C. § 1101(a)(15)............................................................ 11

8 U.S.C. § 1103(a)............................................................ 5, 18

8 U.S.C. § 1182(a)(1)............................................................ 14

8 U.S.C. § 1182(a)(1)(A)............................................................ 11

8 U.S.C. § 1182(a)(1)(B)............................................................ 11

8 U.S.C. § 1182(g)(1)............................................................ 11

8 U.S.C. § 1182(d)(5)............................................................ 12

8 U.S.C. §§ 1221 - 1232............................................................ 19

8 U.S.C. § 1222 ............................................................ 12

8 U.S.C. § 1225............................................................ 6

8 U.S.C. § 1225(b)(1)............................................................ 6

8 U.S.C. §1225(b)(1)(A)(i)............................................................ 7

8 U.S.C. § 1226............................................................ 6

8 U.S.C. § 1226a............................................................ 6

8 U.S.C. § 1226(a)............................................................ 12

8 U.S.C. § 1226(c). .................................................................................. 12

8 U.S.C. § 1226(e). .................................................................................. 19

8 U.S.C. § 1229a. ....................................................................................... 6

8 U.S.C. § 1229(a). ................................................................................... 14

8 U.S.C. § 1229a(a)(3). ......................................................................... 6, 18

8 U.S.C. § 1229a(c)(4). .............................................................................. 6

8 U.S.C. § 1232. .......................................................................................... 7

8 U.S.C. § 1232(a)(5)(D). .......................................................................... 7

8 U.S.C. § 1252. .......................................................................................... 6

8 U.S.C. § 1252(e). ..................................................................................... 7

8 U.S.C. § 1252(f). .................................................................................... 19

8 U.S.C. § 1324. ..................................................................................... 4, 20

18 U.S.C. § 2381. ................................................................................... 4, 20

28 U.S.C. § 1332. ...................................................................................... 20

42 U.S.C. § 34.1 *et seq.*............................................................................ 11

42 U.S.C. § 70 .......................................................................................... 12

42 U.S.C. § 71. ......................................................................................... 12

42 U.S.C. § 252. ....................................................................................... 11

42 U.S.C. § 264. ....................................................................................... 12

Consolidated Appropriations Act, Pub. L. No. 113-76, Div. F, Tit. i, 128 Stat. 5 (2014)............. 23

## **REGULATIONS**

8 C.F.R. § 212.5. ...................................................................................... 12

8 C.F.R. § 1240.1. ....................................................................................... 6

8 C.F.R. § 274a.12(c)(14). ................................................................................................ 10

## **MISCELLANEOUS**

Fed. R. Civ. P. 8(a). ........................................................................................................ 3

Fed. R. Civ. P. 8(e). ........................................................................................................ 3

U.S. Const., Art. I, § 8, cl. 4............................................................................................ 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| Orly TAITZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:14-cv-00119 |
| | ) | |
| v. | ) | |
| | ) | |
| Jeh JOHNSON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE**

Defendants, by and through undersigned counsel, respond to the Court's August 1, 2014 Order, which orders the Government "to show cause why the emergency relief requested in Plaintiff's Emergency Application for Stay/Injunction should not be granted." (ECF No. 10).  On August 1, 2014 Counsel for Defendants notified the Attorney General's Office of the State of California about the existence of this lawsuit, per this Court's Order. (ECF No. 10).

## **INTRODUCTION**

Plaintiff does not, and cannot, demonstrate any basis for granting her Emergency Application ("Application").  *See* ECF No. 1.  The numerous jurisdictional and legal flaws in her pleading – of which her lack of standing looms largest – foreclose any possibility of success on the merits, thereby rendering a preliminary injunction unavailable.  Indeed, because Plaintiff presents nothing more than a generalized grievance that is insufficient to establish jurisdiction, "the [C]ourt cannot proceed *at all* in any cause."  *NAACP v. Kyle*, 626 F.3d 233, 237 (5th Cir. 2010).  Nor has Plaintiff

identified a waiver of sovereign immunity that would provide this Court with jurisdiction to hear her claims.

Plaintiff's pleading, moreover, proceeds from a flawed legal theory.  Plaintiff mixes an array of inapposite criminal statutes with implausible allegations that Secretary Johnson, Secretary Burwell, and President Obama's conduct violates the law,  while neglecting to cite any portion of the actual governing civil laws: those contained in the Immigration and Nationality Act (INA), as amended, 8 U.S.C. § 1101 *et seq.*  These statutes form the backbone of the Executive Branch's immigration authority, and they directly undercut her claims.  As the Supreme Court recently reiterated, the Government's "broad, undoubted power over the subject of immigration and the status of aliens," makes clear that "[a] principal feature of the removal system is the broad discretion exercised by immigration officials." *See Arizona v. United States*, 132 S. Ct. 2492, 2499 (2012).

Plaintiff – a dentist and attorney – has also failed to establish that she is likely to suffer any imminent irreparable injury absent an injunction halting, among other things, the Government's transportation and release of aliens crossing the United States' border with Mexico. On this basis alone, her application should be denied.  In fact, Plaintiff has not demonstrated any causative link between the Government's actions and her claimed injury at all – a deficiency that simultaneously confirms her lack of standing and her inability to meet her burden for a preliminary injunction.

As a final matter, the balance of harms and public interest weigh heavily against granting the preliminary relief requested.  The requested injunction – which essentially asks this Court to close the borders and transform its administration of the U.S. – Mexico

border, especially involving  minors, in accordance with Plaintiff's personal preferences

– could (i) pose a safety risk by diverting much-needed resources from the removal of

aliens who are serious criminals, repeat offenders, or who otherwise pose national

security risks; and (ii) undermine the public interest by precluding the Government from

considering individual circumstances in processing aliens including the Department of

Homeland Security (DHS) and the Department of Health and Human Services (HHS),

from considering individual circumstances and from complying with other existing laws,

such as the William Wilberforce Trafficking Victims Protection Reform Act of 2008.

For any of these reasons, this Court should decline to grant Plaintiff's Application

and dismiss this case in its entirety.

## **BACKGROUND**

### A.  **Plaintiff's Allegations and Claims**

The Application contains myriad of allegations, contained partly in the Statement

of Facts.[1]  Plaintiff initially describes the subject of this case as transportation of "illegal

aliens"[2] with infectious diseases and criminal record[s]," ECF No. 1 at 3("Application").

Plaintiff then claims that on June 15, 2012, President Obama instituted Deferred Action

---

[1]  The argument section of the Application incorporates many statements from interpretations or quotations of news reports, leaving the allegations in the document unclear.  *See*, *e.g.,* ECF No.1 at 10.  The Government seeks to respond fully to the Court's Order to Show Cause, but it respectfully objects to the pleading, which falls far short of the basic requirement to submit a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Defendants also note that there is no underlying document on file in this case which could be treated as a Complaint.

Pleadings must be construed "so as to do justice," Fed. R. Civ. P. 8(e), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  However, Defendants note that Plaintiff  is a licensed attorney, has held herself out as such in this case, and moved to appear *pro hoc vice*.  *See e.g.*, ECF No. 1 at 4; ECF No. 18.  Rule 8 does not require liberal construction of the instant Application.

[2]  Plaintiff's Application uses terminology, including "illegals" and "illegal alien," which the Government declines to employ.  The Government respectfully refers the Court to the definitions section of the INA, which defines "alien," immigrant," and other relevant terms.  Unless otherwise indicated by quotations of Plaintiff's terms, the Government employs the INA's terms of art in accordance with their statutory meaning.

for Childhood Arrivals (DACA) , and renewed it in 2014, "to stay deportation of minor illegal aliens for two years," and then "created an elaborate plan" with Secretary Jeh Johnson of the Department of Homeland Security ("DHS") to "effectuate de facto smuggling and trafficking."   ECF No. 1 at ¶  5.  Plaintiff alleges that these "unlawful and unconstitutional" actions "flooded" the nation with aliens and "created epidemics" of diseases including tuberculosis, measles, scabies, pertussis, lice, swine flu, and bacterial pneumonia.  *Id.*  at ¶ 6; *see also* 22-23 (scabies); 23-24 (tuberculosis); 25-26 (lice); 28-29 (other diseases).  Plaintiff, as a health care provider, is allegedly "at risk of being infected with diseases transmitted by these illegal aliens or might have already been infected."  *Id.* at ¶ 10.  In support of this, she alleges that "[s]everal of her patients presented themselves with a persistent cough" and that she "developed a persistent cough," which, after chest x-rays to check for tuberculosis, yielded inconclusive results.  Declaration of Dr. Orly Taitz, ESQ, ECF No.1 -1 ¶¶ 8-10.

To the extent Plaintiff sets forth any legal claim in her pleadings, it appears not to be a civil claim at all, but rather, that Government officials have transgressed against criminal statutes.  She alleges that Defendants "flagrantly engaged and [are] continuously engaging in egregious violation" of 8 U.S.C. § 1324, which sets forth criminal penalties for alien smuggling, and 18 U.S.C. § 2381, the treason statute.  ECF No. 1 at 11-16.  She speculates that these purported violations were intended to facilitate an "orchestrated invasion," allegedly in collusion with criminal cartels to supply cheap labor.  *Id.* at 17-18.

Her allegations of this purportedly "criminal" behavior include references to "crime," "terrorism," "street gangs," "theft," and other types of supposed wrongdoing. [3]

As to relief, the Application broadly seeks: (1) to [stay] implementation of DACA,"  (2) a "stay of transportation of illegal aliens from the Southern District of Texas" due to alleged health, national security, crime, and economic threats; (3) either an "emergency immediate turnaround and deportation … or their two months' quarantine" due to alleged infectious disease risks; and (4) "emergency stay" of the release of "illegal aliens" who do not meet Plaintiff's own requirements for their  medical, criminal, and judicial screening.  ECF No. 1 at 2-3; Prayer for Relief, ECF No. 1 at 40-41.

### B.    Legal Background

#### 1.    Executive Authority to Administer Immigration and Immigration Proceedings

The Government's authority over the subject of immigration and aliens rests, in part, on its Constitutional power to "establish an uniform Rule of Naturalization," U.S. Const., Art. I, § 8, cl. 4, and on its inherent power as sovereign to control and conduct relations with foreign nations.  *Arizona*, 132 S.Ct. at 2492.  Congress has charged the Secretary of Homeland Security and his designees with the enforcement of the nation's immigration laws, *see* 8 U.S.C. § 1103(a), and, in so doing, has crafted "a field where flexibility . . . constitute[s] the essence of the program." *Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950).

Specifically, Congress has established a statutory scheme for the removal of aliens.  The Immigration and Nationality Act provides for the inspection, processing,

---

[3] Although these claims include a reference to "Plaintiffs and similarly situated individuals," there is only one Plaintiff in this case, and this case is filed as an individual action.  *See generally* ECF No. 1; Civil Cover Sheet.

detention and removal of aliens.  *See, e.g.*, 8 U.S.C. §§ 1225 (inspection of aliens and expedited removal) 1226 (detention of aliens pending removal); 1226a (terrorist aliens) 1229a (removal proceedings), 1252 (judicial review of orders of removal).  In general, aliens found within the interior of the United States who may be inadmissible or deportable are placed in formal removal proceedings under 8 U.S.C. § 1229a. Such proceedings are "[u]nless otherwise specified in this Act . . . the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."   8 U.S.C. § 1229a(a)(3).  An immigration judge within the Executive Office of Immigration Review (EOIR) of the Department of Justice determines whether the alien is removable and whether the alien is eligible for asylum or other types of relief from removal.  8 C.F.R. § 1240.1 (describing functions of immigration judges).  An alien placed in removal proceedings, which are adversarial, is afforded certain rights and privileges.  *See*, *e.g.*, 8 U.S.C. § 1229a(c)(4).  Generally, an immigration judge's decision may be appealed to EOIR's Board of Immigration Appeals and then, as authorized by statute, to federal court.  *See, e.g.*, 8 U.S.C. § 1252.

In certain circumstances, Congress has provided for expedited removal of aliens. Since 1997, certain arriving aliens who have not been lawfully admitted to the United States are subject to a streamlined process under 8 U.S.C. § 1225(b)(1) known as expedited removal.  The expedited removal process is generally required by law to be used for specified categories of arriving aliens, including those who lack valid documents authorizing their admission.  *See id.*  In the expedited removal process, an immigration officer generally comes into contact with an arriving alien at a U.S. port of entry or land

border and determines the alien is inadmissible on a ground for which expedited removal is available.  Then, the immigration officer may order the alien's removal from the United States.  8 U.S.C. §1225(b)(1)(A)(i).  Judicial review of expedited removal is extremely limited in scope.  8 U.S.C. § 1252(e).

Via the enactment of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (2008 TVPRA) (P.L. 110-457, § 235), Congress has established specific requirements for the removal of unaccompanied alien children (UACs) from the United States.  Section 1232 contains this and other provisions setting forth rules for protecting alien children.  *See* 8 U.S.C. § 1232(a)(5)(D).

Finally, the Settlement Agreement of *Flores v. Reno,* CV–85–4544–RJK (C.D. Cal.) also provides guidance to the Government regarding the nationwide policy for the detention, release, and treatment of minors in immigration custody.[4]  *Flores* challenged the arrest, processing, detention and release of UACs who were in the country illegally. The legacy Immigration and Naturalization Service agreed to the settlement's various provisions.  This agreement, which covers all detained minors, contains, among other things, provisions favoring release, and sets forth an order of preference for release.  *See* Agreement at 9-10.

---

[4] Defendants seek to clarify the status of the *Flores* settlement agreement, in light of this Court's statements in *U.S. v. Nava-Martinez,* No. B-13-441-1 (Dec. 13, 2013).  First, the agreement is public and not sealed.  *See* Settlement Agreement, *Flores v. Reno*, January 17, 1997, attached at Appendix 2.  Second, although the original agreement contained a five-year validity period, by a December 7, 2001 stipulation, the termination of the agreement was amended to be triggered by the issuance of regulations.  *See* Stipulation, *Flores v. Reno,* Appendix 3.  To date, such regulations have not issued.  *See id.*

7

### 2.    The Executive Branch's Enforcement Discretion

Administration and enforcement of the immigration laws takes place at the United States' land borders with Mexico and Canada, as well as ports of entry, the interior of the nation, and various other points worldwide.  But as with any effort to administer and enforce laws, the Government's resources are limited.

Consistent with its limited resources and need to prioritize its efforts so as to maximize effectiveness, the Executive Branch has long exercised prosecutorial discretion in the immigration context, including discretion in the form of deferred action – a practice that the Supreme Court has specifically endorsed. *See Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AAADC*"), 525 U.S. 471, 483-84 (1999) ("At each stage [of the removal process] the Executive has discretion to abandon the endeavor, and at the time Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) was enacted the INS had been engaging in a regular practice (which had come to be known as 'deferred action') of exercising that discretion for humanitarian reasons or simply for its own convenience").  The direction to immigration enforcement personnel to use discretion as appropriate on a case-by-case basis dates back to at least 1976.

More recently, the Supreme Court explicitly recognized the Executive Branch's authority to exercise prosecutorial discretion in immigration enforcement, including in decisions – like those challenged here – deferring the initiation of removal proceedings. *See Arizona*, 132 S. Ct. at 2499 ("[f]ederal officials, as an initial matter, must decide whether it makes sense to pursue removal at all").

### 3. Deferred Action for Childhood Arrivals ("DACA")

The DACA program exercises the Executive Branch's longstanding enforcement discretion.  Over the past two years, the Secretary of Homeland Security and the Director of ICE have issued guidance to Department personnel on how to expend the Department's scarce enforcement resources to best effectuate the Department's enforcement priorities. Plaintiff's Application seeks to enjoin the continued implementation of these memoranda.

Recognizing that the possible candidates for removal far exceed the Department's removal capacity in any individual year, DHS – just like any other law enforcement agency – necessarily must prioritize its enforcement efforts. Deferred action allows the Department to "defer" enforcement against low priority candidates for removal so as to focus the agency's scarce resources on high priority candidates for removal, such as criminal aliens and aliens who pose threats to public safety or national security.[5]

On June 15, 2012, the former Secretary of Homeland Security, Janet Napolitano, issued a memorandum outlining how DHS should exercise its "prosecutorial discretion" in the form of consideration of deferred action of removal proceedings for certain "low priority cases" involving "young people who were brought to this country as children."

---

[5] Indeed, Congress has directed DHS to "prioritize the identification and removal of aliens convicted of a crime by the severity of that crime." Department of Homeland Security Appropriations Act, 2012, Pub. L. No. 112-74, Div. D, Tit. ii, 125 stat. 950 (2011); *accord, e.g.*, Department of Homeland Security Appropriations Act, 2010, Pub. L. No. 111-83, Tit. II, 123 Stat. 2142 (2009) (same); Department of Homeland Security Appropriations Act, 2009, Pub. L. No. 110-329, Div. D, Tit. II, 122 Stat. 3659 (2008) (same); *see also* H.R. Rep. 111-157, at 6 (2009) ("[R]ather than simply rounding up as many illegal immigrants as possible, which is sometimes achieved by targeting the easiest and least threatening among the undocumented population, DHS must ensure that the government's huge investments in immigration enforcement are producing the maximum return in actually making our country safer.").

See June 15, 2012, Memorandum from the Secretary of Homeland Security to David V. Aguilar, Acting Commissioner of the U.S. Customs and Border Protection ("CBP"), Alejandro Mayorkas, Director of the U.S. Citizenship and Immigration Services ("USCIS"), and John Morton, Director of U.S. Director of ICE ("DHS June 15 Memo"), attached as Appendix 1. The Secretary's memorandum lists several guidelines that "should be satisfied before an individual is considered for an exercise of prosecutorial discretion pursuant to this memorandum," such as coming "to the United States under the age of 16," and "continuously resid[ing] in the United for [at] least five years preceding the date of this memorandum." Appendix 1 at 1.

Deferred action does not offer any change in immigration status to the alien whose removal is deferred. Indeed, the Secretary's memorandum makes clear that it "confers no substantive right, immigration status or pathway to citizenship." Appendix 1 at 3. Thus, the memorandum is simply a formal statement of the Department's effort to avoid allocating scarce resources in inefficient ways. DACA also serves the legitimate law enforcement purpose of facilitating the ability of the DHS to obtain knowledge of the presence of immigrants in the United States who would otherwise be unknown to the Government.

The Secretary's memorandum also notes that for individuals whose removal is deferred, USCIS shall accept applications to determine whether these individuals qualify for employment authorization during this period of deferred action. *See id.* The ability to seek employment authorization in cases of deferred action is not new, but is provided for by a preexisting regulation. See 8 C.F.R. § 274a.12(c)(14). Plaintiff does not challenge the validity of that regulation.

### 4.  Laws Relating to Health and Immigration

Congress has mandated specific health-related grounds of inadmissibility.  For instance, any alien "who is determined … to have a communicable disease of public health significance" or who falls within the vaccination requirements, or who has a disqualifying physical or mental disorder, or who is a drug addict is inadmissible.  8 U.S.C. § 1182(a)(1)(A).  However, even the presence of a disqualifying condition is not a complete bar to admissibility; Congress has specifically authorized waivers.  *See* 8 U.S.C. §§ 1182(a)(1)(B), 1182(g)(1).  The Surgeon General must provide for, subject to regulations, medical examinations of aliens that are required by the immigration laws. *See* 42 U.S.C. § 252.  Regulations govern the medical examination of aliens, including definitions of what is a communicable disease of public health significance, and the scope of the examinations.  42 U.S.C. § 34.1 *et seq.*  Currently, scabies, chicken pox, measles, whooping cough, swine flu and lice are not listed as diseases of public health significance.

However, neither statute nor regulations require health examinations for all aliens seeking entry or admission to the United States.[6]  *See id.*  Plaintiff's desired relief could ultimately include a chest x-ray and blood test for every arriving foreign tourist, but the law does not require this.  A foreign national who applies for an immigrant visa[7] while abroad, or an alien seeking to adjust status to permanent residence while in the United

---

[6] Plaintiff's statement that individuals who arrive legally "are required to undergo health checks" and other measures is erroneous.  *See* ECF No. 9 at 42.

[7] An "immigrant visa" is for permanent residence in the United States.  Nonimmigrant visas, such as for tourists, students, and temporary workers, have different requirements. *See* 8 U.S.C. § 1101(a)(15) (defining "immigrant").

States must undergo a medical examination by a civil surgeon, or, if abroad, a physician designated by the Department of State.  The physician then completes and signs Form I-693, Report of Medical Examination and Vaccination Record, or the form DS-2053, Medical Examination for Immigrant or Refugee Applicant.[8]

As for health-related detention of aliens, the Immigration and Nationality Act requires only that immigration and/or medical officers subject aliens to observation and examination sufficient to determine inadmissibility.  *See* 8 U.S.C. § 1222.[9]  Mandatory detention during the pendency of removal proceedings is reserved for certain criminal aliens.  *See* 8 U.S.C. § 1226(c).  Generally, however, criminal aliens may be paroled into the United States pending their proceedings.  8 U.S.C. § 1226(a).[10]

## LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that a balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] preliminary injunction is 'an extraordinary remedy' which should only be granted if the party seeking the injunction has 'clearly carried the burden of persuasion' on all four

---

[8]  Form DS-2053 is available at http://photos.state.gov/libraries/vietnam/8621/pdf-forms/DS-2053.pdf (site last checked August 4, 2014).

[9]  Section 361 of the Public Health Service Act, 42 U.S.C. § 264, and implementing regulations, 42 U.S.C. §§ 70 and 71, authorizes the Secretary of Health and Human Services to take limited measures to prevent the entry and spread of communicable disease from foreign countries into the United States.  The Centers for Disease Control and Prevention (CDC) carry out these functions on a daily basis.  However, there is no authority for a general, mandatory quarantine for undocumented aliens.

[10]  8 U.S.C. § 1182(d)(5) also provides authority to parole aliens into the United States. *See also* 8 C.F.R. § 212.5.

12

requirements." *See Karsha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003) (citation omitted).

Even at the preliminary injunction stage, a reviewing Court may terminate the litigation. *See Munaf v. Geren*, 553 U.S. 674, 692 (2008) (finding it appropriate to "terminate the litigation" at the preliminary injunction stage if the "Government is entitled to judgment as a matter of law").

## ARGUMENT

I.   **Plaintiff cannot meet the elements required to warrant a preliminary injunction.**

A.   **Plaintiff has not established a likelihood of success on the merits.**

1. *Plaintiff lacks standing to bring her claims*

a.  *Article III Standing*

Federal courts sit to decide cases and controversies, not to resolve disagreements on policy or politics. Indeed, "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (citation and internal quotation omitted). Plaintiff's policy dispute regarding the Executive Branch's enforcement of the immigration laws does not satisfy the most basic prerequisite of a case or controversy under Article III: a claimant with standing to sue.

Plaintiff bears the burden of establishing [her] standing." *Nat'l Rifle Ass'n v. ATF*, 700 F.3d 185, 190 (5th Cir. 2012). "Article III standing is a jurisdictional requirement," *Kyle*, 626 F.3d at 237, and "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Id*. For standing, a plaintiff must demonstrate the "triad of injury in

fact, causation, and redressability." *Aransas Project v. Shaw*, --- F.3d. ---, 2014 WL
2932514 (5th Cir. June 30, 2014).  These requirements assure "that there is a real need to
exercise the power of judicial review in order to protect the interests of the complaining
party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  "Where that need does
not exist, "allowing courts to oversee legislative or executive action would significantly
alter the allocation of power away from a democratic form of government." *Id*. (internal
alternations and citation omitted).

The Government does not concede the facts alleged in the Application.  However,
even taking the Application's allegations as true for purposes of analyzing standing,
Plaintiff has met none of the required elements.  Her alleged injury is not concrete, as she
has not identified a particularized invasion of a legally protected interest.  Although the
statutes governing the arrival of aliens may create a legally protected interest for the
arriving aliens, none creates such an  interest for members of the general public or for
health care providers.  *See*, *e.g.,* 8 U.S.C. § 1229(a) (governing removal of aliens).; 8
U.S.C. § 1182(a)(1) (health grounds of inadmissibility).  Further, Dr. Taitz's claimed
communicable disease injury is not a concrete and imminent harm.  Although she argues
that lice, tuberculosis, scabies, chicken pox, measles, whooping cough, swine flu, and
"other infectious diseases" require a two-month quarantine, she does not claim to suffer
from any of these conditions or identify a "certainly impending" risk of those diseases
that would be more than a risk of "possible future injury." *Clapper v. Amnesty Int'l USA*,
133 S.Ct. 1138, 1147 (2013);  *see* ECF No. 1 at 25.  The only specific injury Dr. Taitz
alleges is identified is a "persistent cough," but a person may cough for any number of
reasons and given that Dr. Taitz admits that a medical examination of the cause of her

cough was "inconclusive," her allegation falls far short of alleging she has acquired a communicable disease traceable to an alien.. ECF 1-1 at 4, ¶ 9.

Apart from the cough discussed above, Taitz's chief purported injury appears to be that alien immigrants may heighten the risk of infectious diseases, crime, or terrorism, which may put her or other members of the public at risk.  S*ee, e.g.*, ECF No. 1 at 6, 27. The Supreme Court has consistently admonished that "'a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in [the] proper application of the Constitution and laws, and seeking relief that no more directly [or] tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). *United States v. Richardson*, 418 U.S. 166, 179-80 (1974)) ("to invoke judicial power the [plaintiff] must have a personal stake in the outcome, or a particular, concrete injury . . . in short, something more than 'generalized grievances.'") (internal quotations and citations omitted).

Here, Plaintiff has brought a claim based on claimed abstract injuries allegedly occurring as an eventual consequence from the Executive Branch's determinations about how to use finite resources to enforce the nation's immigration laws.  Even if her allegations were true, crime, disease, and terrorism are threats to the public at large, not to her particularly.  They are therefore the essence of a generalized grievance in which she lacks a personal stake.[11]

---

[11]  Plaintiff's status as a taxpayer also cannot support standing.  A challenge based on government expenditures can only be heard where the litigant challenges an exercise of

Neither is the Defendants' alleged conduct fairly traceable to the Plaintiff's alleged injuries.  The allegations in the complaint go no further than to allege that Dr. Taitz participates in programs (in California) "which provide medical care to indigents and immigrants."  *Id.* at ¶ 11.  The status or identity of these alleged "immigrants" is unknown.  Dr. Taitz alleges no personal contact with any individual immigrants, much less any DACA program participants or others arriving through the specific programs she identifies.  Plaintiff thus fails to trace any cognizable alleged injury to Defendants' conduct.

Finally, Plaintiff has not shown that the relief sought would redress her claimed injury.  As stated above, she seeks to stay DACA, enjoin transportation and release of "illegal" aliens," and also seeks their "immediate turnaround and deportation . . . or [] two months' quarantine".  ECF No. 1 at 2-3; Prayer for Relief, ECF No. 1 at 40-41.  Plaintiff has not shown how this broad injunctive relief would resolve her cough or keep her free of disease (particularly given that the diseases of which she identifies exist in the United States apart from any immigration from abroad), let alone increase her property values, or ameliorate any of the other alleged risks to her.  Her claim to standing is thus without merit.

### b.. *Plaintiff lacks prudential standing to challenge the Secretary's Enforcement of the INA.*

Contrary to the dictates of settled precedent, Plaintiff seeks to entangle the judiciary in her political quarrel.  In addition to lacking Article III standing, Plaintiff also

---

congressional power under Article I, section 8, as violative of the Establishment Clause. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1981).

lacks prudential standing. Prudential standing requires "that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provisions." *Bennett v. Spear*, 520 U.S. 154, 162 (1997).  Plaintiff lacks prudential standing here because the "immigration context suggests the comparative improbability of any congressional intent to embrace as suitable challengers in court all who successfully identify themselves as likely to suffer from the generic negative features of immigration." *Federation for Am. Immigration Reform v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) *cert. denied*, 521 U.S. 1119 (1997).  Congress likewise did not intend to embrace challengers such as Plaintiff, who makes the general claim that she is injured by the government allegedly allowing the "dumping of illegals."  *See*, *e.g.,* ECF No. 1 at 9.

In *Fed'n for Am. Immigration Reform*, the D.C. Circuit held that the plaintiffs lacked prudential standing to claim that "a rush of immigrants adversely affects the welfare of the Federation's members by generating unemployment and wage reductions and by placing burdens on public services."  *See id.* at 900.  Just as the Supreme Court and countless other courts have rejected similar challenges, this Court lacks jurisdiction to review plaintiff's claims based on general citizen standing.

### 2. The case is otherwise beyond the Court's jurisdiction.

Even if Dr. Taitz could otherwise establish standing, which she cannot, her claims are beyond this Court's jurisdiction.  The DACA memorandum being challenged in this case addresses ICE's and DHS's guidance regarding the appropriate exercise of prosecutorial discretion in the commencement of civil enforcement proceedings, which is inherently a matter committed to agency discretion.  *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (holding that "an agency's decision not to take enforcement action

17

should be presumed immune from judicial review"). Such discretion is undoubtedly available for immigration enforcement decisions such as those challenged here. *See* 8 U.S.C. § 1103(a). The Supreme Court has held that the Immigration and Nationality Act (INA) grants broad discretion to the Executive branch, *including* the decision whether to initiate removal proceedings. *See Arizona v. United States*, 132 S.Ct. at 2499 ("A principal feature of the removal system is the broad discretion exercised by immigration officials. Federal officials, as an initial matter, *must decide whether it makes sense to pursue removal at all*.") (emphasis added); *AAADC*, 525 U.S. at 483-84 ("At each stage" of the removal process, "the Executive has discretion to abandon the endeavor ...."); *see also Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) ("[The State candidly concedes, however, that [INA § 103] places no substantive limits on the Attorney General and commits enforcement of the INA to her discretion."). Under this controlling precedent, Plaintiff cannot challenge the Government's exercise of enforcement discretion here.

Finally, although Dr. Taitz seeks a wide range of relief, including stay of the transportation and "immediate turnaround and deportation" of certain aliens, all of it is beyond the Court's jurisdiction, as the Congressionally mandated proceedings are "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." 8 U.S.C. § 1229a(a)(3).[12] Congress has also specifically limited judicial review of

---

[12]   Although the Application is not clear enough to analyze the issue, the case also appears to be unripe and nonjusticiable as a political question.

detention-related discretionary judgments, including the release of aliens.  Section

1226(e) of the INA states:

> The [Secretary of DHS's] discretionary judgment regarding the application of [Section 1226] shall not be subject to review. No court may set aside any action or decision by the [Secretary of DHS] under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

Further, Congress has specifically limited immigration-related injunctive relief in

8 U.S.C. § 1252(f), stating:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.

Part IV of the subchapter covers 8 U.S.C. §§ 1221 – 1232, which cover the inspection,

apprehension, examination, exclusion and removal of aliens.

Thus, this Court may not, despite Dr. Taitz's request, impose a two-month

quarantine, stay transportation, or otherwise enjoin the myriad processes of inspection,

detention, release and removal implicated in her Application.[13]

---

[13] Plaintiff's Application suffers from other jurisdictional defects.  For example, Plaintiff has not identified any waiver of sovereign immunity for this lawsuit.  The "basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver.").  As part of her burden to establish that federal court jurisdiction exists, Plaintiff must "identify a specific statutory provision that waives the government's sovereign immunity from suit."  *Chamber of Greater Baton Rouge v. EPA*, 323 F. Supp. 2d 769 (M.D. La. 2004) (*quoting Clinton County Com'rs v. EPA*, 116 F.3d 1018, 1021 (3d Cir. 1997)).  Plaintiff's attempt to rely on diversity jurisdiction is also misplaced.  A suit against a public officer in his official capacity is, in all respects other than name, treated as one against the entity of which he is an officer.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Agencies of the United States government are

       **3.**      *Even if this Court had jurisdiction, Plaintiff cannot prevail on the merits of her claims.*

Although the standing and jurisdictional flaws are dispositive with respect to Plaintiff's likelihood of success, her argument also proceeds from a legal theory that is wrong as a matter of law.  Contrary to Plaintiff's assertion, the allegations do not amount to a plausible claim of unlawful activity.

The Application cites 8 U.S.C. § 1324's alien smuggling provisions and the treason statute at 18 U.S.C. § 2381 at length.[14]  *See*, ECF No. 1 at 18.  These criminal statutes are inapplicable in this civil action, as the civil statutes governing detention and removal, actually direct Defendants' conduct, with the *Flores* Agreement providing further guidance.  However*,* even taking the allegations in the Application as true, they portray the lawful, law-enforcement related processing of aliens under the Immigration and Nationality Act - aliens to whom Congress has accorded certain procedural rights.  That the Government transports, processes, and adjudicates cases of aliens arriving along the U.S. Mexico border fits within Congress' mandate, and their release or deferred action, if it occurs, is an outgrowth of the Executive's recognizedly lawful discretion to administer the statutes.[15]

---

not "citizens" for purposes of diversity jurisdiction, and thus Plaintiff has not established diversity jurisdiction under 28 U.S.C. § 1332 or otherwise.  *See Lummis v. White*, 629 F.2d 397, 402 (5th Cir.1980), *rev'd on other grounds*, *Cory v. White*, 457 U.S. 85 (1982).

[14]  The Application also makes reference to a "de facto RICO," but she does not cite the RICO statute and Defendants do not construe this case as raising any type of RICO claim.

[15] Plaintiff makes much of this Court's ruling in *U.S. v. Mirtha Veronica Nava Martinez*, No. B-13-441-1 013 WL 8844097 (S.D. Tex Dec. 13, 2013).  This case is not, as Plaintiff claims, related to the instant action, and it does not enhance the likelihood of success on the merits.  *See* ECF No. 1 at 20.  In that criminal case, this Court expressed its concern with the "apparent policy" of DHS, and while it noted that a private citizen would be

### B.  Plaintiff cannot show a likelihood of irreparable harm in the absence of preliminary relief.

Plaintiff's lack of irreparable harm – indeed, as stated *supra*, lack of any cognizable harm – is dispositive. Plaintiff's desired preliminary relief here is entirely inconsistent with the Supreme Court's insistence that this type of "extraordinary" relief not be "based only on a possibility of irreparable harm," but rather awarded upon a "clear showing" by Plaintiff.  *Winter*, 555 U.S. at 22.  As with the failure to establish injury sufficient for standing, Plaintiffs' collection of non-cognizable, hypothetical harms is insufficient as a matter of law because these alleged injuries are speculative and certainly not imminent or irreparable.  Plaintiffs' motion accordingly must fail based on this threshold lack of irreparable harm.

As stated *supra*, Plaintiff has failed to trace *any* harm to Defendants' actions.  It is of course true that contact with other humans, in the United States or elsewhere, poses some risk of communicable disease, crime, fluctuating economic conditions, or even terrorism.  However, as with her failure to establish standing, Plaintiff's speculative allegations of degraded societal conditions are insufficient to allege irreparable harm, and the relief she seeks will not ameliorate the general conditions of which she complains Further, as noted herein, the challenged DHS actions include guidance on how to allocate scarce enforcement resources, consistent with Congressional intent, by focusing more on aliens who pose a risk to public safety and national security, rather than those who do not pose such a risk, such as certain aliens who arrived as children and have not engaged in criminal activities. Although these memoranda speak to which aliens should be

---

prosecuted for its conduct, it did not conclude that the Government was engaged in illegal activity.  *See* ECF No. 1 at 21 (quoting *Nava-Martinez,* 2013 WL 8844097 at *1).

prioritized for removal efforts, they do not in any way contemplate a diminution of enforcement activity.  In fact, were Plaintiff to obtain the relief requested, it would force the Government to re-allocate resources away from higher-priority matters, including removal of criminals.  Plaintiff thus cannot show that the absence of injunctive relief constitutes irreparable injury.

### C.      The balance of equities does not tip in Plaintiff's favor.

For the same reasons, the balance of equities does not tip in Plaintiff's favor.  The Government has strong equities in the execution of the laws, as well as in the discretion to order its priorities.  Plaintiff, by contrast, has not articulated any strong equities in Defendants' conduct.  For Plaintiff to override Federal law enforcement priorities, or to re-order public health concerns according to her policy preferences, does not outweigh the Government's strong interests in the orderly enforcement and administration of these issues.

### D.      The relief requested is not in the public interest.

Finally, Plaintiff must also demonstrate that "the[ir] threatened injury outweighs any harm that will result" to Defendants if the injunction is granted and that "the granting of the preliminary injunction will not disserve the public interest." *Ridgely v. FEMA*, 512 F.3d 727, 734 (5th Cir. 2008). Plaintiff's motion fails on both accounts. The general, conjectural consequences alleged in the Application , as well as the speculative health conditions, are vastly outweighed by harm to the public interest that would result from the contemplated injunction, which would bar the Secretary from promoting public safety and national security as furthered by the challenged memoranda.

It is in the public interest to focus the government's limited resources on the enforcement of its highest priority cases – such as aliens who pose national security risks, serious criminals, and repeat offenders, rather than on only the most recent arrivals or aliens who arrived in the United States as children and have no criminal record, or to those aliens of whom Plaintiff expresses the most fear.  Indeed, DHS's practice conforms to Congress's encouragement to "prioritize the identification and removal of aliens convicted of a crime by the severity of that crime." Consolidated Appropriations Act, Pub. L. No. 113-76, Div. F, Tit. i, 128 Stat. 5 (2014).  Plaintiff essentially claims that the Court should be swayed by the her own policy preferences rather than the applicable statutes and regulations, as well as the agency's expertise in focusing its resources on a national basis towards the removal of aliens who meet the agency's most important enforcement priorities.

Moreover, the public interest is advanced by the Secretary's ability to consider other equities associated with discretionary relief provided to individuals potentially subject to removal. As the *Arizona* Court acknowledged, "[d]iscretion in the enforcement of immigration law embraces immediate human concerns." 132 S. Ct. at 2499. Such discretion may properly recognize the difference between "unauthorized workers trying to support their families" and "alien smugglers" or those "who commit a serious crime." *Id.*  The injunction Plaintiff seeks would work immense harm to the public interest by mandating removals even where prosecutorial discretion is not only appropriate, but beneficial.

Plaintiff is unhappy with policy decisions that are firmly within the Secretary's discretion and thus asks this Court to replace the agency's expertise in enforcing and

administering the nation's immigration laws with her own enforcement priorities. This is precisely the sort of "broad programmatic attack" that the Supreme Court has deemed inappropriate, especially where "the manner [of agency] action is left to the agency's discretion." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64-65 (2004). Accordingly, this Court should decline Plaintiffs' invitation to interfere with the agency's lawful exercise of discretion in processing aliens.[16]

## II.     This Court should either strike or deny Plaintiff's subsequent motions.

After this Court issued its Order to Show Cause (ECF No. 10), Plaintiff filed four identical motions for additional relief, (ECFs Nos. 14-17) asking this Court to expedite due to the ebola epidemic, to quarantine people who visited countries that have an ebola epidemic, to retain jurisdiction to assure compliance, and to certify a class. This Court should either strike these motions either for noncompliance with the local rules or because they neither relate to an underlying complaint nor could they serve to amend a filed complaint. Alternatively, this Court should deny these motions because Plaintiff lacks standing and has failed to establish this Court's jurisdiction, for the same reasons stated herein.

---

[16] Plaintiff's proposed preliminary relief also runs contrary to the "general principle [that] 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *See Lion Health Serv., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Plaintiff fails to limit the proposed injunction to her claimed injuries. Instead, she seeks a broad stay, a suggestion that is completely out of proportion to the alleged, speculative injuries to one individual.

## **CONCLUSION**

For the reasons stated herein, this Court should deny Plaintiff's Application.

Defendants respectfully request that the Court also terminate this case.

Respectfully submitted,

/s/ Colin A. Kisor
COLIN A. KISOR
Deputy Director
District Court Section
Office of Immigration Litigation
Civil Division,
U.S. Department of Justice
450 Fifth Street NW
Washington, DC 20001
Telephone: (202) 532-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I, Colin Kisor, do hereby certify that on August 8, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Colin A. Kisor
COLIN A. KISOR
Deputy Director
District Court Section
Office of Immigration Litigation
Civil Division,
U.S. Department of Justice
450 Fifth Street NW
Washington, DC 20001
Telephone: (202) 532-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Counsel for Defendants