DR. ORLY TAITZ, ESQ

29839 SANTA MARGARITA, STE 100

RANCHO SANTA MARGARITA, CA 92688

PH 949-683-5411 FAX 949-766-7687



United States District Court
Southern District of Texas
FILED

AUG 1 2 2014

David J. Bradley, Clerk of Court

## US DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## BROWNSVILLE DIVISION

TAITZ,                )           Case # 14-cv-00119

V                     )     HONORABLE ANDREW S. HANEN PRESIDING

JOHNSON, ET AL   )

## REPLY TO DEFENDANTS' ANSWER TO ORDER TO SHOW CAUSE, WHY SHOULDN'T THE COURT GRANT APPLICATION FOR STAY/ INJUNCTION AS REQUESTED BY PLAINTIFF

**FLORES V RENO DOES NOT JUSTIFY ACTIONS BY THE DEFENDANTS IN DUMPING HUNDREDS OF THOUSANDS OF MOSTLY ADULT ILLEGALS ALL OVER THE NATION AND ENDANGERING THE PUBLIC VIA PROLIFERATION OF INFECTIOUS DISEASES AND CRIME**

The case at hand deals with the policies of the defendants in acting as a valet service and doing the job of human smugglers in transporting hundreds of thousands of illegals all over the country and spreading infectious diseases and crime instead of turning these illegals around immediately as they are apprehended at the Mexican border. Defense did not provide one single U.S. law which justifies such flagrant violation of Title 8 by the defendants, which in itself would be a basis for a summary judgment in favor of the plaintiff . The only "legal basis" defense provided for this human trafficking by the U.S. President, Secretary of Health and Human Services and Secretary of Homeland Security, is a Stipulated agreement in *Flores v Reno* 85-cv-4544, which has no bearing on this case and does not provide a legal basis for aforementioned actions for following reasons:

1. Flores v Reno is not a law or a decision by the court. It is an agreement in a civil case signed by Doris Meissner, the INS Commissioner under Clinton, with a class of some 24 unaccompanied minor illegal aliens who allegedly complained about their accommodations while in INS custody and by and

through their attorneys sought better accommodations in properly licensed facilities for minors. **The stipulation's main goal was providing appropriate safe accommodations for unaccompanied minor illegal aliens while in INS custody**. The agreement never envisioned the release of hundreds of thousands of illegals of all ages: 80% of them adults and 20% <u>mostly accompanied</u> alleged minors into the general population, as it is done currently by the defendants. Plaintiff was not a party to this agreement and neither were any of the defendants in this case. Illegals, who are the subject of the current law suit were not a part of the class in Flores and most of them were not even born in 1985, when the case was filed.

2. Stipulation in Flores was signed in 1997 and was set to expire within 5 years. Plaintiffs submitted to this court with their answer to this Court's Order to Show Cause Exhibit 3 (ECF 20-3), a 2001 stipulation extending Flores stipulation, however Presiding Judge, Robert Kelleher, of the Central District of California, never signed this new stipulation. There is no signature of the judge on the extended stipulation submitted to this court, so the extension is not valid and Flores stipulation expired in 2002.

3. Complaint and Stipulation in Flores were filed in bad faith and not binding on subsequent cases. Flores was filed in 1985 and was captioned Flores v Meese 2:85-cv-04544-RJK. The complaint and most of the briefs are sealed and not

available to the public. That in itself is a concern, as this case is being cited by the government as a justification for trafficking of hundreds of thousands of illegals all over the nation, which impacts millions of U.S. citizens. The public has a right to know, what is the basis for these actions and a sealed complaint does not provide such information. Further, this complaint was filed in 1985 against Reagan Attorney General Ed Meese. What is most telling, is that the plaintiffs sat on the complaint and did not prosecute it for eight years. The case was reopened in 1993. If these illegal unaccompanied minors were really concerned about the fact that INS is housing them in facilities, which are not specifically licensed for dependant minors, why didn't they prosecute the claim for eight years? This shows that there was not a legitimate harm to the plaintiffs in Flores. Only in 1993, after Clinton's election, when the Democrats came to power, did the plaintiffs in Flores reopened the case and subsequently in 1996 CFR Globalist INS Commissioner Doris Meissner signed the stipulation (ECF 20-2). Based on the fact that the case was not prosecuted for eight years from the date of filing, it is clear that this case was not a bona fide case of a harm to minor unaccompanied illegals due to them being housed in INS facilities they did not like, but simply a political move, which provided a financial bonanza for attorneys for illegals, cheap labor for donors and conversion of deportable

illegals into aspiring voting Democrats upon Meissner's signing of the stipulation.

4. Flores v Reno <u>deals only with unaccompanied minors</u>. In reality out of 290,000 illegals, who according to NY Times poured through the Mexican border since October of 2013, only 57,000 are even claiming to be minors. So, 80% of the illegals, who crossed the border, are adults and based on their own answer, defendants had no legal basis whatsoever to traffic these adults all over the nation, as Flores relates only to unaccompanied minors. Defendants violated Title 8 by trafficking these adults to CA, AZ, AK, MA, all over the nation. Many of these adults were infected with Tuberculosis, Bacterial Meningitis, Scabies, Lice and other infectious diseases, many are gang members and many are simply stealing jobs, Social Security numbers and benefits of American citizens. So, this court should grant a stay of such practices and order the defendants to turn around 233,000 illegals, who are adults, and who crossed the border since October 2013, since they do not fall under Flores v Reno.

5. Among remaining 20% of the illegals, who claim to be minors, 90% are not young children, but teenagers from 14-18 according to the age that they allege. These illegals do not provide any proof of age and it was reported that many of them have gray hair and look much older than 18, they look like they are in

their 20s or even 30s. It is up to the illegal alien to prove that he is eligible to stay in this country and that they can stay in the U.S. pending deportation proceedings based on Flores v Reno. Defendants did not provide any proof that any of the illegals fall under Flores v Reno and, as such, the court should issue a stay of this trafficking of illegals and order that any illegal alien, who does not have an identification and cannot prove that he is under 18, to be turned around immediately.

6. *Flores v Reno* deals only with unaccompanied minors. Most of minors sent to California and other states, are accompanied minors, they arrived with their parents, as families, and do not fall under Flores v Reno and have to be turned around and deported immediately.

7. Even in relation to the remaining one percent of illegals, who fall under *Flores v Reno*, current actions by the defendants are in clear violation of provisions of Flores v Reno.

Flores v Reno state:

a. " IV     STATEMENTS OF GENERAL APPLICABILITY

   11. The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-

being and that of others.  **Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor or fail to present him or her before the INS or the immigration courts when requested to do so."**

Currently, defendants are just dropping thousands of illegals at bus stations or releasing them into general population without any warranty, any reasonable belief that they will ever show up at deportation hearings. As a matter of fact 99% of the illegals never show up. Further, these minor illegals are released into custody of other illegals, who are themselves fugitives from the law. The parents and other relatives who are here illegally have no interest, no incentive, to appear at the deportation hearings. As such, plaintiff is correct in that in compliance with the existing immigration laws and title 8, as well as Flores v Reno, these minor unaccompanied illegals should stay in the custody of DHS until their legal immigration status is confirmed and medical examination is complete. This is the only way to comply with the stipulated agreement."

**Due to the fact that 99% of the illegals do not show up for deportation hearings, this court should rule that the practice by the defendants of trafficking of illegals all over the country violates Title 8 and Flores v Reno and should be STAYED immediately.**

b. Based on Flores v Reno plaintiff is absolutely correct, as current epidemics of infectious diseases represent an emergency: "B. For purposes of this paragraph, the term "emergency" shall be defined as any act or event that prevents the placement of minors pursuant to Paragraph 19 within the time frame provided. Emergencies include natural disasters (e.g., earthquakes, hurricanes, etc.),

facility fires, civil disturbances, and medical emergencies (e.g., **a chicken pox epidemic among a group of minors)**".(emphasis added)

c. Flores states that if INS believes that a person who claims to be a minor, is

actually an adult, it can treat him as an adult and

13. " If a reasonable person would conclude that an alien detained by the INS is an adult despite his claims to be a minor, the INS shall treat the person as an adult for all purposes, including confinement and release on bond or recognizance. The INS may require the alien to *submit* to a medical or dental examination conducted by a medical professional or to submit to other appropriate procedures to verify his or her age. If the INS subsequently determines that such an individual is a minor, he or she will be treated as a minor in accordance with this Agreement for all purposes. Defendants did not show that they complied with this provision.

d. Defendants are in violation of paragraph 14 of Flores.

"14. **Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court,** or to ensure the minor's safety or that of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference**..." Defendants are aware that the current policy of release of minors does not assure their appearance at the hearings**. 99% of them never show up, as such in furtherance of Flores this court should STAY/ ENJOIN and all releases of illegals until their immigration status is ruled upon by a judge, Flores specifically requires timely appearance in immigration court and this does not happen under current policies of the defendants.

e. Defendants are in flagrant violation paragraph 21 of Flores, as they are releasing into general population admitted gang members

"21. A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the District Director or Chief Patrol Agent determines that the minor:

A.       has been charged with, is chargeable, or has been convicted of a crime, or is the subject

of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:

1.       Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence

against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc. *This list is not exhaustive.*);

11.    Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc. This list is not exhaustive.);

As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;

B.      has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

C.      has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program *in* which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc.  This list is not exhaustive.);

D.      is an escape-risk; or

E.      must be held in a secure facility for his or her own safety, such as when the INS has reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees".

Defendants violated these provisions by releasing known gang members into the general population and endangering the public.

8. Even if this court rules that 2001 memorandum expanding or delaying 1996 Flores memorandum is valid without the signature of the judge, it expired as well for following reasons:

a. The case was filed in 1985 by a class of some 24 minor unaccompanied illegals who sought to improve their conditions while in INS custody.

Typically unaccompanied illegals are not babies, they are teenagers 14-18. This means that now all of them are in mid 40s and all of the

members of the class are not minors anymore. Even if one were to believe

that some unaccompanied toddles crawled through the US border in 1985

and were placed  in the INS custody, they would be 30 now, therefore at

this point the memorandum agreement of this class is moot today. Indeed

in 2006 the court closed the case. As such this memorandum agreement

expired.

b. Original stipulation stated:

"All  terms of this  Agreement shall  terminate the earlier of five years
after  the date of final c o u r t  approval of this  a g r eement or three
years after the  c o u r t  determines that the INS is in substantial
c o mpliance with  this Agreement"

Indeed, the docket in Flores showed that in September of 2001
INS sought to terminate Flores agreement due to compliance with
the terms.

In November of 2001 Judge Kelleher issued an order to show

cause  to the plaintiffs, why the court should not find that INS

achieved substantial compliance with the terms of the 1997

agreement. So, it appears that in November of  2001 there was a

substantial compliance and the judge was ready to close the case.

At that point the parties reached a stipulation where the plaintiffs

apparently were looking  for something minor, "a publication of

final regulations implementing this agreement". Based on ECF 20-

3 Flores were to expire mere 45 days after such publication.

It is mind bogging that a simple publication, which could have been made within an hour or a day, was not made for nearly 13 years.

We all know that the government is slow, but even the most intellectually deficient government official could have made this publication within a day or two, not 13 years.

So, there is a suspicion that someone in INS (currently INS is a part of DHS) acted in bad faith and received some type of an incentive, either a promotion or a financial incentive to bury this agreement and not publish final regulations of the agreement, which would have terminated the agreement within 45 days.

Meanwhile, on June 15 2012 Janet Napolitano signed DACA (Deferred Action for Child Arrivals) memorandum, which abused her prosecutorial discretion and stopped deportation of all the illegals, who alleged that they came here as minors. One can be sure that most of the illegals, if not all, will claim that they came here as minors.  It was widely reported in the media that Barack Obama signed DACA memorandum as well, though his signature was never made public. We do not know on what date did he sign DACA, was it June 15 or later, but only 5 days after signing of

DACA by Janet Napolitano, 99 year old elderly Judge Kelleher, who presided over Flores, passed away. From that point 2012 DACA  and 2014 renewal of DACA by the defendant, Secretary of Homeland Security, Jeh Johnson, became a major magnet for some 290,000 illegals to cross the U.S. border. US government used the fact that no one published    required Flores agreement implementation as an excuse to consider Flores open and current and as a basis for releasing into general population hundreds of thousands of illegals and the defendants acting as a valet service for transporting illegals all over the country. Flores was used as an excuse in U.S. v Nava-Martinez, No B-12-441-1 which was before this court and it was used in the case at hand.

Due to the fact that  Flores was closed in 2006, Judge Kelleher passed away in 2012 and there was no judicial oversight of Flores since, plaintiff is asking this court to rule that Flores, which is the bases of the defendants actions:

a. expired due to the fact that 2001 modification was never signed by the judge or;

b. rule that the INS substantially complied with Flores since 2001 and it expired based on compliance and that it is moot in relation

to the class of plaintiffs, unaccompanied minor illegals who filed Flores in 1985 and who were either deported or who reached the majority in the 29 years since the case was filed,

c. order the Defendant Jeh Johnson, Commissioner of Department of Homeland Security, which is now in charge of ICE, formerly known as INS, to publish within 10 days the final regulations implementing Flores v Reno (Formerly Flores v Meese) agreement, in order to close this loophole and stop this de facto human trafficking by the defendants.

## DACA MEMORANDUM REPRESENTS AN ABUSE OF PROSECURITORIAL DISCRETION AND DOES NOT JUSTIFY ACTIONS BY THE DEFENDANTS

Defense uses a 2012 memorandum by Janet Napolitano as a basis for their human trafficking of thousands of illegals all over the nation. They claim that alleged misconduct by the defense is a transgression against criminal statutes, not a transgression against the plaintiff, who is a member of the public.

First, this assumption is wrong, as when defendants transgress against criminal statutes, they transgress against people, as the criminal statutes are there to defend the public.

Second of all, a memorandum is not a law. For example, a District Attorney may issue a memorandum stating that he is exercising his alleged prosecutorial discretion and from now on he will not prosecute murders or that he will not prosecute any homicides, thefts and burglaries committed by minors. Such memo will not override existing laws. If anything, it will expose such derelict Attorney

General to prosecution for violation of his oath of office and violation of civil rights of citizens under the color of authorities, as such laughable interpretation of discretion will surely lead to a significant rise in crime and will deprive the citizens of their right to   reside in peaceful, crime free environment.

Prosecutorial discretion exists to consider extenuating circumstances for one or two individuals, prosecutorial discretion does not allow exempting millions of people from complying with laws of this country. Memorandum by Janet Napolitano is seeking to waive the laws of the land, specifically Title 8 immigration laws, for millions of people and it becomes a magnet for future violations. This memorandum by Janet Napolitano, extended this year by Defendant Jeh Johnson, would be a comedy, a material for a sit-com, if not for the enormous damage it does to the nation. Clearly every illegal in this country would claim that he came here as a minor and would seek a legal status and a job permit. The whole point is that these people are illegals, they lied and violated our laws to cross the border, why would anyone in his right mind believe that they will not lie and will not claim that they came here as minors. The government claims that we have only 12 million illegals, according to the center for immigration studies we have 25-30 million illegals, according to deportation officers we might have as many as 42 million, who came here illegally or overstayed their visas. This memorandum by Janet Napolitano, as adopted by Jeh Johnson, is the beginning of the globalist policies of open borders and loss of the U.S. sovereignty.

This memorandum is a clear abuse of prosecutorial discretion.

Defendants are stating that the federal government has the authority to administer immigration and deportation policies.  While they have the right to administer those services, they have no right to abuse their authority, they do not have a right to open the U.S. borders and engage in human trafficking, as they are doing so today.

This country has a system of checks and balances. An unfettered, unshackled action by one branch, in this case the executive branch, leads to tyranny. Just recently it was announced that Barack Obama is intending to grant amnesty to some 5-6 million illegals and will act as soon as September of 2014.  This shows

that an action by this court is needed to stop this unshackled abuse of power by the executive branch.

### A CLAIM THAT JUNE 15, 2012 MEMORANDUM HELPS THE GOVERNMENT TO SAVE RESOURCES AND CONCENTRATE ON VIOLENT CRIMINALS IS WITHOUT MERIT AND IS A COMPLETE OPPOSITE OF WHAT HAPPENS IN THE FIELD.

Defendants are claiming that June 15 DACA memo signed by Napolitano and renewed by Jeh Johnson, saves funds and allows the government to concentrate on dangerous illegals.

This claim is refuted by the evidence provided by the plaintiff in her application. Multiple interviews by the Border Patrol agents reveal that 95% of illegals flooding this nation, believe that they would not be deported due to DACA. Border patrol agents are stating that the best deterrent is the turnaround and deportation, not trafficking of illegals all over the nation and dumping them on communities. Further, Border Patrol agents state that this DACA memo is depriving them of necessary resources. Not only it is a magnet for illegals, but they are also prevented from doing their job, they are prevented by the superiors governed by the defendants in turning those illegals around. Border Patrol agents are wasting most of their time changing diapers of illegals and processing them, washing their uniforms after contacts with this flood of illegals, due to contamination with lice and scabies. All of this takes their time and takes away resources and man power from drug traffickers and gang members.

Further claims by the government that they concentrate on violent criminals are simply not true. Border patrol agents are complaining that they are told to release into population violent gang murders and even ones who admitted to committing murder, as long as these gang member illegals claim to be under 18.

**This shows that public interest weigh heavily towards this court ruling that June 13, 2012 Janet Napolitano DACA memorandum "Exercising Prosecutorial discretion with Respect to individuals Who Came to the united States as Children", which was extended for two more years by the defendant Jeh Johnson, should be deemed by this court an abuse of prosecutorial discretion,**

**null and void and this court should STAY compliance with this memorandum by the Border Patrol and other agencies.**

### A CLAIM OF SOVEREIGN IMMUNITY IS WITHOUT MERIT

Defense misrepresents the facts of the case and claims that Plaintiff sued the United States of America and United States of America has sovereign immunity.

This is simply not true. Plaintiff did not sue the United States of America. She sued governmental officials who are abusing their authority granted to them under the U.S. Constitution, who are acting outside the frame of law and Constitution and whose actions hurt the plaintiff and other similarly situated individuals. It is probably laughable for this court to even read such argument, as on the daily basis this court hears cases, where the plaintiffs do just that, sue federal Government employees who abuse their authority. This is bread and butter of the work of the federal courts.

Moreover, the defense contradicted themselves and their argument in that they brought Flores v Reno as their main argument. What is Flores v Reno? As stated above, this is the case where unaccompanied minor illegals sued the federal government claiming that the actions by the federal government put them at risk. While the complaint in Flores is sealed, based on the stipulated agreement, it is clear that their concern was with the overcrowding of INS facilities, which led to outbreaks of infectious diseases, such as Chicken Pox, and with the fact that minors were in contact with adults who were gang members and other criminals.

Federal government in Flores not only found this case justified, but entered into stipulated agreement in providing illegals with protection and safer environment that they sought and the government paid hundreds of thousands of dollars to lawyers of illegals.

The only difference between Flores and Taitz, is in that Taitz is a legal U.S. citizen, a doctor, who is treating these illegals. She is seeking the same protection against crime and spread of infectious diseases. In the perverted minds of the defendants

and other high ranking officials of the Obama administration, illegals have all the rights, while legal residents and U.S. Citizens have no right and no protection under the law. This in itself is a case of discrimination, a reverse discrimination and violation of the civil rights of the U.S. citizens. This is likely happening as these officials are globalists and seek to provide an unending supply of cheap labor for their donors, while endangering and impoverishing the public at large. This explains their unwillingness to provide protection for the U.S. citizens, while providing it for illegals.

In the subsequent motion Taitz sought pro hac vice and a class certification. It is justified for the court to provide Taitz and similarly positioned individuals at least the same protection under the law, which was awarded to the illegals in Flores.

There is clearly no immunity in the action at hand and the court has jurisdiction to grant the relief which was requested, the order by the court is not impeded by the allegation of immunity.

## ALLEGATIONS OF NO STANDING IS WITHOUT MERIT

Defense claims that the STAY should not be granted as plaintiff has no standing. They claim that she did not show damage different from the rest of the population. Yet again, defense is misrepresenting the facts. Taitz is a doctor, who provides care to poor through government programs. These programs are currently extended to illegals, who are often granted quasi legal status through DACA or ones who are transported by the government and dumped in CA and elsewhere. Being a doctor, Taitz is in direct contact with blood, saliva and tissues of her patients. One surgical procedure can leave her covered with blood all over. Taitz provided exhibits, which show that many of these illegals came from the areas affected by antibiotic resistant Tuberculosis, deadly Ebola, Measles, Scabies, Lice and other infectious diseases. Many of her patients show up with upper respiratory diseases. Taitz contracted persistent cough and being treated with antibiotics. Moreover, after the original complaint was filed, her doctor found an oxygen insufficiency in her blood and she was ordered by her doctor to use a positive pressure oxygen machine during sleep indefinitely, for her lifetime. (See Exhibit 1). Aside from a drastic change of a lifestyle due to use of such a machine ,

she will have to spend thousands of dollars renting such machine and undergoing tests.

Defense claims that she cannot trace her cough and infection to a  specific illegal. Well, no doctor can hold hands with a  specific bacteria or virus and track its' journey. One can never show a specific pathway of a specific bacteria or virus. For this reason the court has to look at the totality of circumstances. The totality of circumstances show that it is more likely than not, that Taitz got infected by someone who came to this country illegally from an area with multiple antibiotic resistant untreated diseases and who was released into general population through this human trafficking by the defendants. Her position as a doctor treating these patients makes it more likely than not that she indeed was infected by one of those patients and is at risk of being infected again.

### DEFENSE ADMITS THAT PLAINTIFF IS CORRECT IN REGARDS TO THE NEED FOR EXAMINATION AND QUARANTINE OF THE ILLEGALS.

Defense  admitted that **any alien "who is determined... to have a communicable disease of public health significance" or who fails within the vaccination requirements, or who has a disqualifying physical or mental disorder, or who is a drug addict is inadmissible**" 8 U.S.C. 1182(a)(1)(A).

So, plaintiff is correct that due to the spread of multiple infectious diseases, illegal aliens should be turned around and deported, not transferred by the defendants all over the nation in exposing thousands of people to diseases. By defendants own admission they are violating 8U.S.C.  1182.

Defendants state that waivers of medical examination can be made for aliens. However,   waivers are made for legal aliens, individuals who are going through the process of immigration and naturalization. Defendants never provided any law that would waive medical examination and bar to entrance for <u>illegal aliens</u>, who are not going through legal procedures, but who are simply invading this country by violating US laws.

Further, defense states that medical examination is required for aliens, but not required for tourists.

This argument fails as well, as illegal aliens, who are invading this nation and who are trafficked by the defendants all over the nation, do not qualify as tourists.

Tourists are individuals, who obtained legal entry to this country and obtained a lawful visa from one of the U.S. embassies, they have a round trip ticket and they are here for a short period of time, they typically do not seek medical care, they do not seek benefits or a job permit and they do not study in the U.S.

Illegal aliens, who are trafficked by the defendants, do not qualify as tourists, as they did not enter the country legally, they do not possess a round trip ticket, they did not come with an intent to leave after a short visit, but rather they came to stay here permanently, to attend schools and be in close contact with thousands of children, get work permits, health care and benefits. As such, they do not qualify as tourists and the argument that tourists do not go through medical examinations and release, is without any merit and irrelevant to this case.

Furthermore, defense claims that under 42§34.1 et seq scabies, chicken pox, measles, whooping cough, swine flu and lice are not listed as diseases of public health significance.

In response, 42 USC§34.1 relates to legal aliens, it does not relate to chords of illegals invading our borders. These people are not legal aliens and do not fall under this law. Furthermore, defense conveniently omitted other diseases listed in the application for stay, which represent public concern, such as antibiotic resistant Tuberculosis, which has 65% lethality and Ebola, which has 60-90% mortality rate, so this argument is without merit as well.

### DEFENSE ADMITTED THAT DEFENDANTS ARE VIOLATING 8U.S.C. §1222.

Defense admits that for health -related detention of aliens, the Immigration and Naturalization act requires only that **immigration and/or medical officers subject aliens to observation and examination sufficient to determine inadmissibiliuty**. 8 U.S.C. §1222

Plai8ntiff provided evidence of ongoing outbreaks of infectious diseases. For example, sufficient examination for tuberculosis  would include an chest x-ray and

a skin TB test. Further, due to the fact that some diseases have a lengthy incubation period, sufficient examination involves quarantine. For example, Ebola has a 21 day incubation period. for 21 days a person infected with Ebola will look healthy, yet he is infected. Scabies has a 2 months incubation period.

So, based on defendants own admission, 2 months quarantine is  a necessity for **observation and examination sufficient to determine inadmissabiliuty**.  under 8 U.S.C. §1222. without such 2 months quarantine defendants would be in violation of 8 U.S.C. §1222 based on their own admission.

### A CLAIM OF THE BALANCE OF HARDHIPS WEIGHING IN FAVOR OF DEFENSE IS WITH NO MERIT, THE BALANCE OF HARDSHIPS IS IN FAVOR OF THE PLAINTIFF.

Defense claimed in the analysis of the application for stay that the balance of hardships is in favor of the defense. This assertion is without merit.  They used the stipulated agreement in Flores v Reno as a basis for their actions in trafficking hundreds of thousands of illegals all over the nation and endangering Taitz and others with the spread of infectious diseases and crime. As stated above, their actions are in violation of Title 8 and are an opposite of what Flores states. As show previously, Flores does not even apply to 90% of the illegals being trafficked all over the nation as it relates only to unaccompanied minors, and 80% of illegals are adults and most minors are not unaccompanied minors, they arrived with their families. Additionally, in paragraph 14 Floes specifically states:

"14. Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that of others, the INS shall release a minor from its custody . " as we know now 99% o the these illegals do not show up for their deportation hearings and as such based on Flores stipulation defendants have no right to traffic them around the country and release them into general population. Further,  current policies do not assure safety of either the minors and others, as they release ones with infectious diseases and drug cartel and gang members. Due to the fact that current actions of the defendants violate both Title 8 and Flores, defendants cannot show that they have any right to continue

engaging in this human trafficking, and since they have no right to continue engaging in such actions, they cannot show any hardship.

Further, as stated above, their behavior causes a serious hardship for the plaintiff, as it exposed her, as a doctor providing care to these illegals with infectious diseases and she is in imminent risk of further exposure.

Moreover, such trafficking of illegals, who  spread infectious diseases, crime and become a financial burden on the communities is against public policy and against public interest.

## CONCLUSION

Due to 20 page limitation plaintiff cannot expand any further, however all of the above lead to the conclusion that July 14, 2014 Application for STAY/ INJUNCTION should be granted, as requested by the plaintiff.

Additionally, due to the fact that Defense sought utilization of Flores v Reno 85-cv-4544 CD of CA as a basis for their actions, as stated above, this court should find that December 2001 extension in stipulation in Flores v Reno  is not valid, as it was never signed by the presiding judge, as the INS was in compliance with Flores by 2001 and that the INS, which is currently under the jurisdiction  of the Director of DHS, defendant Jeh Johnson, acted in bad faith in not publishing the final regulations implementing the agreement in Flores v Reno, which should have been published with a day in 2001 and which were not published for 13 years and used to keep Flores v Reno active. This court should order Jeh Johnson, Director of Homeland Security, to publish within 10 days final regulations implementing Flores v Reno agreement in order to close a loophole, which is used for smuggling and trafficking of illegals all over the country by the defendants.

Respectfully submitted,

Dr. Orly Taitz, ESQ  08.07.2014

# PPS PACIFIC PULMONARY SERVICES

Center #: 57
Patient #:
PCC: Ur, Linda (7)

## PHYSICIAN ORDER FORM
### Fax to Pacific Pulmonary Services at (949) 476-5037 or call (949) 476-3077

**A. PATIENT INFORMATION** – Attach patient demographics & insurance.    Service Beginning Date (if other than date signed): _____

Name: _Orly Taitz_    Primary Insurance: _____

DOB: _____    Phone: _____    Secondary Insurance: _____

**B. DIAGNOSIS**
☐COPD ☐Emphysema ☐Chronic Bronchitis ☐Chronic Asthma ☐CHF ☐Pulmonary Hypertension
☐OSA ☐CSA ☐Other: _____
Secondary Diagnosis: ☐Hypertension ☐History of Stroke ☐Ischemic Heart Disease ☐Excessive Daytime Sleepiness
☐Impaired Cognition ☐Insomnia ☐Other: _____

**C. PULSE OXIMETRY TESTING** (Overnight testing per insurer guidelines) – *Diagnosis required for pulse oximetry testing.*
☒On room air ☐On PAP (no sooner than 48 hours after beginning PAP therapy) ☐

**D. HOME OXYGEN EQUIPMENT & SERVICES**
1. ☐ Home Oxygen at ____ LPM via cannula and tubing    ☐ Other: _____
☐ Continuous (24 hours) ☐ Nocturnal (8-10 hours)
Portable Oxygen (including contents and accessories)
☐ with conserving device at a setting of ____ or☐ E-system
2. Length of Need: ☐ Lifetime ☐ Other: _____
3. Please attach copy of test results & medical record notes documenting need.

**E. SLEEP THERAPY EQUIPMENT & SERVICES**
1. **Equipment**
☒ CPAP / Auto CPAP (E0601)    CPAP Setting: _5_ cmH2O    Auto CPAP Settings: ____ - ____cmH2O (i.e. 4 - 20 cmH2O)
☐ Bi-Level / Auto Bi-Level (E0470)    Bi-Level Settings: IPAP ____cmH2O, EPAP ____cmH2O
Auto Settings: IPAP ____cmH2O, EPAP ____cmH2O, Pressure support: ____
☐ Heated Humidifier with humidifier chamber (replace every 6 months) – *Patient experiences nasal dryness.*
2. **Equipment & Mask Supplies** (please cross out any supplies you do not wish patient to have)
a. ☒ Manufacturer's recommended supplies & intervals: Disposable filters (2/mo), Reusable filters (1/6 mo) and Tubing (1/3mo)
b. **Mask and mask accessories** (check *one* option):
☒ Mask - patient preference (patient may choose mask) with related accessories and periodicity identified below
☐ Full face mask (1/3mo) with related accessories: FFM cushion (1/mo) and Headgear (1/6mo)
☐ Nasal/ pillow mask (1/3mo) with related accessories: Nasal cushion (2/mo), Nasal pillows (2/mo) and Headgear (1/6mo)
☐ Oral/nasal mask (1/3mo) with related accessories: Nasal pillows (2/mo), Oral cushion (2/mo) and Headgear (1/6mo)
c. **Optional accessories:** ☐ Chin Strap (1/6mo)    ☐ Heated tubing (as applicable, 1/3mo)    ☐ Other _____
3. **Length of Need:** ☒ Lifetime ☐ Other: _____
4. Please attach a copy of the sleep study summary report and medical record notes documenting need for sleep study. If sleep study not available, please indicate testing facility: _____

**F. NEBULIZER EQUIPMENT & RESPIRATORY MEDICATIONS**
1. ☐ Nebulizer with pulse oximetry testing    ☐ Nebulizer only
2. **Nebulizer Kit** (Check one): ☐ Reusable (1/6mos.) ☐ Disposable (2/mo) or ☐ Mask (1/mo)
3. **Medications**
☐ Performist® (Formoterol fumarate) 20mcg/ 2mL SIG: BID ☐Brovana® (Arformoterol tartrate) 15mcg/ 2mL SIG: BID
☐ Albuterol 2.5mg/ Ipratropium 0.5mg/ 3mL SIG:☐ Once Daily ☐BID ☐TID ☐QID ☐Other____
☐ Budesonide 0.25mg/ 2mL SIG: ☐ Once Daily ☐ BID ☐ Other____
☐ Other: _____    SIG: ☐ Once Daily ☐BID ☐TID ☐QID ☐Other____
4. **Length of Need:** ☐Lifetime ☐Other: _____
5. Please attach a copy of medical record notes documenting need.

**G. PHYSICIAN INFORMATION & SIGNATURE**
**LETTER OF MEDICAL NECESSITY:** I, the Undersigned, certify that the above prescribed durable medical equipment is medically necessary as part of my treatment for this patient. In my opinion, the equipment prescribed is reasonable and necessary for accepted standards of medical practice and treatment of this patient's condition and has not been prescribed as "convenience equipment".

Name: **GOMEZ, YOLANDA P**    NPI #: **XX1306842877**

Phone: **(949) 713-9705**    Fax: **(949) 858-3826**

Physician's Signature: _____    Date: _7/16/14_

PPS All Services Rx 07.15.11