# United States Border Patrol

## Southwest Border Sectors

Family Unit and Unaccompanied Alien Children (0-17) apprehensions
FY 14 through July, compared to the same time period for FY 13

| Sector | Fiscal Year 13 Family Unit | Fiscal Year 14 Family Unit | Percent Change | Fiscal Year 13 Unaccompanied Alien Children | Fiscal Year 14 Unaccompanied Alien Children | Percent Change |
|---|---|---|---|---|---|---|
| | | | | | | |
| Del Rio | 452 | 4,665 | >500% | 1,753 | 3,026 | 73% |
| | | | | | | |
| El Paso | 259 | 491 | 90% | 636 | 876 | 38% |
| Rio Grande Valley | 4,762 | 48,161 | >500% | 16,820 | 46,307 | 175% |
| | | | | | | |
| Tucson | 2,281 | 3,493 | 53% | 7,813 | 7,448 | -5% |
| | | | | | | |
| Southwest Border Total | 11,001 | 62,856 | 471% | 31,491 | 62,998 | 100% |

Citizenship of Family Unit / Unaccompanied Alien Children (UAC)
Apprehensions FY 14 through July

| Citizenship | Family Unit | UAC |
|---|---|---|
| | | |
| Guatemala | 10,747 | 15,733 |
| | | |
| Mexico | 4,893 | 13,675 |

Southwest Border and Rio Grande Valley Sector Other
Than Mexican (OTM) Apprehensions FY 14 through July

| Rio Grande Valley | 173,558 |
|---|---|
| | |



GOVERNMENT EXHIBIT
2
B-14-119

8/12/96

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA 90057
(213) 388-8693



NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA 94104
(415) 453-3307

Attorneys for Plaintiffs

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA 90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

Attorneys for Defendants

Additional counsel listed next page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JENNY LISETTE FLORES, et al.,    )    Case No. CV 85-4544-RJK(Px)
    )
    Plaintiffs,    )    Stipulated Settlement
    )    Agreement
-vs-    )
    )
JANET RENO, Attorney General    )
of the United States, et al.,    )
    )
    Defendants.    )



Plaintiffs' Additional Counsel

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
Mark Rosenbaum
Sylvia Argueta
1616 Beverly Boulevard
Los Angeles, CA 90026
Telephone: (213) 977-9500

STREICH LANG
Susan G. Boswell
Jeffrey Willis
1500 Bank of America Plaza
33 North Stone Avenue
Tucson, AZ 85701
Telephone: (602) 770-8700

Defendants' Additional Counsel:

Arthur Strathern
Mary Jane Candaux
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC 20536

STIPULATED SETTLEMENT AGREEMENT

WHEREAS, Plaintiffs have filed this action against Defendants, challenging, *inter alia*, the constitutionality of Defendants' policies, practices and regulations regarding the detention and release of unaccompanied minors taken into the custody of the Immigration and Naturalization Service (INS) in the Western Region; and

WHEREAS, the district court has certified this case as a class action on behalf of all minors apprehended by the INS in the Western Region of the United States; and

WHEREAS, this litigation has been pending for nine (9) years, all parties have conducted extensive discovery, and the United States Supreme Court has upheld the constitutionality of the challenged INS regulations on their face and has remanded for further proceedings consistent with its opinion; and

WHEREAS, on November 30, 1987, the parties reached a settlement agreement requiring that minors in INS custody in the Western Region be housed in facilities meeting certain standards, including state standards for the housing and care of dependent children, and Plaintiffs' motion to enforce compliance with that settlement is currently pending before the court; and

WHEREAS, a trial in this case would be complex, lengthy and costly to all parties concerned, and the decision of the district court would be subject to appeal by the losing parties with the final outcome uncertain; and

WHEREAS, the parties believe that settlement of this action is in their best interests and best serves the interests of justice by avoiding a complex, lengthy and costly trial, and subsequent appeals which could last several more years;

NOW, THEREFORE, Plaintiffs and Defendants enter into this Stipulated Settlement Agreement

3

(the Agreement), stipulate that it constitutes a full and complete resolution of the issues raised in this action, and agree to the following:

I       DEFINITIONS

As used throughout this Agreement the following definitions shall apply:

1. The term "party" or "parties" shall apply to Defendants and Plaintiffs. As the term applies to Defendants, it shall include their agents, employees, contractors and/or successors in office. As the term applies to Plaintiffs, it shall include all class members.

2. The term "Plaintiff" or "Plaintiffs" shall apply to the named plaintiffs and all class members.

3. The term "class member" or "class members" shall apply to the persons defined in Paragraph 10 below.

4. The term "minor" shall apply to any person under the age of eighteen (18) years who is detained in the legal custody of the INS. This Agreement shall cease to apply to any person who has reached the age of eighteen years. The term "minor" shall not include an emancipated minor or an individual who has been incarcerated due to a conviction for a criminal offense as an adult. The INS shall treat all persons who are under the age of eighteen but not included within the definition of "minor" as adults for all purposes, including release on bond or recognizance.

5. The term "emancipated minor" shall refer to any minor who has been determined to be emancipated in an appropriate state judicial proceeding.

6. The term "licensed program" shall refer to any program, agency or organization that is licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children, including a program operating group homes, foster homes, or facilities for special needs minors. A licensed program must also meet those standards for licensed programs set forth in

4

Exhibit 1 attached hereto.  All homes and facilities operated by licensed programs, including facilities for special needs minors, shall be non-secure as required under state law; provided, however, that a facility for special needs minors may maintain that level of security permitted under state law which is necessary for the protection of a minor or others in appropriate circumstances, e.g., cases in which a minor has drug or alcohol problems or is mentally ill.  The INS shall make reasonable efforts to provide licensed placements in those geographical areas where the majority of minors are apprehended, such as southern California, southeast Texas, southern Florida and the northeast corridor.

7.  The term "special needs minor" shall refer to a minor whose mental and/or physical condition requires special services and treatment by staff.  A minor may have special needs due to drug or alcohol abuse, serious emotional disturbance, mental illness or retardation, or a physical condition or chronic illness that requires special services or treatment.  A minor who has suffered serious neglect or abuse may be considered a minor with special needs if the minor requires special services or treatment as a result of the neglect or abuse.  The INS shall assess minors to determine if they have special needs and, if so, shall place such minors, whenever possible, in licensed programs in which the INS places children without special needs, but which provide services and treatment for such special needs.

8.  The term "medium security facility" shall refer to a facility that is operated by a program, agency or organization licensed by an appropriate State agency and that meets those standards set forth in Exhibit 1 attached hereto.  A medium security facility is designed for minors who require close supervision but do not need placement in juvenile correctional facilities.  It provides 24-hour awake supervision, custody, care, and treatment.  It maintains stricter security measures, such as intensive staff supervision, than a facility operated by a licensed program in order to control problem behavior and to prevent escape.  Such a facility may have a secure perimeter but shall not be equipped internally with

major restraining construction or procedures typically associated with correctional facilities.

## II    SCOPE OF SETTLEMENT, EFFECTIVE DATE, AND PUBLICATION

9. This Agreement sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS and shall supersede all previous INS policies that are inconsistent with the terms of this Agreement. This Agreement shall become effective upon final court approval, except that those terms of this Agreement regarding placement pursuant to Paragraph 19 shall not become effective until all contracts under the Program Announcement referenced in Paragraph 20 below are negotiated and implemented. The INS shall make its best efforts to execute these contracts within 120 days after the court's final approval of this Agreement. However, the INS will make reasonable efforts to comply with Paragraph 19 prior to full implementation of all such contracts. Once all contracts under the Program Announcement referenced in Paragraph 20 have been implemented, this Agreement shall supersede the agreement entitled Memorandum of Understanding Re Compromise of Class Action: Conditions of Detention (hereinafter "MOU"), entered into by and between the Plaintiffs and Defendants and filed with the United States District Court for the Central District of California on November 30, 1987, and the MOU shall thereafter be null and void. However, Plaintiffs shall not institute any legal action for enforcement of the MOU for a six (6) month period commencing with the final district court approval of this Agreement, except that Plaintiffs may institute enforcement proceedings if the Defendants have engaged in serious violations of the MOU that have caused irreparable harm to a class member for which injunctive relief would be appropriate. Within 120 days of the final district court approval of this Agreement, the INS shall initiate action to publish the relevant and substantive terms of this Agreement as a Service regulation. The final regulations shall not be inconsistent with the terms of this Agreement. Within 30 days of final court approval of this

Agreement, the INS shall distribute to all INS field offices and sub-offices instructions regarding the processing, treatment, and placement of juveniles. Those instructions shall include, but may not be limited to, the provisions summarizing the terms of this Agreement, attached hereto as Exhibit 2.

III      CLASS DEFINITION

10. The certified class in this action shall be defined as follows: "All minors who are detained in the legal custody of the INS."

IV       STATEMENTS OF GENERAL APPLICABILITY

11. The INS treats, and shall continue to treat, all minors in its custody with dignity, respect and special concern for their particular vulnerability as minors. The INS shall place each detained minor in the least restrictive setting appropriate to the minor's age and special needs, provided that such setting is consistent with its interests to ensure the minor's timely appearance before the INS and the immigration courts and to protect the minor's well-being and that of others. Nothing herein shall require the INS to release a minor to any person or agency whom the INS has reason to believe may harm or neglect the minor or fail to present him or her before the INS or the immigration courts when requested to do so.

V       PROCEDURES AND TEMPORARY PLACEMENT FOLLOWING ARREST

12.A. Whenever the INS takes a minor into custody, it shall expeditiously process the minor and shall provide the minor with a notice of rights, including the right to a bond redetermination hearing if applicable. Following arrest, the INS shall hold minors in facilities that are safe and sanitary and that are consistent with the INS's concern for the particular vulnerability of minors. Facilities will provide access to toilets and sinks, drinking water and food as appropriate, medical assistance if the minor is in need of emergency services, adequate temperature control and ventilation, adequate supervision to

protect minors from others, and contact with family members who were arrested with the minor. The INS will segregate unaccompanied minors from unrelated adults. Where such segregation is not immediately possible, an unaccompanied minor will not be detained with an unrelated adult for more than 24 hours. If there is no one to whom the INS may release the minor pursuant to Paragraph 14, and no appropriate licensed program is immediately available for placement pursuant to Paragraph 19, the minor may be placed in an INS detention facility, or other INS-contracted facility, having separate accommodations for minors, or a State or county juvenile detention facility. However, minors shall be separated from delinquent offenders. Every effort must be taken to ensure that the safety and well-being of the minors detained in these facilities are satisfactorily provided for by the staff. The INS will transfer a minor from a placement under this paragraph to a placement under Paragraph 19, (i) within three (3) days, if the minor was apprehended in an INS district in which a licensed program is located and has space available; or (ii) within five (5) days in all other cases; except:

      1.      as otherwise provided under Paragraph 13 or Paragraph 21;

      2.      as otherwise required by any court decree or court-approved settlement;

      3.      in the event of an emergency or influx of minors into the United States, in which case the INS shall place all minors pursuant to Paragraph 19 as expeditiously as possible; or

      4.      where individuals must be transported from remote areas for processing or speak unusual languages such that the INS must locate interpreters in order to complete processing, in which case the INS shall place all such minors pursuant to Paragraph 19 within five (5) business days.

B. For purposes of this paragraph, the term "emergency" shall be defined as any act or event that prevents the placement of minors pursuant to Paragraph 19 within the time frame provided. Such

emergencies include natural disasters (e.g., earthquakes, hurricanes, etc.), facility fires, civil disturbances, and medical emergencies (e.g., a chicken pox epidemic among a group of minors). The term "influx of minors into the United States" shall be defined as those circumstances where the INS has, at any given time, more than 130 minors eligible for placement in a licensed program under Paragraph 19, including those who have been so placed or are awaiting such placement.

C.  In preparation for an "emergency" or "influx," as described in Subparagraph B, the INS shall have a written plan that describes the reasonable efforts that it will take to place all minors as expeditiously as possible. This plan shall include the identification of 80 beds that are potentially available for INS placements and that are licensed by an appropriate State agency to provide residential, group, or foster care services for dependent children. The plan, without identification of the additional beds available, is attached as Exhibit 3. The INS shall not be obligated to fund these additional beds on an ongoing basis. The INS shall update this listing of additional beds on a quarterly basis and provide Plaintiffs' counsel with a copy of this listing.

13.  If a reasonable person would conclude that an alien detained by the INS is an adult despite his claims to be a minor, the INS shall treat the person as an adult for all purposes, including confinement and release on bond or recognizance. The INS may require the alien to submit to a medical or dental examination conducted by a medical professional or to submit to other appropriate procedures to verify his or her age. If the INS subsequently determines that such an individual is a minor, he or she will be treated as a minor in accordance with this Agreement for all purposes.

VI    GENERAL POLICY FAVORING RELEASE

14.  Where the INS determines that the detention of the minor is not required either to secure his or her timely appearance before the INS or the immigration court, or to ensure the minor's safety or that

9

of others, the INS shall release a minor from its custody without unnecessary delay, in the following order of preference, to:

    A.    a parent;

    B.    a legal guardian;

    C.    an adult relative (brother, sister, aunt, uncle, or grandparent);

    D.    an adult individual or entity designated by the parent or legal guardian as capable and willing to care for the minor's well-being in (i) a declaration signed under penalty of perjury before an immigration or consular officer or (ii) such other document(s) that establish(es) to the satisfaction of the INS, in its discretion, the affiant's paternity or guardianship;

    E.    a licensed program willing to accept legal custody; or

    F.    an adult individual or entity seeking custody, in the discretion of the INS, when it appears that there is no other likely alternative to long term detention and family reunification does not appear to be a reasonable possibility.

15. Before a minor is released from INS custody pursuant to Paragraph 14 above, the custodian must execute an Affidavit of Support (Form I-134) and an agreement to:

    A.    provide for the minor's physical, mental, and financial well-being;

    B.    ensure the minor's presence at all future proceedings before the INS and the immigration court;

    C.    notify the INS of any change of address within five (5) days following a move;

    D.    in the case of custodians other than parents or legal guardians, not transfer custody of the minor to another party without the prior written permission of the District Director;

E.    notify the INS at least five days prior to the custodian's departing the United States of such departure, whether the departure is voluntary or pursuant to a grant of voluntary departure or order of deportation; and

F.    if dependency proceedings involving the minor are initiated, notify the INS of the initiation of such proceedings and the dependency court of any immigration proceedings pending against the minor.

In the event of an emergency, a custodian may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 72 hours. For purposes of this paragraph, examples of an "emergency" shall include the serious illness of the custodian, destruction of the home, etc. In all cases where the custodian, in writing, seeks written permission for a transfer, the District Director shall promptly respond to the request.

16. The INS may terminate the custody arrangements and assume legal custody of any minor whose custodian fails to comply with the agreement required under Paragraph 15. The INS, however, shall not terminate the custody arrangements for minor violations of that part of the custodial agreement outlined at Subparagraph 15.C above.

17. A positive suitability assessment may be required prior to release to any individual or program pursuant to Paragraph 14. A suitability assessment may include such components as an investigation of the living conditions in which the minor would be placed and the standard of care he would receive, verification of identity and employment of the individuals offering support, interviews of members of the household, and a home visit. Any such assessment should also take into consideration the wishes and concerns of the minor.

11

18.  Upon taking a minor into custody, the INS, or the licensed program in which the minor is placed, shall make and record the prompt and continuous efforts on its part toward family reunification and the release of the minor pursuant to Paragraph 14 above.  Such efforts at family reunification shall continue so long as the minor is in INS custody.

VII    INS CUSTODY

19.  In any case in which the INS does not release a minor pursuant to Paragraph 14, the minor shall remain in INS legal custody.  Except as provided in Paragraphs 12 or 21, such minor shall be placed temporarily in a licensed program until such time as release can be effected in accordance with Paragraph 14 above or until the minor's immigration proceedings are concluded, whichever occurs earlier.  All minors placed in such a licensed program remain in the legal custody of the INS and may only be transferred or released under the authority of the INS; provided, however, that in the event of an emergency a licensed program may transfer temporary physical custody of a minor prior to securing permission from the INS but shall notify the INS of the transfer as soon as is practicable thereafter, but in all cases within 8 hours.

20.  Within 60 days of final court approval of this Agreement, the INS shall authorize the United States Department of Justice Community Relations Service to publish in the <u>Commerce Business Daily</u> and/or the <u>Federal Register</u> a Program Announcement to solicit proposals for the care of 100 minors in licensed programs.

21.  A minor may be held in or transferred to a suitable State or county juvenile detention facility or a secure INS detention facility, or INS-contracted facility, having separate accommodations for minors whenever the District Director or Chief Patrol Agent determines that the minor:

A.    has been charged with, is chargeable, or has been convicted of a crime, or is the subject

12

of delinquency proceedings, has been adjudicated delinquent, or is chargeable with a delinquent act; provided, however, that this provision shall not apply to any minor whose offense(s) fall(s) within either of the following categories:

i.    Isolated offenses that (1) were not within a pattern or practice of criminal activity and (2) did not involve violence against a person or the use or carrying of a weapon (Examples: breaking and entering, vandalism, DUI, etc. This list is not exhaustive.);

ii.   Petty offenses, which are not considered grounds for stricter means of detention in any case (Examples: shoplifting, joy riding, disturbing the peace, etc. This list is not exhaustive.);

As used in this paragraph, "chargeable" means that the INS has probable cause to believe that the individual has committed a specified offense;

B.    has committed, or has made credible threats to commit, a violent or malicious act (whether directed at himself or others) while in INS legal custody or while in the presence of an INS officer;

C.    has engaged, while in a licensed program, in conduct that has proven to be unacceptably disruptive of the normal functioning of the licensed program in which he or she has been placed and removal is necessary to ensure the welfare of the minor or others, as determined by the staff of the licensed program (Examples: drug or alcohol abuse, stealing, fighting, intimidation of others, etc. This list is not exhaustive.);

D.    is an escape-risk; or

E.    must be held in a secure facility for his or her own safety, such as when the INS has

13

reason to believe that a smuggler would abduct or coerce a particular minor to secure payment of smuggling fees.

22.  The term "escape-risk" means that there is a serious risk that the minor will attempt to escape from custody.  Factors to consider when determining whether a minor is an escape-risk or not include, but are not limited to, whether:

A.     the minor is currently under a final order of deportation or exclusion;

B.     the minor's immigration history includes: a prior breach of a bond; a failure to appear before the INS or the immigration court; evidence that the minor is indebted to organized smugglers for his transport; or a voluntary departure or a previous removal from the United States pursuant to a final order of deportation or exclusion;

C.     the minor has previously absconded or attempted to abscond from INS custody.

23.  The INS will not place a minor in a secure facility pursuant to Paragraph 21 if there are less restrictive alternatives that are available and appropriate in the circumstances, such as transfer to (a) a medium security facility which would provide intensive staff supervision and counseling services or (b) another licensed program.  All determinations to place a minor in a secure facility will be reviewed and approved by the regional juvenile coordinator.

24.A.  A minor in deportation proceedings shall be afforded a bond redetermination hearing before an immigration judge in every case, unless the minor indicates on the Notice of Custody Determination form that he or she refuses such a hearing.

B.  Any minor who disagrees with the INS's determination to place that minor in a particular type of facility, or who asserts that the licensed program in which he or she has been placed does not comply with the standards set forth in Exhibit 1 attached hereto, may  seek judicial review in any

United States District Court with jurisdiction and venue over the matter to challenge that placement determination or to allege noncompliance with the standards set forth in Exhibit 1.  In such an action, the United States District Court shall be limited to entering an order solely affecting the individual claims of the minor bringing the action.

C.  In order to permit judicial review of Defendants' placement decisions as provided in this Agreement, Defendants shall provide minors not placed in licensed programs with a notice of the reasons for  housing the minor in a detention or medium security  facility.   With respect to placement decisions reviewed under this paragraph, the standard of review for the INS's exercise of its discretion shall be the abuse of discretion standard of review.  With respect to all other matters for which this paragraph provides judicial review, the standard of review shall be *de novo* review.

D.  The INS shall promptly provide each minor not released with (a) INS Form I-770, (b) an explanation of the right of judicial review as set out in Exhibit 6, and (c) the list of free legal services available in the district pursuant to INS regulations (unless previously given to the minor).

E.  Exhausting the procedures established in Paragraph 37 of this Agreement shall not be a precondition to the bringing of an action under this paragraph in any United District Court.  Prior to initiating any such action, however, the minor and/or the minors' attorney shall confer telephonically or in person with the United States Attorney's office in the judicial district where the action is to be filed, in an effort to informally resolve the minor's complaints without the need of federal court intervention.

VIII    TRANSPORTATION OF MINORS

25.  Unaccompanied minors arrested or taken into custody by the INS should not be transported by the INS in vehicles with detained adults except:

A.  when being transported from the place of arrest or apprehension to an INS office, or

B.   where separate transportation would be otherwise impractical.

When transported together pursuant to Clause B, minors shall be separated from adults.  The INS shall take necessary precautions for the protection of the well-being of such minors when transported with adults.

26.  The INS shall assist without undue delay in making transportation arrangements to the INS office nearest the location of the person or facility to whom a minor is to be released pursuant to Paragraph 14.  The INS may, in its discretion, provide transportation to minors.

IX.   TRANSFER OF MINORS

27.  Whenever a minor is transferred from one placement to another, the minor shall be transferred with all of his or her possessions and legal papers; provided, however, that if the minor's possessions exceed the amount permitted normally by the carrier in use, the possessions will be shipped to the minor in a timely manner.  No minor who is represented by counsel shall be transferred without advance notice to such counsel, except in unusual and compelling circumstances such as where the safety of the minor or others is threatened or the minor has been determined to be an escape-risk, or where counsel has waived such notice, in which cases notice shall be provided to counsel within 24 hours following transfer.

X  MONITORING AND REPORTS

28A.  An INS Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation shall monitor compliance with the terms of this Agreement and shall maintain an up-to-date record of all minors who are placed in proceedings and remain in INS custody for longer than 72 hours.  Statistical information on such minors shall be collected weekly from all INS district offices and Border Patrol stations.  Statistical information will include at least the following: (1)

16

biographical information such as each minor's name, date of birth, and country of birth, (2) date placed in INS custody, (3) each date placed, removed or released, (4) to whom and where placed, transferred, removed or released, (5) immigration status, and (6) hearing dates. The INS, through the Juvenile Coordinator, shall also collect information regarding the reasons for every placement of a minor in a detention facility or medium security facility.

B. Should Plaintiffs' counsel have reasonable cause to believe that a minor in INS legal custody should have been released pursuant to Paragraph 14, Plaintiffs' counsel may contact the Juvenile Coordinator to request that the Coordinator investigate the case and inform Plaintiffs' counsel of the reasons why the minor has not been released.

29. On a semi-annual basis, until two years after the court determines, pursuant to Paragraph 31, that the INS has achieved substantial compliance with the terms of this Agreement, the INS shall provide to Plaintiffs' counsel the information collected pursuant to Paragraph 28, as permitted by law, and each INS policy or instruction issued to INS employees regarding the implementation of this Agreement. In addition, Plaintiffs' counsel shall have the opportunity to submit questions, on a semi-annual basis, to the Juvenile Coordinator in the Office of the Assistant Commissioner for Detention and Deportation with regard to the implementation of this Agreement and the information provided to Plaintiffs' counsel during the preceding six-month period pursuant to Paragraph 28. Plaintiffs' counsel shall present such questions either orally or in writing, at the option of the Juvenile Coordinator. The Juvenile Coordinator shall furnish responses, either orally or in writing at the option of Plaintiffs' counsel, within 30 days of receipt.

30. On an annual basis, commencing one year after final court approval of this Agreement, the INS Juvenile Coordinator shall review, assess, and report to the court regarding compliance with the

17

terms of this Agreement. The Coordinator shall file these reports with the court and provide copies to

the parties, including the final report referenced in Paragraph 35, so that they can submit comments on

the report to the court. In each report, the Coordinator shall state to the court whether or not the INS is

in substantial compliance with the terms of this Agreement, and, if the INS is not in substantial

compliance, explain the reasons for the lack of compliance. The Coordinator shall continue to report on

an annual basis until three years after the court determines that the INS has achieved substantial

compliance with the terms of this Agreement.

31. One year after the court's approval of this Agreement, the Defendants may ask the court to

determine whether the INS has achieved substantial compliance with the terms of this Agreement.

XI    ATTORNEY-CLIENT VISITS

32.A. Plaintiffs' counsel are entitled to attorney-client visits with class members even though

they may not have the names of class members who are housed at a particular location. All visits shall

occur in accordance with generally applicable policies and procedures relating to attorney-client visits at

the facility in question. Upon Plaintiffs' counsel's arrival at a facility for attorney-client visits, the

facility staff shall provide Plaintiffs' counsel with a list of names and alien registration numbers for the

minors housed at that facility. In all instances, in order to memorialize any visit to a minor by

Plaintiffs' counsel, Plaintiffs' counsel must file a notice of appearance with the INS prior to any

attorney-client meeting. Plaintiffs' counsel may limit any such notice of appearance to representation

of the minor in connection with this Agreement. Plaintiffs' counsel must submit a copy of the notice of

appearance by hand or by mail to the local INS juvenile coordinator and a copy by hand to the staff of

the facility.

B. Every six months, Plaintiffs' counsel shall provide the INS with a list of those attorneys who

18

may make such attorney-client visits, as Plaintiffs' counsel, to minors during the following six month period.  Attorney-client visits may also be conducted by any staff attorney employed by the Center for Human Rights & Constitutional Law in Los Angeles, California or the National Center for Youth Law in San Francisco, California, provided that such attorney presents credentials establishing his or her employment prior to any visit.

C.   Agreements for the placement of minors in non-INS facilities shall permit attorney-client visits, including by class counsel in this case.

D.   Nothing in Paragraph 32 shall affect a minor's right to refuse to meet with Plaintiffs' counsel.  Further, the minor's parent or legal guardian may deny Plaintiffs' counsel permission to meet with the minor.

XII   FACILITY VISITS

33.   In addition to the attorney-client visits permitted pursuant to Paragraph 32, Plaintiffs' counsel may request access to any licensed program's facility in which a minor has been placed pursuant to Paragraph 19 or to any medium security facility or detention facility in which a minor has been placed pursuant to Paragraphs 21 or 23.  Plaintiffs' counsel shall submit a request to visit a facility under this paragraph to the INS district juvenile coordinator who will provide reasonable assistance to Plaintiffs' counsel by conveying the request to the facility's staff and coordinating the visit.  The rules and procedures to be followed in connection with any visit approved by a facility under this paragraph are set forth in Exhibit 4 attached, except as may be otherwise agreed by Plaintiffs' counsel and the facility's staff.  In all visits to any facility pursuant to this Agreement, Plaintiffs' counsel and their associated experts shall treat minors and staff with courtesy and dignity and shall not disrupt the normal functioning of the facility.

19

## XIII TRAINING

34. Within 120 days of final court approval of this Agreement, the INS shall provide appropriate guidance and training for designated INS employees regarding the terms of this Agreement. The INS shall develop written and/or audio or video materials for such training. Copies of such written and/or audio or video training materials shall be made available to Plaintiffs' counsel when such training materials are sent to the field, or to the extent practicable, prior to that time.

## XIV   DISMISSAL

35. After the court has determined that the INS is in substantial compliance with this Agreement and the Coordinator has filed a final report, the court, without further notice, shall dismiss this action. Until such dismissal, the court shall retain jurisdiction over this action.

## XV   RESERVATION OF RIGHTS

36. Nothing in this Agreement shall limit the rights, if any, of individual class members to preserve issues for judicial review in the appeal of an individual case or for class members to exercise any independent rights they may otherwise have.

## XVI   NOTICE AND DISPUTE RESOLUTION

37. This paragraph provides for the enforcement, in this District Court, of the provisions of this Agreement except for claims brought under Paragraph 24. The parties shall meet telephonically or in person to discuss a complete or partial repudiation of this Agreement or any alleged non-compliance with the terms of the Agreement, prior to bringing any individual or class action to enforce this Agreement. Notice of a claim that a party has violated the terms of this Agreement shall be served on plaintiffs addressed to:

/ / /

CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey
256 South Occidental Boulevard
Los Angeles, CA 90057

NATIONAL CENTER FOR YOUTH LAW
Alice Bussiere
James Morales
114 Sansome Street, Suite 905
San Francisco, CA 94104

and on Defendants addressed to:

Michael Johnson
Assistant United States Attorney
300 N. Los Angeles St., Rm. 7516
Los Angeles, CA 90012

Allen Hausman
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044

XVII  PUBLICITY

38.  Plaintiffs and Defendants shall hold a joint press conference to announce this Agreement. The INS shall send copies of this Agreement to social service and voluntary agencies agreed upon by the parties, as set forth in Exhibit 5 attached. The parties shall pursue such other public dissemination of information regarding this Agreement as the parties shall agree.

XVIII ATTORNEYS' FEES AND COSTS

39.  Within 60 days of final court approval of this Agreement, Defendants shall pay to Plaintiffs the total sum of $374,110.09, in full settlement of all attorneys' fees and costs in this case.

/ / /

## XIX   TERMINATION

40.  All terms of this Agreement shall terminate the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement, except that the INS shall continue to house the general population of minors in INS custody in facilities that are licensed for the care of dependent minors.

## XX   REPRESENTATIONS AND WARRANTY

41.  Counsel for the respective parties, on behalf of themselves and their clients, represent that they know of nothing in this Agreement that exceeds the legal authority of the parties or is in violation of any law.  Defendants' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Attorney General, the United States Department of Justice, and the Immigration and Naturalization Service, and acknowledge that Plaintiffs enter into this Agreement in reliance on such representation.  Plaintiffs' counsel represent and warrant that they are fully authorized and empowered to enter into this Agreement on behalf of the Plaintiffs, and acknowledge that Defendants enter into this Agreement in reliance on such representation.  The undersigned, by their signatures on behalf of the Plaintiffs and Defendants, warrant that upon execution of this Agreement in their representative capacities, their principals, agents, and successors of such principals and agents shall be fully and unequivocally bound hereunder to the full extent authorized by law.

For Defendants:   Signed: _Doris Meissner_   Title: Commissioner, INS

Dated: _9/16/96_

For Plaintiffs:   Signed: per next page   Title: _____

Dated: _____

22

LODGED

| | |
|---|---|
| 1 | CENTER FOR HUMAN RIGHTS & CONSTITUTIONAL LAW |
| | Carlos Holguín |
| 2 | Peter A. Schey |
| | Charles Song |
| 3 | 256 South Occidental Boulevard |
| | Los Angeles, CA 90057 |
| 4 | Telephone: (213) 388-8693; Fax: (213) 386-9484 |
| 5 | |
| | LATHAM & WATKINS |
| 6 | Steven Schulman |
| | 555 Eleventh St., NW, Suite 1000 |
| 7 | Washington, DC 20004 |
| | Telephone: (202) 637-2184 |
| 8 | |
| 9 | *Of counsel:* |
| | |
| 10 | YOUTH LAW CENTER |
| | Alice Bussiere |
| 11 | 417 Montgomery Street, Suite 900 |
| | San Francisco, CA 94104 |
| 12 | Telephone: (415) 543-3379 x 3903 |
| 13 | *Attorneys for plaintiffs* |

FEB 10 ___ 9:09

<br>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| 17 | JENNY LISETTE FLORES, et al., | ) | Case No. CV 85-4544-RJK(Px) |
| 18 | Plaintiffs, | ) | STIPULATION EXTENDING |
| | | ) | SETTLEMENT AGREEMENT; AND FOR |
| 19 | -vs- | ) | OTHER PURPOSES; AND ORDER |
| | | ) | THEREON. |
| 20 | JANET RENO, Attorney General | ) | |
| | of the United States, et al., | ) | |
| 21 | | ) | |
| 22 | Defendants. | ) | |
| 23 | / / / | | |

IT IS HEREBY STIPULATED by and between the parties as follows:

1. Paragraph 40 of the Stipulation filed herein on January 17, 1997, is modified to read as follows:

"All terms of this Agreement shall terminate ~~the earlier of five years after the date of final court approval of this Agreement or three years after the court determines that the INS is in substantial compliance with this Agreement,~~ *45 days following defendants' publication of final regulations implementing this Agreement.*

~~except that~~ *Notwithstanding the foregoing,* the INS shall continue to house the general population of minors in INS custody in facilities that are state-licensed for the care of dependent minors."

/ / /

1  2. For a period of six months from the date this Stipulation is filed, plaintiffs shall not

2  initiate legal proceedings to compel publication of final regulations implementing this

3  Agreement. Plaintiffs agree to work with defendants cooperatively toward resolving

4  disputes regarding compliance with the Settlement. The parties agree to confer regularly no

5  less frequently than once monthly for the purpose of discussing the implementation of and

6  compliance with the settlement agreement. However, nothing herein shall require plaintiffs

7  to forebear legal action to compel compliance with this Agreement where plaintiff class

8  members are suffering irreparable injury.

9  Dated: December 7, 2001.

CENTER FOR HUMAN RIGHTS &
CONSTITUTIONAL LAW
Carlos Holguín
Peter A. Schey

LATHAM & WATKINS
Steven Schulman

YOUTH LAW CENTER
Alice Bussiere

Carlos Holguín, *for plaintiffs.*

Dated: December 7, 2001.

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service

Arthur Strathern, *for defendants.*
Per fax authorization

IT IS SO ORDERED.

Dated: December ____, 2001.

UNITED STATES DISTRICT JUDGE

1    2. For a period of six months from the date this Stipulation is filed, plaintiffs shall not
2    initiate legal proceedings to compel publication of final regulations implementing this
3    Agreement. Plaintiffs agree to work with defendants cooperatively toward resolving
4    disputes regarding compliance with the Settlement. The parties agree to confer regularly no
5    less frequently than once monthly for the purpose of discussing the implementation of and
6    compliance with the settlement agreement. However, nothing herein shall require plaintiffs
7    to forebear legal action to compel compliance with this Agreement where plaintiff class
8    members are suffering irreparable injury.

9    Dated: December 7, 2001.                    CENTER FOR HUMAN RIGHTS &
                                                 CONSTITUTIONAL LAW
10                                               Carlos Holguin
11                                               Peter A. Schey

12                                               LATHAM & WATKINS
                                                 Steven Schulman
13
14                                               YOUTH LAW CENTER
                                                 Alice Bussiere
15
16
17                                               _____
                                                 Carlos Holguín, *for plaintiffs.*
18   Dated: December 7, 2001.                    Arthur Strathern
19                                               Office of the General Counsel
                                                 U.S. Immigration & Naturalization Service
20
21
22                                               _____
23                                               Arthur Strathern, *for defendants.*
                                                 Per fax authorization
24
25   IT IS SO ORDERED.
26   Dated: December 7, 2001.                    _____
27                                               UNITED STATES DISTRICT JUDGE
28

## PROOF OF SERVICE BY MAIL

I, Carlos Holguin, declare and say as follows:

1. I am over the age of eighteen years and am not a party to this action. I am employed in the County of Los Angeles, State of California. My business address is 256 South Occidental Boulevard, Los Angeles, California 90057, in said county and state.

2. On December 7, 2001, I served the attached STIPULATION on defendants in this proceeding by placing a true copy thereof in a sealed envelope addressed to their attorneys of record as follows:

Arthur Strathern
Office of the General Counsel
U.S. Immigration & Naturalization Service
425 I St. N.W.
Washington, DC 20536

and by then sealing said envelope and depositing the same, with postage thereon fully prepaid, in the mail at Los Angeles, California; that there is regular delivery of mail between the place of mailing and the place so addressed.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of December, 2001, at Los Angeles, California.

| U.S. Department of Homeland Security | Subject ID: ▮▮▮▮▮ | Record of Deportable/Inadmissible Alien |
|---|---|---|

| Family Name (CAPS) ▮▮▮▮ | First | Middle | Sex M | Hair BLK | Eyes BRO | Cmplxn MED |

| Country of Citizenship GUATEMALA | Passport Number and Country of Issue | File Number CASE No: ▮▮▮ | Height 66 | Weight 150 | Occupation LABORER |

U.S. Address

Scars and Marks
NONE VISIBLE

| Date, Place, Time, and Manner of Last Entry
03/27/2014, 2230, 2 mile(s) E of RIO, PWAM (BY RAFT) | Passenger Boarded at |
| F.B.I. Number ▮▮▮▮ | ☒ Single  ☐ Married
☐ Divorced  ☐ Separated
☐ Widower |

| Number, Street, City, Province (State) and Country of Permanent Residence ▮▮▮▮  GUATEMALA | Method of Location/Apprehension PB |

| Date of Birth ▮▮▮▮  Age:16 | Date of Action 03/27/2014 | Location Code RGV/RGC | At/Near RIO GRANDE CITY, TX | Date/Hour 03/27/2014 ▮▮▮ |

| City, Province (State) and Country of Birth ▮▮▮▮  GUATEMALA | AR ☒  Form : (Type and No.) Lifted ☐ Not Lifted ☐ | By See Narrative |

| NIV Issuing Post and NIV Number | Social Security Account Name | Status at Entry PWA Mexico | Status When Found TRAVEL/SEEKING |

| Date Visa Issued | Social Security Number | Length of Time Illegally in U.S. AT ENTRY |

| Immigration Record NEGATIVE | Criminal Record None Known |

| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | Number and Nationality of Minor Children NONE |

| Father's Name, Nationality, and Address, if Known See Narrative | Mother's Present and Maiden Names, Nationality, and Address, if Known See Narrative |

| Monies Due/Property in U.S. Not in Immediate Possession None Claimed | Fingerprinted? ☒ Yes ☐ No | Systems Checks | Charge Code Words(s) I6A |

| Name and Address of (Last)(Current) U.S. Employer | Type of Employment | Salary Hr | Employed from/to |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FINS #: ▮▮▮          I77 #: ▮▮▮▮

Left Index Print                Right Index Print

ARREST COORDINATES:
-------------------
▮▮▮▮

CONSEQUENCE DELIVERY SYSTEM:
----------------------------
Classification: ▮▮▮

| Alien has been advised of communication privileges | (Date/Initials) | BORDER PATROL AGENT
(Signature and Title of Immigration Officer) |

| Distribution:

TO FILE
RGC
MCA | Received: (Subject and Documents)  (Report of Interview)

Officer: ▮▮▮▮
on: March 27, 2014 at 2352          (time)
Disposition: Notice to Appear Released (I-862)
Examining Officer: ▮▮▮▮ |

GOVERNMENT
EXHIBIT
4
B-14-119

Form I-213 (Rev. 08/01/07) Y

U.S. Department of Homeland Security                    **Continuation Page for Form** _____ **I213**

| Alien's Name | File Number | Date |
|---|---|---|
| ● ██████████████ | Event No: ████████ | 03/27/2014 |

**ARRESTING AGENT:**
------------------
██████████████████
██████████████████
██████████████

**FATHER NAME AND ADDRESS:**
--------------------------
████████████████████████
████████████
██████████████████

**MOTHER NAME AND ADDRESS:**
--------------------------
█████████████████████████
██████████████████

**ASSISTING ASSETS:**
------------------
Bikes

**UNACCOMPANIED JUVENILE:**
-------------------------
██████████████████

**NARRATIVE:**
----------
Subject is traveling with his juvenile niece ████████████████████

**IMMIGRATION HISTORY:** No prior immigration history

**CRIMINAL HISTORY:** No prior criminal history

**ENCOUNTER:**
A Border Patrol Agent encountered subject in the Rio Grande Valley, Texas Border Patrol
Sector.  A Border Patrol Agent determined this subject had unlawfully entered the United
States from Mexico, at a time and place other than as designated by the Secretary of the
Department of Homeland Security of the United States.  After determining that the subject
was an alien whom illegally entered the United States, the subject was arrested and
transported to the Rio Grande City Station for further processing using the E3/IDENT and
IAFIS Systems.

| Signature | Title |
|---|---|
| ████████ | BORDER PATROL AGENT |

_____ **2** of _____ **4** Pages

Form I-831 Continuation Page (Rev. 08/01/07)

| U.S. Department of Homeland Security | Continuation Page for Form | I213 |

| Alien's Name | File Number | Date |
| | Event No: | 03/27/2014 |

**IMMIGRATION/CRIMINAL VIOLATION:**
At the Rio Grande City Station, the subject was advised of the administrative rights in removal proceedings.  The subject acknowledged understanding these rights.  The subject claimed to be a citizen and national of Guatemala without the necessary legal documents to enter, pass through, or to remain in the United States.  The subject also admitted to illegally crossing the international boundary without being inspected by an immigration officer at a designated Port of Entry.

**CONSULAR NOTIFICATION:**
The subject was notified of the right to communicate with a consular officer from Guatemala as per Article 36(a)(b) of the Vienna Convention of Consular Relations.  The subject acknowledged understanding the right but declined to speak with anyone at this time.  Furthermore, the subject does not claim to fear persecution or torture if returned to the subject's country of citizenship.

**DISPOSITION:**
The subject was processed for Warrant of Arrest/Notice to Appear as per section 212(a)(6)(A)(i)(I) of the Immigration and Nationality Act.  The subject was served with Forms I-200, I-862, I-286, and the List of Free Legal Service Providers.

Subject was processed for Removal Proceedings (8 USC 1229). Juvenile Coordinator _____ was contacted and detention space at _____ was approved.

**NOTE:**
Subject was unable to make contact with his brother _____ on March 27, 2014 at _____. Several attempts were made to contact _____ at phone # _____ _____, however a message of _____ _____.

**JUVENILE QUESTIONS:**
Q. What is the location of the juvenile's immediate family?
A. The subject's brother lives in Arkansas.

Q. What is the location and phone numbers of any relatives or friends in the United States or contiguous territory?
A.  The subject's brother _____ lives in Arkansas and can be contacted at _____.

Q. What type of locale was the juvenile raised in?
A. Subject was raised in a small town.

Q. Whom did the juvenile live with before leaving home?
A. The juvenile lived with his mother in Guatemala.

Q. What was the length of time in transit, from home to the United States?

| Signature | Title |
| | BORDER PATROL AGENT |

<u>  3  </u> of <u>  4  </u> Pages

Form I-831 Continuation Page (Rev. 08/01/07)

U.S. Department of Homeland Security                    **Continuation Page for Form** _____ I213

| Alien's Name | File Number | Date |
|---|---|---|
| ██ ████████████ | ████████ | 03/27/2014 |
| | Event No: ██████████ | |

A. Subject has been in transit for approximately 12 days.

Q. What route of travel did the juvenile take to come to the United States?
A. The subject traveled from Guatemala to Mexico and from Mexico to the United States.

Q. What was the juveniles intended destination in the United States?
A. The subject claims he was heading to Arkansas.

Q. Who was the person the juvenile was to contact once arriving in the United States
A. The subject claims he was going to contact his brother ███████████████ at ████
████████.

Q. What are the present funds and anticipated method of support for the juvenile?
A. The subject has no funds with him. The subject was going to live with his brother in
Arkansas.

Q. If the juvenile was smuggled into the United States, what arrangements were made?
A. The subject was unaware of the arrangements made.

Q. What is the current health of the juvenile and does the juvenile have any health
problems that he has admitted?
A. The juvenile states and appears to be in good health.

Q. What is the juvenile's current language skill level?
A. The juvenile can read, write, and speak Spanish.

| Signature | Title |
|---|---|
| ████████ | **BORDER PATROL AGENT** |

_____ 4 of _____ 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

**U.S. Department of Homeland Security**

# Notice to Appear

## In removal proceedings under section 240 of the Immigration and Nationality Act:

Subject ID: ███████    FINS #: ███████    File No: ███████

DOB: ███████    Event No: ███████

In the Matter of:

Respondent: _____███████_____ currently residing at:

_____

(Number, street, city and ZIP code)        (Area code and phone number)

☐ 1. You are an arriving alien.

☒ 2. You are an alien present in the United States who has not been admitted or paroled.

☐ 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:
1. You are not a citizen or national of the United States;
2. You are a native of GUATEMALA and a citizen of GUATEMALA ;
3. You arrived in the United States at or near RIO GRANDE CITY, TEXAS, on or about March 27, 2014;
4. You were not then admitted or paroled after inspection by an Immigration Officer.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:
212(a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General.

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to:    ☐ 8CFR 208.30(f)(2)    ☐ 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:
2009 West Jefferson Avenue, Suite 300 Harlingen TX US 78550

_____

(Complete Address of Immigration Court, including Room Number, if any)

on __a date to be set__ at __a time to be set__ to show why you should not be removed from the United States based on the
    (Date)       (Time)

charge(s) set forth above.        ███████        **SUPERVISORY BORDER PATROL AGENT**

(Signature and Title of Issuing Officer)

Date: **March 28, 2014**        Rio Grande City, Texas

_____

(City and State)

**See reverse for important information**

Form I-862 (Rev. 08/01/07) N

### Notice to Respondent

**Warning:** Any statement you make may be used against you in removal proceedings.

**Alien Registration:** This copy of the Notice to Appear served upon you is evidence of your alien registration while you are under removal proceedings. You are required to carry it with you at all times.

**Representation:** If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. Unless you so request, no hearing will be scheduled earlier than ten days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this notice.

**Conduct of the hearing:** At the time of your hearing, you should bring with you any affidavits or other documents, which you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing.

At your hearing you will be given the opportunity to admit or deny any or all of the allegations in the Notice to Appear and that you are inadmissible or removable on the charges contained in the Notice to Appear. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

You will be advised by the immigration judge before whom you appear of any relief from removal for which you may appear eligible including the privilege of departure voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge.

**Failure to appear:** You are required to provide the DHS, in writing, with your full mailing address and telephone number. You must notify the Immigration Court immediately by using Form EOIR-33 whenever you change your address or telephone number during the course of this proceeding. You will be provided with a copy of this form. Notices of hearing will be mailed to this address. If you do not submit Form EOIR-33 and do not otherwise provide an address at which you may be reached during proceedings, then the Government shall not be required to provide you with written notice of your hearing. If you fail to attend the hearing at the time and place designated on this notice, or any date and time later directed by the Immigration Court, a removal order may be made by the immigration judge in your absence, and you may be arrested and detained by the DHS.

**Mandatory Duty to Surrender for Removal:** If you become subject to a final order of removal, you must surrender for removal to one of the offices listed in 8 CFR 241.16(a). Specific addresses on locations for surrender can be obtained from your local DHS office or over the internet at http://www.ice.gov/about/dro/contact.htm. You must surrender within 30 days from the date the order becomes administratively final, unless you obtain an order from a Federal court, immigration court, or the Board of Immigration Appeals staying execution of the removal order. Immigration regulations at 8 CFR 241.1 define when the removal order becomes administratively final. If you are granted voluntary departure and fail to depart the United States as required, fail to post a bond in connection with voluntary departure, or fail to comply with any other condition or term in connection with voluntary departure, you must surrender for removal on the next business day thereafter. If you do not surrender for removal as required, you will be ineligible for all forms of discretionary relief for as long as you remain in the United States and for ten years after departure or removal. This means you will be ineligible for asylum, cancellation of removal, voluntary departure, adjustment of status, change of nonimmigrant status, registry, and related waivers for this period. If you do not surrender for removal as required, you may also be criminally prosecuted under section 243 of the Act.

### Request for Prompt Hearing

To expedite a determination in my case, I request an immediate hearing. I waive my right to a 10-day period prior to appearing before an immigration judge.

Before: _____    _____
                                                 *(Signature of Respondent)*

                                                      Date: _____

_____
*(Signature and Title of Immigration Officer)*

---

### Certificate of Service

This Notice To Appear was served on the respondent by me on <u>March 28, 2014</u>, in the following manner and in compliance with section 239(a)(1)(F) of the Act.

[x] in person      [ ] by certified mail, returned receipt requested      [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[ ] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the _____<u>SPANISH</u>_____ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

████████████████        **BORDER PATROL AGENT**

_____          _____
*(Signature of Respondent if Personally Served)*          *(Signature and Title of officer)*