**LAW OFFICES OF ORLY TAITZ**

**29839 SANTA MARGARITA PKWY, STE 100**

**RANCHO SANTA MARGARITA, CA 92688**

**PH.949-683-5411, FAX 949-766-7603**

**ORLY.TAITZ@HUSHMAIL.COM**

**CA BAR # 233433**



United States District Court
Southern District of Texas
FILED

SEP 1 1 2014

David J. Bradley, Clerk of Court

1:14-cv-119

## US DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## BROWNSVILLE DIVISION

| | |
|---|---|
| **Dr. ORLY TAITZ, ESQ** | ) HON. ANDREW S.  HANEN |
| | ) PRESIDING |
| **PLAINTIFF** | ) |
| **V** | ) DATE OF HEARING |
| **JEH JOHNSON, IN HIS CAPACITY** | ) COURTROOM |
| **OF THE SECRETARY OF DHS,** | ) |
| **SYLVIA BURWELL, IN HER CAPACITY** | ) |
| **OF THE SECRETARY OF HHS,** | ) |
| **BARACK OBAMA, IN HIS CAPACITY** | |
| **OF THE US PRESIDENT,** | ) |

U.S. Border Patrol, Rio Grande Valley Section,     )

Brownsville Station,

JOHN DOES AND JANE DOES 1-100

**FIRST AMENDED COMPLAINT**

**APPLICATION FOR STAY**

**FILED UNDER FRCP 65,**

**REQUEST FOR INJUNCTION RELIEF**

**COMPLAINT FOR DAMAGES**

## JURISDICTION AND VENUE

The U.S. District Court has Jurisdiction in this case, as the defendants are sued in their official capacity as executives of Federal agencies and the premise of the legal action involves actions of Federal agencies and US Code-federal statutes. The subject of this case is transportation of illegal aliens with infectious diseases, criminal records and suspected drug cartel, gangs and terrorist connections. This

transportation originates in the Southern District of Texas, Brownsville area, where illegal aliens are crossing Rio Grande in violation of the U.S. border integrity and U.S. immigration laws.

Additionally, the court has jurisdiction under the diversity of state citizenships.

## PARTIES

Plaintiff, Dr. Orly Taitz ESQ, resident of California, address 29839 Santa Margarita, Ca 92688. Taitz is both a licensed attorney and a medical professional, a licensed Doctor of Dental Surgery and a holder of B. of Med Science. Dr. Taitz is also a President of Defend Our Freedoms Foundation, which is dedicated to the preservation of the Constitutional Freedoms of U.S. Citizens.

Barack Obama is sued in his capacity of the US President.

Jeh Johnson is sued in his capacity as a Secretary of Homeland Security.

Sylvia Burwell is sued in her capacity as the Secretary of the Health and Human Services. Additionally, they are sued as individuals to the extent that their actions go beyond existing laws and/or violate the existing laws.

John Does and Jane Does are individuals who were and are aiding and abetting the named defendants. Plaintiff will be seeking a leave of court to amend the complaint and provide the names of John Does and Jane Does upon discovery.

U.S. Border Patrol, Rio Grande Valley Section, Brownsville station is located at 940 N. FM 511, Olmito, TX 78575

## STATEMENT OF FACTS

Defendants are currently engaged in trafficking illegal aliens with multiple infectious diseases, criminal records in the countries of origin, and affiliation with gangs and terrorist groups, from Texas (Brownsville border region) to California and other areas in the U.S.

According to the July 30, 2014 report by John Roth, Inspector General of the Department of Homeland Security many of these illegal aliens are sick with multiple infectious/communicable diseases, such as Tuberculosis, Scabies, upper respiratory diseases, Lice and other contagious diseases. (Exhibit 2)

According to the border patrol agents ( Exhibit 3), Press release of the Health and Safety officer for the local border Patrol union, Ron Zermeno, and sworn testimony of  Kevin Oaks, Chief, Rio Grande Valley Sector, Border Patrol, U.S. Customs and Border Protection during 08.27. 2014 hearing in this case, illegal aliens with infectious diseases are transported to California and other locations (Exhibit Transcript   of 08.27.2014 hearing).

Defendants claim that they are entitled to transport illegal aliens from Texas to California and elsewhere under Flores v Reno agreement. (Flores v Reno complaint Exhibit 4, Flores v Reno agreements Exhibit 5)

Defendants, also, run advertisements in Spanish, south of the border, and solicit illegal aliens to cross the border into the US claiming that they are entitled to do so under DACA, as long as they allege that they resided in the US prior to 2012, were brought to the U.S. as minors and were subsequently either deported or self deported.

Plaintiff Taitz is a Doctor of Dental Surgery, who is a doctor -provider for several government programs providing care to such individuals. Among them is Medical/Dentical, a California division of Medicaid, provides free medical/dental treatments to illegal aliens.

Several of her patients, who are enrolled in such programs, as well as their relatives, showed up in Taitz office with multiple upper respiratory track diseases and persistent cough.

Taitz got infected and developed persistent cough.

Taitz had to seek medical care, such as doctors visits, antibiotics, lab tests and lung x-rays to check for Tuberculosis and other infectious diseases.

Plaintiff was ordered by her doctor to use for the rest of her life time a positive pressure oxygen machine due to reduced oxygen in blood.

Plaintiff sought a consultation with an expert in epidemiology, Vera Dolan, a graduate of John Hopkins University and University of North Carolina at Chapel

Hill, Master of Science in Public Health (MSPH) in Epidemiology and received the following decision from the epidemiologist :

"As an epidemiologist, I believe that Dr. Taitz's respiratory infection originated from close contact with infected patients who were sent for treatment to her office, in particular immigrants who were detained by the DHS without quarantine or medical treatment for existing communicable diseases and then transported to California.

I believe that Dr. Taitz is in further imminent danger of similar additional infections from immigrant patients detained by the DHS without quarantine or medical treatment for existing communicable diseases.

I believe that quarantine and isolation of these detainees by the DHS to the most stringent current standard of the Centers of Disease Control (CDC) for foreign nationals, examination of each detainee by a trained medical professional to the highest current standard of the CDC for foreign nationals, and a signed medical release prior to transportation and release of each of these detainees into the general public, would solve the problem of the imminent risk of contracting communicable diseases from such detainees by Dr. Taitz and other health care providers who are participating in these programs.

I declare that my assessments are true and correct based on my current knowledge and informed consent." (Exhibit 1, Statement from an epidemiology expert Vera Dolan).

Plaintiff is seeking injunctive relief and damages.

## STATEMENT OF FACTS RELATING TO FLORES V RENO 85-cv-4544 USDC CENTRAL DISTRICT OF CA

Flores v Reno is a stipulation agreement achieved between a group of minor illegal aliens and Attorney General Janet Reno and other Federal Government defendants, which was reached in 1996 and was set to expire by 2003. Due to  2001 amendment in the stipulation, the agreement was supposed to expire within 45 days from the publication of policies stemming from Flores v Reno agreement. Such publication was never made. (Exhibit 4 Flores v Reno complaint and Exhibit 5 Flores v Reno stipulations).

Illegal aliens, who sued the federal government defendants in Flores, were seeking better conditions in incarceration and a right for other relatives, not their parents, to post bail for them, and have them released on bail until their deportation hearing.

Flores v Reno agreement, which became a government policy, allowed such release on bail to non-parents pending deportation ONLY if such illegal alien minors :

a.  Do not represent harm to themselves

b.  Do not represent harm to others

c.  Are assured to appear at deportation hearing

Defendants violated all three prongs of the conditional release of illegal alien minors, as they are releasing minors, who are:

a.  Danger to themselves

b.  Danger to others, like Doctor Taitz

c.  Are not assured to appear for the deportation hearing. As a matter of fact, under current policies the defendants assure the opposite, non-compliance and indeed 90% of these illegal aliens disappear and never show up for the deportation hearings and there is no enforcement or removal.

d.  Due to the actions by the defendants, illegal alien minors are trafficked by the defendants through their employees to California and other locations around the country without any medical examination and while knowing that they come from areas with epidemics and outbreaks of infectious diseases.

e.  They are released to custody of individuals, who are illegal aliens themselves and some who also have a criminal record.

f.  The same individuals routinely show up at the border patrol stations and release multiple minors from different countries, claiming that all of them are their relatives, which effectively turns the policies into a sham.

g.  Some of the individuals, who release minors, are sex traffickers and drug cartel members, who are engaged in "recycling of minors", typically teenage boys 14-17, these teens are released and re-used repeatedly in smuggling different groups of illegal aliens, claiming that these are "family units", where the same children are used as props in human smuggling of multiple illegal aliens.

h.  Some of these minors are gang members, who admitted to being members of violent gangs and previously committed murder, robbery and kidnappings in the countries of origin.

i.  Some minors are used in drug smuggling or used in digging tunnels, which are used by the drug smugglers.

j.  Some alleged minors are suspected members of terrorist organizations

k.  Nobody knows whether these individuals are indeed minors, as they claim, as they do not have valid IDs.

l.  These illegal aliens are trafficked by the defendants all over the nation and billions of tax payer funds are misappropriated and stolen from the U.S. treasury and the U.S. taxpayers for their transportation, healthcare and education.  $84,000 per year is paid to every U.S. foster family, which fosters these illegal aliens.

m.  Opposite to practice described in Flores v Reno complaint, and an understanding that bail will be posted, illegal aliens are being released without any bail.

n.  According to HHS representative, Diane Oakes, defendants egregiously violated Flores agreement by advising HHS employees that they are forbidden to request bail, while releasing such minors.  (Exhibit 6 Transcript of 08.27.2014 hearing).

o.  In spite of the knowledge of epidemics of infectious diseases among these illegal aliens, they are released and the health release is signed by the border patrol agents, who do not have medical education and not by doctors

Plaintiff was within the zone of danger and a foreseeable plaintiff under Flores v Reno.   Plaintiff, who is a doctor, is a provider for a number of government programs which provide care for such immigrants.

Multiple immigrants with multiple upper respiratory diseases appeared in her office exhibiting persistent cough.

After working within close proximity to these patients and being exposed to their blood, saliva and tissues, plaintiff contracted an upper respiratory inflammation and developed a persistent cough.

Plaintiff was radiographed to check for Tuberculosis and she underwent a course of antibiotics.

She lost time from work and she further developed insufficient oxygen saturation in blood and was ordered by her doctor to use for the rest of her life a positive pressure oxygen machine at nighttime, while sleeping.

Positive pressure oxygen machine alone costs $1,600 and needs to be replaced every five years.

Additionally, she is in immediate danger of contracting infectious diseases, as she continues working with aforementioned individuals.

Plaintiffs clearly violated Flores v Reno stipulation by releasing individuals, who are a threat to themselves and to others.

## FACTS REGARDING DACA

DACA- is an acronym for Deferred Action for Children Arrivals.

DACA, is a memorandum signed by the former Secretary of Homeland Security Janet Napolitano in 2012 and re- signed by defendant herein, current Secretary of Homeland Security, Jeh Johnson.

DACA was presented to the public as a brain child of Barack Obama, a directive of Barack Obama, which was carried out by two secretaries of Homeland Security: Napolitano and Johnson.

DACA defers deportation of illegal aliens, who claim that they came to the US before 2012 as minors.

DACA, also, allows illegal aliens, **who currently reside in other countries**, to cross the border and seek deferral from deportation, as long as they claim that they once resided in the US, were brought to the U.S. as minors prior to 2012 and were previously deported or self deported.

Currently, defendants are running ads in Spanish     language media, such as Univision, which transmits in Mexico and Central America inciting illegal aliens to cross the border and claiming that they will be eligible for work permits in the US, if they claim that they resided in the  US prior to 2012 and were brought to the U.S. as children and self deported.

According to PEW research one third of the population of Mexico would like to move to the U.S.

The population of Mexico is around 120 million, which means that some 40 million can move to the U.S. by claiming that they were here before 2012, were brought to the U.S. as children and self deported. Same goes for hundreds of thousands of individuals from 75 other countries, who are crossing the U.S. borders.

DACA is a clear reason for the flood of illegal aliens.

Additionaly, Barack Obama, defendant herein already announced that he will be extending DACA and is planning to grant amnesty to some 5-6 million illegal aliens, who are adult relatives of DACA recipients, which de facto amounts to complete annihilation of the U.S. immigration laws, US borders and U.S. national sovereignty. This massive amnesty was planned to happen before November 4, 2014 midterm election, however recently Obama announced that this amnesty or deferral will happen after the election. No clear explanation was given for the delay. Some argued that it was done to help vulnerable Democrats to hold on to the Senate majority, as the public is livid about the amnesty,  however Obama claims that the reason is not political and not related to elections. Some believe that this sudden pause in the contemplated even larger amnesty/deferral is due to this case at hand and due to the upcoming October 29th injunction hearing.

DACA is the source of injuries and imminent further injuries for the plaintiff and similarly situated individuals.

DHS on line web site is telling the public that individuals who fall under DACA are eligible for U.S. work permits. Not only defendants do not have any authority to grant permits to illegal aliens, they are flagrantly violating

## 8 U.S. Code § 1226 (b) - Apprehension and detention of aliens

(a) Arrest, detention, and release

On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—

(1) may continue to detain the arrested alien; and

(2) may release the alien on—

(A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or

(B) conditional parole; but

(3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization. (emphasis added).

Unless this court reviews completely unconstitutional waiver of immigration and deportation laws for millions of people, called DACA, millions of people will

continue flooding this nation and the flood of infectious diseases, crime and terrorism will continue.

Plaintiff is seeking a declaratory relief, finding DACA unconstitutional and staying all waivers of deportation under DACA.

**STATEMENT OF FACTS REGARDING EBOLA.**

Ebola is a deadly disease, for which there is no vaccination or cure and the death rate is 60-90%.

Ebola is raging in a number of African countries, among them Guinea, Sierra Leon, Liberia, Nigeria and the Democratic Republic of Congo.

A number of nations, flying to African countries, affected with Ebola, have suspended the flights in order to protect their citizens .

This administration did not suspend any such flights.

Defendants,  Secretary of Health and Human Services and Secretary of Homeland Security are in charge of protecting the citizens from epidemics.

Individuals from 75 countries illegally cross Texas-Mexican border, including individuals from countries affected by Ebola epidemic.

Doctors, such as the plaintiff herein, get in close contact with patients and are at a heightened risk in contracting Ebola.

Plaintiff is seeking a quarantine of individuals who illegally crossed the border in order to ascertain exposure to infectious diseases and provide treatment and obtain medical release prior to release to the general population, as well as a   Writ of Mandamus or an Injunctive order to the defendants to either suspend flights to Ebola affected regions or    quarantine all individuals coming from Ebola affected regions.

## STANDING UNDER 5 USCA §702

### Administrative Law and Procedure

Party meets standard for standing under Administrative Procedure Act if it is arguably within zone of interests that Congress sought to protect or regulate under statute in question. 5 U.S.C.A. § 702.

Parties show protected interest for standing to bring action under provision of the Administrative Procedure Act (APA), which allows standing for one aggrieved by agency action within meaning of relevant statute, if ,either, they were intended by Congress as "beneficiaries" of statute or it could be inferred that Congress intended them as suitable challenger. 5 U.S.C.A. § 702.

Under Flores v Reno, illegal aliens can be released on bail from detention only if they do not represent danger to themselves and others and are assured to appear at the deportation hearing (Exhibit 2 Flores v Reno settlement).

The release, by the defendants, of individuals with infectious diseases and contamination of  doctors who are in a close contact with these aliens, places plaintiff, Taitz, in the zone   of interest and  makes Taitz  a foreseeable plaintiff under 5 USCA §702

## STANDING UNDER PRECEDENT OF NORTHWEST FOREST WORKERS ASS'N V. LYNG UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA.APRIL 25, 1988, 688 F.SUPP. 1

*N. W Forest Workers Ass 'n,* **688** F. Supp. at **3** n.2 (holding that nonprofit organization
"concerned with the economic, environmental and demographic effects of immigration" had standing
to challenge immigration regulations on the ground that the regulations improperly expanded the scope of a guest worker program.
Here plaintiff is challenging an illegal and unconstitutional immigration program DACA and unlawful policies and improper interpretation of  requirements under Flores v Reno.

## STATEMENT OF FACTS IN RELATION TO INJURIES AND STANDING

**PLAINTIFFS INJURIES ARE AS FOLLOWS:**

**A. HEALTH INJURY RELATED TO ONGOING EXPOSURE TO INFECTIOUS DISEASES AND AN IMMINENT INJURY FOR RE-EXPOSURE**

Plaintiff realleges all prior paragraphs and alleges injury due to upper respiratory infection suffered upon treatment of the immigrants, as well as imminent threat of re-infection due to continuous referral of immigrants with multiple infectious diseases, such as Scabies, Tuberculosis, Lice, Rabies, H1N1 (Swine Flu), Denge Fever and other infectious diseases.

**B. ECONOMIC INJURY RELATED TO FURTHER MEDICAL COSTS**

**Plaintiff incurred medical costs in the form of doctor's visits, x-rays, antibiotics and will pay for the positive pressure oxygen machine for the rest of her life. Full extent of damages to be established upon discovery.**

**C. INJURY RELATED TO NEGATIVE EFFECT ON THE COMMUNITY BY UNCONSTITUTIONAL EXPANDING OF AUTHORITY BY THE DEFENDANTS IN LINE WITH STANDING IN PRECEDENT OF N.W. FOREST WORKERS ASS'N V LYNG** (United States District Court, District of Columbia. April 25, 1988 688 F.Supp. 1 1988 WL 49583) 688 F. Supp. at 3 n 2 holding that nonprofit organization "concerned with the economic, environmental

and demographic effects of immigration" **had standing to challenge immigration regulations on the ground that the regulations improperly expanded the scope of a guest worker programs."** (emphasis added)

Here, plaintiff is seeking a redress of demographic, economic and environmental effects of actions and policies by the defendants, which go far and above of the constitutional authority. Current schemes and policies by the defendants cause the flood of illegal aliens, place plaintiff and others similarly situated in danger of infectious diseases, crime and terrorism and rob affected communities of resources, jobs, benefits and wages, as well as deprive local schools and hospitals of funding.

**SCOPE OF REVIEW**

"The United States Supreme Court has provided guidance on the manner in which a court determines whether an agency's regulations are consistent with statutory mandate. *See Chevron, U.S.A., Inc., v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). First, a court determines whether Congress has spoken directly on the issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If, however, the court determines that Congress has not directly spoken of the question at issue "the court does not simply impose its own

construction on the statute ... [r]ather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782; *see Mead Johnson Pharmaceutical Group v. Bowen,* 838 F.2d 1332, 1335-36 (D.C.Cir.1988) (court questions whether the agency's construction of the statute is rational and consistent with the statute). "It is principally where Congressional intent is not clear from the statutory text and the legislative history that a reviewing court gives substantial deference to `reasonable' agency constructions." *Catholic Social Services, Inc. v. Meese,* 664 F.Supp. 1378, 1383 (E.D.Cal.1987) (interpreting § 1160(d) of the IRCA) (citing *I.N. S. v. Cardoza-Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 1220 n. 29, 94 L.Ed.2d 434 (1987)). In determining whether the agency's interpretation is reasonable, the Court must confine its inquiry to statements and materials before the agency in the course of its rulemaking. *AFL-CIO v. Brock,* 835 F.2d 912, 918 (D.C.Cir.1987) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.,* 463 U.S. 29, 50, 103 S.Ct. 2856, 2870, 77 L.Ed.2d 443 (1983))." N.W. Forest Workers Ass'n, 688 F. Supp.

Plaintiff alleges that defendants, who are in charge of the agencies: DHS and HHS, have exceeded statutory mandate within Article 8 and unconstitutionally instituted policies of DACA, as well as improperly interpreted agreements within Flores v Reno which caused damages suffered by the plaintiff and which cause an ongoing

threat of further imminent damage of exposure to infectious diseases, crime, terrorism and negative economic effects on affected communities.

## D. INJURY SUFFERED AS A FEDERAL TAXPAYER UNDER THE PRECEDENT OF FLAST V COHEN

## 392 U.S. 83 (1968)

.

Current policies by the defendants violate Fifth and Fourteenth Amendment guaranteed due process rights and represent unlawful and unconstitutional taking in the form of an expenditure for trafficking illegal aliens around the country at tax payer expense, for advertising and soliciting illegal aliens from other countries to cross the border and allege eligibility under DACA, payment of $7,000 per month/ $84,000 per year per foster family for fostering of illegal aliens, for health care, education and social services for illegal aliens, all at taxpayer expense without any constitutional basis to do so and in clear violation of Title 8, which forbids such actions and which prescribes criminal penalties for such actions.

While some argue that Flast v Cohen is limited to challenges based on Establishment Clause only, Flast v Cohen is not limited to the Establishment clause controversies: "**Our decisions establish that, in ruling on standing, it is both**

appropriate and necessary to look to the substantive issues for another purpose, namely, to determine whether there is a logical nexus between the status asserted and the claim sought to be adjudicated. For example, standing requirements will vary in First Amendment religion cases depending upon whether the party raises an Establishment Clause claim or a claim under the Free Exercise Clause. Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power. Thus, our point of reference in this case is the standing of individuals who assert only the status of federal taxpayers and who challenge the constitutionality of a federal spending program. Whether such individuals have standing to maintain that form of action turns on whether they can demonstrate the necessary stake as taxpayers in the outcome of the litigation to satisfy Article III requirements."

**Flast v Cohen** 392 U.S. 83 (1968)

## Violation of California Health and safety code   §2554 et seq

Federal court is allowed to assume supplemental jurisdiction over violations of state statutes, which are within the same nucleus of facts as the federal statutes or if the case is filed in diversity of citizenship.

The case at hand is both a diversity case and the case of violation of federal statutes and agreements.

CA §2554 allows for quarantine of individual with infectious diseases.

Based on the report of the Inspector General of the Department of Homeland security multiple illegal aliens have infectious diseases which require quarantine.

## NEGLIGENCE

## NEGLIGENCE PER SE-VIOLATION OF STATUTE

8 U.S.C. §§ 1225 (inspection of aliens and expedited removal)
**(A) Screening**

(i) In general If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182 (a)(6)(C) or 1182 (a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

## 8 U.S. Code § 1182 - Inadmissible aliens

**(a) Classes of aliens ineligible for visas or admission**

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

**(1) Health-related grounds**

**(A) In general**

Any alien—

(i) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to have a communicable disease of public health significance; [1]

(ii) except as provided in subparagraph (C), who seeks admission as an immigrant, or who seeks adjustment of status to the status of an alien lawfully admitted for permanent residence, and who has failed to present documentation of having received vaccination against vaccine-preventable diseases, which shall include at least the following diseases: mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B, and any other vaccinations against vaccine-preventable diseases recommended by the Advisory Committee for Immunization Practices,

(iii) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services in consultation with the Attorney General)—

(I) to have a physical or mental disorder and behavior associated with the disorder that may pose, or has posed, a threat to the property, safety, or welfare of the alien or others, or

(II) to have had a physical or mental disorder and a history of behavior associated with the disorder, which behavior has posed a threat to the property, safety, or welfare of the alien or others and which behavior is likely to recur or to lead to other harmful behavior, or

(iv) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict,

is inadmissible.

**(2) Criminal and related grounds**

**(A) Conviction of certain crimes**

(i) In general Except as provided in clause (ii), any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of—

(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or

(II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21),

 is inadmissible.

(ii) Exception Clause (i)(I) shall not apply to an alien who committed only one crime if—

(I) the crime was committed when the alien was under 18 years of age, and the crime was committed (and the alien released from any confinement to a prison or correctional institution imposed for the crime) more than 5 years before the date of application for a visa or other documentation and the date of application for admission to the United States, or

(II) the maximum penalty possible for the crime of which the alien was convicted (or which the alien admits having committed or of which the acts that the alien admits having committed constituted the essential elements) did not exceed imprisonment for one year and, if the alien was convicted of such crime, the alien was not sentenced to a term of imprisonment in excess of 6 months (regardless of the extent to which the sentence was ultimately executed).

### (B) Multiple criminal convictions

Any alien convicted of 2 or more offenses (other than purely political offenses), regardless of whether the conviction was in a single trial or whether the offenses arose from a single scheme of misconduct and regardless of whether the offenses involved moral turpitude, for which the aggregate sentences to confinement were 5 years or more is inadmissible.

### (C) Controlled substance traffickers

Any alien who the consular officer or the Attorney General knows or has reason to believe—

(i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so; or

(ii) is the spouse, son, or daughter of an alien inadmissible under clause (i), has, within the previous 5 years, obtained any financial or other benefit from the illicit activity of that

alien, and knew or reasonably should have known that the financial or other benefit was the product of such illicit activity,

is inadmissible.

In clear violation of 8 USC 1182 and based on admissions by the INS, HHS and BP representatives, who testified during 08.27.2014 hearing in the case at hand, defendants violated 8 USC§1182 and did not turn around and admitted reported 290,000 illegal aliens who either had communicable diseases, who had no records of any vaccinations, ones who had mental disorders, ones who were drug abusers and ones who were all of the above.

Based on the above, defendants committed at least 290,000 counts of negligence per se, which led to injuries suffered by the plaintiff in exposure to contagious diseases and she was placed in immediate danger of re-infection with contagious diseases as a result of actions by the defendants.

Additionally, plaintiff and similarly situated individuals were exposed to crime and terrorism, as defendants in violation of 8USC 1182 (2) admitted multiple individuals who are known gang members and cartel members and even ones who admitted to committing crimes in the countries of origin, such as kidnapping, robbery and murder.

**Violation of CA Health and safety code §2554 represents negligence per se**

**Plaintiff realleges prior argument in relation to  violation of §2554, which represents negligence per se.**

# NEGLIGENCE- COMMON LAW IN RELATION TO TRAFFICKING BY DEFENDNTS OF INDIVIDUALS WITH INFECTIOUS DISEASES AND NOT PROVIDING ANY WARNINGS TO THE COMMUNITY

Plaintiff incorporates by reference all prior paragraphs as if fully pled herein.

**1. Defendants were negligent in transporting to different states, including California, illegal aliens with infectious diseases.**

**2. Defendants were negligent in not warning the communities where these individuals were trafficked, that members of the community and especially individuals who are in close contact with these illegal aliens, of possible infection.**

**3. Defendants were negligent in not having sufficient doctors checking illegal aliens prior to their trafficking and release into communities.**

**Based on August 27, 2014 sworn testimony of** Teresa M. Brooks, Supervisory Field Program Specialist- South Texas, Division of Children's Services, Office of Refugee Resettlement, Administration of Children and Families, U.S. Department of Health and Human Services, there are only two medical doctors supervising 90 detention facilities. Each facility has between 35 to 200 detainees. Two medical doctors are located in Washington DC, while the detainees are mostly in Texas. This makes a ratio of 1 doctor to some 5,000 detainees, while average ratio in the U.S. is one doctor to 400 people. Insufficient number of doctors led to trafficking of illegal aliens with infectious diseases and constituted negligence. (Exhibit Transcript of August 27, 2014 hearing Taitz v Johnson)

4. Lack of properly trained and educated individuals represented negligence and led to spread of infectious diseases.

a. Defendant, Obama, was negligent in appointing defendant Burwell with zero medical background and training to the position of the Secretary of Health and Human Services.

b. Defendant Burwell was negligent in appointing Teresa Brooks to the position of a supervisor, even though Brooks is not a doctor or a nurse and her only connection to medicine is past work as a lab tech in the army.

c. Health releases to illegal aliens prior to release and transportation are given by border patrol agents who have no medical background based on August 27, 2014 sworn testimony in this case by Kevin Oaks,  Chief, Rio Grande Valley Sector, Border Patrol, U.S. Customs and Border Protection.
d. Negligence in not keeping documentation on half of the illegal aliens trafficked and released by the defendants.
e. Negligence in not collecting bail from guarantors prior to release.
f. Negligence in not checking criminal record and identity in the countries of origin prior to release.
g. Negligence in not securing the U.S.-Mexican order and allowing a flood of illegal aliens through the wide open border.

## NEGLIGENCE BY DEFENDANTS LED TO DAMAGES SUFFERED BY

## THE PLAINTIFF

Plaintiff is a doctor working with government plans, where she provides treatment to such immigrants.

Plaintiff came in close contact with infected individuals and was repeatedly infected with upper respiratory diseases.

Plaintiff developed persistent cough and had to take time from work, had X-rays, lab tests, doctor's visits and was ordered by her doctor to use a positive pressure oxygen machine for the rest of her life due to insufficient lung function and insufficient oxygen in blood.

Plaintiff was foreseeable and was in a zone of danger of being infected.

Plaintiff's injuries are actual and foreseeable and directly stem from the actions by the defendants.

Defendants are liable to the plaintiff for the damages.

Injunction is needed to stop ongoing exposure to infectious diseases and re-infection and damages.

## FRAUD

**1. Fraud in advising the public that illegal aliens transported to California and other locations are healthy**

**Sworn testimony by INS, BP and HHS representatives during August 27, 2014 hearing (Exhibit transcript of August 27, 2014 hearing), as well as E2 "Press release from Ronald Zermeno" health and safety officer, revealed that**

defendants were shipping illegal aliens with infectious diseases to California and other states, while telling the public that these individuals were checked and healthy.

2. Fraud in stealing tax payer funds to provide free medical treatment to illegal aliens. Medical/Dentical is a California division of Medicaid, a federal program which was supposed to provide care for U.S. citizens only. Excerpt from

"Medi-Cal Eligibility and Covered California - Frequently Asked Questions http://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Medi-CalFAQs2014b.aspx#1" shows that the illegal aliens are offered and encouraged to receive free medical and dental care at the expense of the U.S. tax payers:

Back to Medi-Cal FAQs 2014

Below you will find the most frequently asked questions for current and potential Medi-Cal coverage recipients. If you do not find an answer to your question, please contact your local county office from our County Listings page or email us at  Medi-Cal Contact Us.

### *Citizenship/Immigration*
**1. What eligibility requirements will an undocumented person have to meet come 2014?**

An undocumented person must meet the same eligibility requirements as any other beneficiary such as income limits and California residency in 2014.

**2. Does everyone on the application have to be a U.S. citizen or U.S. national?**