No. You may qualify for health insurance through Medi-Cal even if you are not a U.S. citizen or a U.S. national.

**3. Will I qualify for health insurance if I am not a citizen or do not have satisfactory immigration status?**

Anyone who lives in California can apply for health insurance using this application. Only people who are applying must provide Social Security numbers or information about immigration status.

But you may qualify for certain health insurance programs regardless of your immigration status and even if you do not have a Social Security number.

We keep your information private and only share information with other government agencies to see which programs you qualify for. "**http://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Medi-CalFAQs2014b.aspx#1**

**3. Fraud in claims of complying with Flores v Reno**

**Plaintiff realleges all prior paragraphs as if fully pled herein.**

**Defendants alleged that they complied with Flores v Reno, which requires them not to release illegal alien minors who are a danger to themselves and others and who are not assured to show up for a deportation hearing.**

**In reality in 33 out of some 68 detention centers checked by Inspector General of the Department of Homeland Security, there were no records of any access to any prescription medications,   detainees were released without observing**

**the incubation period quarantine and became a danger to themselves and others.(Exhibit 2)**

Kevin Oaks, Chief, Rio Grande Valley Sector, Border Patrol, U.S. Customs and Border Protection testified that he signed  releases for detainees attesting that they are healthy, however he admitted on the stand that he did not even know what incubation period is.

Further, detainees were released to illegal alien guarantors, some of whom have a criminal record and release was done without bail. Under these conditions detainees not only were not guaranteed to appear for their deportation hearings, they were guaranteed <u>NOT</u> to appear, such policies represented flagrant fraud.

## CIVIL RICO 18 USC 1062-1965

### Plaintiff re-alleges all prior paragraphs as if fully pled herein

### PREDICATE ACTS

if the act indictable under section <u>659</u> is felonious, section <u>664</u> (relating to embezzlement from pension and welfare funds), section <u>1341</u> (relating to mail fraud),

section <u>1343</u> (relating to wire fraud), section <u>1344</u> (relating to financial institution fraud),

section <u>1351</u> (relating to fraud in foreign labor contracting), section <u>1425</u> (relating to the

procurement of citizenship or nationalization unlawfully), section 1426 (relating to the

reproduction of naturalization or citizenship papers), section 1427 (relating to the sale of

naturalization or citizenship papers),  section 1503 (relating to obstruction of justice),

section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to

the obstruction of State or local law enforcement), section 1512 (relating to tampering with

a witness, victim, or an informant), section 1513 (relating to retaliating against a witness,

victim, or an informant),  (D) any offense involving fraud connected with a case under title

11 (except a case under section 157 of this title), (F) any act which is indictable under the

Immigration and Nationality Act, section 274 (relating to bringing in and harboring certain

aliens), section 277 (relating to aiding or assisting certain aliens to enter the United States),

or section 278 (relating to importation of alien for immoral purpose) if the act indictable

under such section of such Act was committed for the purpose of financial gain, or (G) any

act that is indictable under any provision listed in section 2332b (g)(5)(B);

a. Fraud- sham Enforcement and Removal proceedings

As admitted by the defense at 08.27.2014 hearing, defense is engaged in sham

deportation, removal and immigration enforcement.

Defendants are engaged in a de-facto human trafficking of illegal aliens.

Adult illegal aliens are simply released from INS custody on their own

recognizance with only a notice to appear for a deportation hearing, while it is

clear that they will not appear for a deportation hearing, and over 90% of them do not appear.

Illegal aliens, who are minors or who claim to be minors, are trafficked by the defendants from Texas to California and other areas around the country at the expense of the tax payers, without any constitutional right to do so.

Tax payer funds are stolen/misappropriated by the defendants in order to complete trafficking of illegal alien minors to their illegal alien patents.

No bond is being collected.

Ninety percent of these illegal alien minors never appear at the deportation hearings.

Defendants further steal/misappropriate tax payer funds by placing illegal alien minors in the foster care system and paying $7,000 per month/$84,000 per year per foster family to house them and providing them with education and health care at tax payer expense.

Plaintiff is a doctor- provider for these illegal alien minors.

As a result of fraudulent enforcement proceedings, plaintiff was repeatedly exposed to multiple respiratory track diseases from the individuals, who are being human trafficked by the defendants.

Her damages are foreseeable and are proximately and actually related to fraud and fraudulent /sham enforcement by the defendants.

    b. **Fraud in not disclosing to the public epidemics of infectious diseases Defendants are not notifying the public what infectious diseases are fund in the population of the illegal aliens, who are being trafficked by the defendants all over the country.**

    c. **Fraud in claiming that criminal records of illegal aliens were checked, when they were not checked and exposing the plaintiff and others similarly situated to the threat of crime and terrorism**

**Exhibit 1, Report from John Roth, Inspector General of DHS confirms that many illegal alien children have communicable diseases, including respiratory illnesses, tuberculosis, chicken pox and scabies.**

    • Many UAC and family units require treatment for communicable diseases,

      including respiratory illnesses, tuberculosis, chicken pox, and scabies.

      • UAC and family unit illnesses and unfamiliarity with bathroom facilities resulted in unsanitary conditions and exposure to human waste in some holding facilities.

- **DHS employees reported exposure to communicable diseases and becoming sick on duty.  For example, during a recent site visit to the Del Rio USBP Station and Del Rio Port of Entry, CBP personnel reported contracting scabies, lice, and chicken pox.  Two CBP Officers reported that their children were diagnosed with chicken pox within days of the CBP Officers' contact with a UAC who had chicken pox.  In addition, USBP personnel at the Clint Station and Santa Teresa Station reported that they were potentially exposed to tuberculosis." Report of the Inspector General (exhibit 2), the press release of the health and safety officer (exhibit 3) as well as August 27, 2014 of Kevin Oakes (Exhibit 7-Transcript of August 27, 2014 hearing) show that individuals with infectious diseases were transported by the defendants.**

Defendants were obligated to quarantine all of the individuals with infectious diseases and all of the individuals, who got in contact with individuals with infectious diseases.

Defendants did not quarantine these individuals and trafficked them all over the country.

Defendants created outbreaks and epidemics of infectious diseases.

Further, defendants are engaged in obstruction of justice and intimidation of witnesses and retaliation against the whistle- blower.

Border Patrol officer Ron Zermeno was a whistle blower and disclosed:

1. Defendants are not checking sick illegal aliens and are engaged in trafficking around the country of illegal aliens with infectious diseases. Several border patrol officers got infected.

2. Zermeno reported on an armed incursion into the U.S. by several armed individuals, who used underground tunnels and emerged from the tunnels around Chula Vista area. After the disclosure defendants intimidated and harassed the whistleblower and informer Ron Zermeno. He was placed on a cease and desist gag order preventing him from talking, A written reprimand was placed in his employee file, and he was threatened with termination of his employment with the U.S. Border Patrol. Under duress and under pressure of possible employment termination Zermeno signed a declaration where he claimed that he did not know who Taitz was until Judge Hanen ordered subpoenas to be signed on August 25, 2014 and that he did not want to testify.

In fact, several days prior to signing of the order to issue subpoenas, through written text messages and phone conversations with fellow border patrol

officers, Zermeno agreed to appear at August 27, 2014 hearing before Judge Hanen and was willing to produce evidence of aforementioned violations by the defendants.

Defendants engaged in RICO activity not only to commit fraud, conspiracy to commit fraud, to misappropriate tax payer funds on prohibited activity of enticing illegal immigration, trafficking illegal aliens and paying billions for health care, education, foster care and other social needs of illegals, but they also engaged in duress, and intimidation of a witness with a goal     of not only obstructing justice, but also, to defame the plaintiff and place plaintiff in false light in the eyes of the court.

### CAUSE OF ACTION- DEFAMATION OF CHARACTER

Plaintiff incorporates by reference all prior paragraphs as if fully pled herein.

Defendants, including  John Does and Jane Does engaged in the defamation of character of the plaintiff.

Defendants engaged in fraud, falsification of records and duress upon the witness and whistleblower in order to defame the plaintiff.

Between August 25 and  August 27, 2014  John Doe and Jane Doe defendants applied pressure and duress on prospective witness and federal whistleblower

Ron Zermeno, with the goal of covering up the wrongdoing by the defendants and defaming the plaintiff in the eyes of the court.

Under duress of the termination of employment and duress of threatened civil and criminal sanctions, Zermeno signed a declaration which was not true, where he claimed that he did not know who Taitz was and did not consent to appear in court.

In fact, on August 23, 2014, two days prior to the subpoena from the court, Zermeno, in writing, agreed to appear in court in Brownsville, Texas and provide evidence of the defendants trafficking sick children from Texas to California.

This fraud, duress and manipulation was done to defame the plaintiff, to lower her standing in the community and make her look as not trustworthy, as plaintiff wrote to the court that four border patrol agents, including Zermeno agreed to testify in court.

Plaintiff is a licensed attorney. Aforementioned actions by the defendants constituted defamation per se, as through the actions by the defense she was wrongfully accused of fraud on the court.

Further, plaintiff sent to the clerk of the court, the chambers and the defense identical motions seeking the court to issue subpoenas for four border patrol agents. Motion contained 10 pages of pleadings and several exhibits. (Exhibit 6)

When the motion was docketed, plaintiff noticed that all of the exhibits were sealed  and some 7 out of 10 pages were missing.

On a previous occasion plaintiff noticed that her original complaint was sealed and not available to the public.

When plaintiff questioned, why the complaint was sealed, she was told by the clerk that the complaints in immigration cases are routinely sealed without the court order. So, when the plaintiff saw that seven pages, containing all the specific information in regards to subpoenas and all the exhibits were sealed, she assumed that it was done by the order coming from Judge Hanen, who for some reason did not want specific information, contained in the motion and exhibits,  seen by the public.

During August 27, 2014 hearing Judge Hanen stated that he did not issue an order to seal all of the exhibits and part of the motion. So, yet again, there was a case of manipulation, fraud and falsification of record by a John Doe/Jane Doe, employee of the court, which was done with the scope of hiding evidence,

obstructing justice and defaming the plaintiff through these actions, as it appeared that plaintiff did not send a full motion to the docketing clerk.

Additionally, plaintiff is a known political activist who previously brought other challenges against the current administration.

Previously, she caught a court employee,  a court reporter in the Eastern District of Pennsylvania by name Donna Anders,  remove 14 pages of transcript and remove all mention of a cross examination of a party, which was detrimental for Taitz. Later, the court reporter admitted that she removed 14 pages from the transcript and removed all mention of the cross from the transcript and Taitz filed appropriate complaints against the court reporter . Currently, the matter is being reviewed by the special investigations of Philadelphia District Attorney's office.

It is widely believed that each District Court and each U.S. Attorney's office has individuals who are embedded in those offices and who are working for NSA and FBI and not only gather information, but also tamper with records, similar to NSA tampering with phone records and e-mails, as reported by the federal whistle- blower Edward Snowden.

It is an informed belief of the plaintiff  that recent manipulations of the docket, fraud and conspiracy to commit fraud are a part of a concerted effort to defame

her in the eyes of the courts and derail her cases, specifically due to the fact that she is a political activist leader.

Plaintiff is seeking damages for two counts of defamation per se as well as an order by the court to the clerk of the court to correct Motion for subpoenas and unseal all of the exhibits which were attached to the motion.

## VIOLATION OF ARTICLE 1, CLAUSE 8, TAXING AND SPENDING CLAUSE, ARTICLE 3; TITLE 8;  FIRST AMENDMENT AND FIFTH AMENDMENT LEADING TO STANDING UNDER FLAST V COHEN

### Flast v Cohen two prong test requires:

1.  **Action by a federal agency stemming from the Taxing and Spending Clause: Article 1, Clause 8 which affects the taxpayer**

2. **Challenged actions are prohibited**

1. **Defendants engaged in immigration policies under article 1, section 8, which satisfies the first prong of Flast v Cohen**

**2(a)** Activity was prohibited as defendants violated Title 8 and solicited illegal crossing of the U.S. borders and engaged in trafficking of hundreds of thousands of illegal aliens around the nation, causing damage to taxpayers .
8 USC §1324

**(a) Criminal penalties**

**(1)**

**(A)** Any person who—

**(i)** knowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or
reside in the United States and regardless of any future official action which may be taken with respect to such alien;

**(ii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

**(iii)** knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation;

**(iv)** encourages or induces an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of law; or

**(v)**

**(I)** engages in any conspiracy to commit any of the preceding acts, or

**(II)** aids or abets the commission of any of the preceding
acts, shall be punished as provided in subparagraph (B).
**(B)** A person who violates subparagraph (A) shall, for each alien in respect to whom such a violation occurs—

**(i)** in the case of a violation of subparagraph (A)(i) or (v)(I) or in the case of a violation of subparagraph (A)(ii), (iii), or (iv) in which the offense was done for

the purpose of commercial advantage or private financial gain, be fined under title
18, imprisoned not more than 10 years, or both;

**(ii)** in the case of a violation of subparagraph (A)(ii), (iii), (iv), or (v)(II), be
fined under title 18, imprisoned not more than 5 years, or both;

**(iii)** in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v)
during and in relation to which the person causes serious bodily injury (as
defined in section 1365 of title 18) to, or places in jeopardy the life of, any
person, be fined under title 18, imprisoned not more than 20 years, or both;
and

**(iv)** in the case of a violation of subparagraph (A)(i), (ii), (iii), (iv), or (v)
resulting in the death of any person, be punished by death or imprisoned for any
term of years or for life, fined under title 18, or both.

**(C)** It is not a violation of clauses [1] (ii) or (iii) of subparagraph (A), or of clause
(iv) of subparagraph (A) except where a person encourages or induces an alien to
come to or enter the United States, for a religious denomination having a bona
fide nonprofit, religious organization in the United States, or the agents or
officers of
such denomination or organization, to encourage, invite, call, allow, or enable an
alien who is present in the United States to perform the vocation of a minister or
missionary for the denomination or organization in the United States as a
volunteer who is not compensated as an employee, notwithstanding the provision
of room, board, travel, medical assistance, and other basic living expenses,
provided the minister or missionary has been a member of the denomination for
at least one
year.


**(2)** Any person who, knowing or in reckless disregard of the fact that an alien
has not received prior official authorization to come to, enter, or reside in the
United States, brings to or attempts to bring to the United States in any manner
whatsoever, such alien, regardless of any official action which may later be
taken
with respect to such alien shall, for each alien in respect to whom a violation of
this paragraph occurs—

**(A)** be fined in accordance with title 18 or imprisoned not more than one year,
or both; or

**(B)** in the case of—

**(i)** an offense committed with the intent or with reason to believe that the alien unlawfully brought into the United States will commit an offense against the United States or any State punishable by imprisonment for more than 1 year,
**(ii)** an offense done for the purpose of commercial advantage or private financial gain, or

**(iii)** an offense in which the alien is not upon arrival immediately brought and presented to an appropriate immigration officer at a designated port of entry,

be fined under title 18 and shall be imprisoned, in the case of a first or second violation of subparagraph (B)(iii), not more than 10 years, in the case of a first or second violation of subparagraph (B)(i) or (B)(ii), not less than 3 nor more than 10 years, and for any other violation, not less than 5 nor more than 15 years.

**(3)**
**(A)** Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under title 18 or imprisoned for not more than 5 years, or both.

**(B)** An alien described in this subparagraph is an alien who—

**(i)** is an unauthorized alien (as defined in section 1324a (h)(3) of this title), and

**(ii)** has been brought into the United States in violation of this subsection.
**(4)** In the case of a person who has brought aliens into the United States in violation of this subsection, the sentence otherwise provided for may be increased by up to 10 years if—

**(A)** the offense was part of an ongoing commercial organization or enterprise;

**(B)** aliens were transported in groups of 10 or more; and
**(C)**
**(i)** aliens were transported in a manner that endangered their lives

2(b) Second prong of Flast v Cohen is also satisfied due to violation of Article 3 of the U.S. Constitution, as President Obama engaged in policies, which were outside his constitutional powers and violated the separation of powers and infringed upon the plenary power of the U.S. Congress.

Obama instituted DACA policies, which were clearly prohibited, as they violated the separation of powers and granted deferral of deportation to potentially millions of people, who are here today and the ones who are crossing the border daily and claiming that they fall under DACA since they came to the U.S. as minors prior to 2012 and were previously deported or self deported.

Additionally DACA actions are prohibited as they are unconstitutional and violate the separation of powers, as they infringe upon the jurisdiction of Article 3 federal courts, taking away from the courts the right to decide deportation cases and giving deferral to potentially millions of people.

2(c) Thirdly, Second prong of Flast v Cohen is satisfied through violation of the Fifth and 14th Amendments and represent an unconstitutional taking without due process.

With a stroke of a pen through DACA and through a totally perverted interpretation of Flores v Reno, defendants engaged in a prohibited taking, without due process, of billions of tax payer dollars. These moneys were taken to pay contractors to transport illegal aliens around the country, to pay $7,000 per

month/$84,000 per year to foster families to foster illegal aliens, for education, for health care and all the other social needs of illegal aliens. Additionally, defendants are spending millions of dollars advertising south of the border that illegal aliens can cross the border and claim deferral of deportation under DACA, if they were here before. These prohibited policies and activities satisfied the second prong of Flast v Cohen as well.

2(d)

## APPLICATION FOR STAY IS JUSTIFIED

Party seeking a preliminary injunction or stay must show: 1) a likelihood of success on the merits, 2) a thread of irreparable harm, 3) which outweighs any harm to the non-moving party, 4) and that the injunction would not adversely affect the public interest (See Awad v Ziriax, 670 F.3d 1111, 1125 (10th Cir. 2012)).

Each element favors injunctive relief requested by the Plaintiff

1. Plaintiff is likely to prevail on the merits

Plaintiff suffers an ongoing injury of repeated exposure to infectious diseases caused by the actions by the defendants. Only a STAY can abate such exposure. financial damages will not suffice.

2. Actions by the defendants represent a threat of irreparable harm

Repeated exposure to serious infectious diseases represents a threat of irreparable harm, which can only be abated by a STAY.

3. Irreparable harm to the plaintiff outweighs harm to the defense.

Defense cannot show any harm and is not adversely affected by the stay.  Actions by the defendants in trafficking illegal aliens with infectious diseases are not justified and violate Title 8, violate plenary power of the U.S. Congress, and violate taxpayer rights guaranteed under the Fifth and Fourteenth amendments. Defendant's actions are not only not justified, but flagrantly illegal.

4. Injunction would not adversely affect the public interest. It would actually benefit the public interest, as illegal aliens with infectious diseases would not be trafficked around the country, citizens, particularly children, would not be affected, individuals with criminal record in the countries of origin,  gang members, cartel members and terrorists would not be trafficked by the U.S. government all over the country. Additionally, billions of dollars of tax payer funds would not be misappropriated and wasted on transportation of illegal aliens all over the country, on foster care at the cost of $84,000 per year per family, on education, healthcare and other social services of illegal aliens and on TV, radio and news paper advertising by the defendants to incite illegal aliens to cross the U.S. border and claim deferral from deportation based on DACA.

**Requested relief:**

1. **Stay of transportation of illegal aliens by the defendants from Texas/Mexican border to elsewhere in the country due to spread of**

infectious diseases, crime and terrorism and until aforementioned illegal aliens undergo quarantine, background check and legal status determination.

2. Two months quarantine of all illegal aliens, who are apprehended at the border, until there is a medical release from a licensed medical doctor stating that these illegal aliens do not carry any infectious diseases; until there is verification of their identity and criminal history from the countries of origin and an order from a federal district judge, a magistrate or an immigration judge that these illegal aliens are entitled to legally reside in the U.S.

3. Current and future damages due to exposure to infectious diseases resulting from the actions by the defendants

4. Current and future damages as a taxpayer due to actions by the defendants.

5. Request for pro hac vice for Dr. Orly Taitz, ESQ and a class certification for similarly situated individuals.

6. Declaratory relief deeming DACA to be unconstitutional and an injunctive relief enjoining any and all actions and policies stemming from DACA.

7. Writ of Mandamus ordering the defendants to publish Flores v Reno compliance policies  as required per Flores v Reno amended stipulation and declaration of Flores v Reno stipulation terminated 45 days after the aforementioned publication.

8. An order of a 21 day quarantine for all individuals, who are legally or illegally arriving to the U.S., after visiting countries with deadly Ebola epidemic or alternatively a Writ of Mandamus ordering defendants to suspend all flights to countries with known Ebola cases.

9. Actual and punitive damages.

10. Any and all other relief that this court finds just and necessary.

Dr. Orly Taitz, ESQ

09.09.2014

29839 Santa Margarita, ste 100

Rancho Santa Margarita, Ca 92688

Ph. 949-683-5411 Fax 949-766-7603

Orly.Taitz@hushmail.com

I, Lila Dubert, am over eighteen years old and attest that I served the defense with attached pleadings on 09.10.2014 by certified mail at address :

Assistant U.S. Attorney Colin Kisor

United States Dept of Justice, Civil Division
PO Box 868, Ben Franklin Station
Washington, DC 20044

Lila Dubert

09.10.2014