IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| Orly TAITZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:14-cv-00119 |
| | ) |
| v. | ) |
| | ) |
| Jeh JOHNSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## **DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO APPLICATION FOR STAY**

# **TABLE OF CONTENTS**

INTRODUCTION. ............................................................................................................... 1

Summary of Plaintiff's First Amended Complaint ............................................................ 2

     A.    Jurisdiction, Parties, and Standing........................................................... 2

     B.    The FAC's Enumerated Causes of Action................................................ 4

     C.    The FAC's Relief Sought ......................................................................... 5

ARGUMENT ....................................................................................................................... 5

I.    The Court Should Dismiss This Case Under Fed. R. Civ. P. 12(b)(1). ................................ 5

     A.    Plaintiff Lacks Article III Standing ......................................................... 6

          1.    Plaintiff lacks a legally protected interest. ................................... 6

          2.    Plaintiff has not established causation. .......................................... 7

          3.    Plaintiff has not shown redressability .......................................... 10

     B.    Plaintiff Also Falls Outside the Statutory Zone of Interests. ................ 11

     C.    The APA Does Not Permit This Court to Assume Jurisdiction. ............. 12

II.    The FAC Does Not State Viable Claims.......................................................................... 15

     A.    Fed. R. Civ. P. 12(b)(6) Requires a Plausible Claim for Relief. ............. 15

B.      No Private Right of Action Exists in this Case...........................................................16

C.      Plaintiff Lacks a Cause of Action Under the APA. ..................................................18

III.      Preliminary Relief Is Unwarranted ......................................................................................19

CONCLUSION. ..............................................................................................................................20

CERTIFICATE OF SERVICE

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Alabama-Coushatta Tribe of Texas v. U.S.*,
 757 F.3d 484 (5th Cir. 2014). ........................................................................18

*Alexander v. Sandoval*,
 532 U.S. 275 (2001). ......................................................................................17

*Am. Electric Power Co. v. Connecticut*,
 131 S. Ct. 2527 (2011).....................................................................................16

*Andrade v. Chojnacki*,
 934 F.Supp. 817 (S.D.Tex.1996). ....................................................................14

*Aransas Project v. Shaw*,
 756 F.3d. 801 (5th Cir. 2014). ..........................................................................6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009). .................................................................................15, 16

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007). ......................................................................................15

*Block v. Community Nutrition Inst.*,
 467 U.S. 340 (1984). ......................................................................................18

*Federation for Am. Immigration Reform v. Reno*,
 93 F.3d 897 (D.C. Cir. 1996) *cert. denied*, 521 U.S. 1119 (1997)......................................11

*Flast v. Cohen*,
 392 U.S. 83 (1968). ..........................................................................................7

*Godlove v. Bamberger, Foreman, Oswald & Hahn*,
 903 F.2d 1145 (7th Cir.1990). ..........................................................................1

*Heckler v. Chaney,*
        470 U.S. 821 (1985). .......................................................................... 14

*Home Builders Ass'n of Miss., Inc. v. City of Madison,*
        143 F.3d 1006 (5th Cir. 1998). ......................................................... 6

*Kelly v. Syrian Shell Petroleum Development B.V,*
        213 F.3d 841 (5th Cir. 2000). ........................................................... 6

*Kentucky v. Graham,*
        473 U.S. 159 (1985). ......................................................................... 3

*Lance v. Coffman,*
        549 U.S. 437 (2007). ......................................................................... 7

*Lexmark Int'l, Inc. v. Static Control Components,*
        134 S. Ct. 1377 (2014). ................................................................. 8, 11

*Lion Health Serv., Inc. v. Sebelius,*
        635 F.3d 693 (5th Cir. 2011). ..........................................................20

*Lujan v. Defenders of Wildlife,*
        504 U.S. 555 (1992) ........................................................................ 6,7

*Lujan v. Nat'l Wildlife Federation,*
        497 U.S. 871 (1990). ........................................................................ 18

*Lundeen v. Mineta,*
        291 F.3d 300 (5th Cir. 2002). ..................................................... 12, 16

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
        132 S.Ct. 2199 (2012) ......................................................................11

*McNeil v. United States,*
        508 U.S. 106 (1993). ........................................................................ 15

*N.W. Forest Workers Ass'n v. Lyng,*
        688 F. Supp. 1 (D.D.C. 1998) ...........................................................18

iv

*Osborn v. Haley*,
 549 U.S. 225, 229 (2007)……………………………………………………………………….. 2

*Roman Catholic Diocese of Dallas v. Sebelius*,
 927 F. Supp. 2d 406 (2013)........................................................................ 7

*Steel Co. v. Citizens for a Better Env't*,
 523 U.S. 83 (1998). ................................................................................ 10

*Texas v. United States*,
 106 F.3d 661 (5th Cir. 1997)....................................................................... 14

*Tipton v. Northrop Grumman Corp.*,
 2009 WL 2965905 (E.D. La. September 10, 2009). .......................................... 15

*Trudeau v. FTC*,
 456 F.3d 178 (D.C. Cir. 2006). ................................................................... 16

*United States v. United Mine Workers of America*,
 330 U.S. 258 (1947). ................................................................................ 15

*United States v. Wittek*,
 337 U.S. 346 (1949). ................................................................................ 15

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
 454 U.S. 464 (1981). ................................................................................. 7

*Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*,
 529 U.S. 765 (2000). ................................................................................ 18

*Will v. Michigan Dep't of State Police*,
 491 U.S. 58 (1989) .................................................................................. 18

*Williamson v. Tucker*,
 645 F.2d 404 (5th Cir. 1981). ...................................................................... 6

*Winter v. Natural Res. Def. Council, Inc.*,
 555 U.S. 7 (2008). ...................................................................................21

## **STATUTES**

5 U.S.C. § 701. ..................................................................................................12

5 U.S.C. § 702. ..............................................................................................4, 12

8 U.S.C. § 1101. .................................................................................................4

8 U.S.C. § 1103(a) ...........................................................................................15

8 U.S.C. § 1103(a)(1). .....................................................................................16

8 U.S.C. § 1103(g)(1). .....................................................................................16

8 U.S.C. § 1182(a)(1). .......................................................................................7

8 U.S.C. § 1182. ...............................................................................................19

8 U.S.C. § 1221. ...............................................................................................14

8 U.S.C. § 1222. ...............................................................................................19

8 U.S.C. § 1225 .................................................................................................17

8 U.S.C. § 1225(b). ..........................................................................................14

8 U.S.C. § 1225(b)(1). ......................................................................................14

8 U.S.C. § 1226. ...............................................................................................18

8 U.S.C. § 1226(a). ...........................................................................................13

8 U.S.C. § 1226(a)(3). ......................................................................................18

8 U.S.C. § 1226(c). ...........................................................................................14

8 U.S.C. § 1226(e). ...........................................................................................14

8 U.S.C. § 1229(a) ...................................................................................7, 12, 19

8 U.S.C. § 1232. ........................................................................................... 14

8 U.S.C. § 1252(a)(2)(A) ............................................................................... 13

8 U.S.C. § 1252(a)(5). ............................................................................. 13, 17

8 U.S.C. § 1252(b)(9). ................................................................................... 18

8 U.S.C. § 1252(f)(1). ................................................................................... 14

8 U.S.C. § 1324. ........................................................................................... 19

8 U.S.C. § 1324b(d)(2). ................................................................................. 17

28 U.S.C. § 1332. ........................................................................................... 3

28 U.S.C. § 2675(a). ..................................................................................... 15

42 U.S.C. § 264. ........................................................................................... 13

## DEFENDANTS' MOTION TO DISMISS AND OPPOSITION TO APPLICATION FOR STAY

### INTRODUCTION

Defendants, in their official capacities, by and through undersigned counsel, move this Court to dismiss, with prejudice, Plaintiff's First Amended Complaint (ECF No. 40) ("FAC"). The amended pleading once again fails to establish standing.[1]

Plaintiff claims to have contracted a respiratory infection from her dental practice, in which she treats Medi-Cal or Denti-Cal program participants in California, who she asserts lack legal immigration status. However, she has not demonstrated a sufficient causative link between the Government's actions on the Texas border with Mexico and this claimed injury to her – a deficiency that continues to confirm her lack of standing and her inability to move forward with this case. Indeed, even if Plaintiff could show the required causative link, she has not shown that her claimed injury is legally cognizable, redressable or within the jurisdiction of the Court.

And despite pinpointing a persistent cough as her alleged injury, Plaintiff aggregates alleged fraud, defamation, RICO, immigration, and constitutional violations with more than 290,000 counts[2] of alleged negligence in her FAC. However, the claimed basis for standing and waiver of sovereign immunity, the Administrative Procedure Act (APA), opens only a narrow avenue of judicial review that is inapplicable here, and the immigration or other laws cited do not otherwise provide any private right of action. Further, Plaintiff has failed to exhaust any administrative remedies that may have been

---

[1] As a threshold matter, Defendants note that Dr. Taitz, although she is *pro se* in this action, is a licensed attorney with litigation experience. *See generally Godlove v. Bamberger, Foreman, Oswald & Hahn*, 903 F.2d 1145, 1148 (7th Cir.1990).

[2] *See*, *e.g.*, ECF No. 40 at 26.

1

available to her, including submitting any administrative claim under the Federal Tort Claims Act.[3]  It remains apparent that Plaintiff impermissibly asks this Court to resolve a nonjusticiable political question raised as a generalized grievance.

Even setting aside the jurisdictional defects and taking the allegations in the complaint as true for the purpose of this motion, the alleged actions by the Government Defendants are lawful exercises of statutory authority as well as the Executive Branch's discretion in immigration processing.  For example, the William Wilberforce Trafficking Victims Protection Reform Act of 2008 (TVPRA), which the FAC ignores, along with various other provisions codified in the Immigration and Nationality Act (INA), place statutory requirements on the federal government to do many of the things the Plaintiff is complaining about and, thus, they contradict Plaintiff's claims of illegal activity. Likewise, the settlement agreement entered into between the Government and plaintiffs in *Flores v. Reno* informs Government policy and practices with regard to the treatment of apprehended alien minors.  Although Plaintiff repeatedly cites the Deferred Action for Childhood Arrivals ("DACA") policy as a basis for her claims, this legal exercise of executive prosecutorial discretion authority does not violate any laws and bears, at most, a tangential relationship to Plaintiff's claims.  Plaintiff has failed to show any violation of law.  This Court should dismiss this case with prejudice.

### Summary of Plaintiff's First Amended Complaint

### A.  Jurisdiction, Parties, and Standing

---

[3] To the extent that Plaintiff's Amended Complaint could be construed as asserting any common law tort claims against individual federal defendants, these claims would be subject to dismissal under the federal Employees Liability Reform and Tort Compensation Act, 28 U.S.C. sec 2679(d) which "accords federal employees absolute immunity from common law tort claims arising out of acts they undertake in the course of their official duties." *Osborn v. Haley*, 549 U.S. 225, 229 (2007).

The FAC, without citation to authority, claims jurisdiction "as the defendants are sued in their official capacity as executives of Federal agencies, and the premise of the legal action involves actions of Federal agencies and US Code-federal statutes."  ECF No. 40 at 2.  The FAC also claims diversity jurisdiction[4] and seeks to have the Court assume supplemental jurisdiction over the alleged violation of California Health and Safety Code § 2554.  *Id.* at 3, 22.[5]

The FAC changes the parties in this action.[6]  Plaintiff now seeks to sue the Defendants, named previously in their official capacities, "as individuals to the extent that their actions go beyond existing laws and/or violate the existing laws."  *Id*. at 3.  The FAC also attempts to add additional Defendants, John and Jane Does 1-100, "who are individuals who were and are aiding and abetting the named defendants."  *Id.*

The factual allegations continue to focus on the Government's processing and transport of aliens from South Texas; Plaintiff's alleged exposure to disease and other adverse effects; the application of the *Flores* settlement agreement; and the DACA

---

[4] Plaintiff's attempt to rely on diversity jurisdiction is misplaced.  A suit against a public officer in his official capacity is, in all respects other than name, treated as one against the entity of which he is an officer.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Agencies of the U.S. government are not "citizens" for purposes of diversity jurisdiction, and thus Plaintiff has not established diversity jurisdiction under 28 U.S.C. § 1332 or otherwise.  Neither does she state an amount in controversy, which is also a threshold requirement for diversity jurisdiction.

[5] California Health and Safety Code § 2254 appears to be incorrectly cited and/or nonexistent in the California Code.  That insufficiency prevents Defendants from addressing its substance in this motion.  Generally, however, Defendants note that California health codes do not appear relevant to this case.

[6] At the hearing, the Court granted leave to amend, but Plaintiff did not request, and the Court did not permit, joinder of additional Defendants.  *See generally* Transcript, ECF No. 40-10.  The Government opposes addition of any additional defendants, including individual-capacity defendants.  Specifically, joinder of John and Jane Does 1-100 would result in misjoinder, as the Does do not meet the required test for joinder with the named agency heads.  *See* Fed. R. Civ. P. 19-20.  Further, to the extent the Plaintiff purports to sue any defendants in their individual capacities, Defendants note that Plaintiff does not appear to have effected service on any individual-capacity defendants, and, given the factual allegations in the FAC, it does not appear that Defendants are actually being sued in their individual capacites at all.  Regardless, the undersigned do not represent individual-capacity defendants.

policy, which allegedly "is a clear reason for the flood of illegal aliens."[7]  *Id*. at 4-13.

The FAC also contains allegations regarding the Ebola virus.  *Id*. at 15-16.

In the FAC, Plaintiff claims standing under the APA, 5 U.S.C. § 702.  *Id*. at 16.

In so doing, she alleges injury "due to upper respiratory infection suffered upon treatment

of the immigrants, as well as imminent threat of re-infection due to continuous referral of

immigrants with multiple infectious diseases . . . ."  *Id*. at 18.  The FAC also claims injury

"related to [the] negative effect on the community," seeking redress of "demographic,[8]

economic, and environmental effects of actions and policies by the Defendants." *Id.* at

19.  Finally, Plaintiff claims "injury suffered as a federal taxpayer" due to Defendants'

expenditures in processing and transporting aliens.  *Id*. at 21-22.[9]

### B.    The FAC's Enumerated Causes of Action

The Government construes the FAC to raise various tort-related causes of action:

a) Negligence stemming from statutory violations (ECF No. 40 at 23-28);  b) Common

law negligence in relation to alleged "trafficking" of individuals with infectious diseases

(ECF No. 40 at 26-28); c) Fraud in advising the public about aliens' health, in "stealing

taxpayer funds to provide free medical treatment to illegal aliens" though state Medicaid

programs, and in complying with the settlement agreement in *Flores v. Reno* (ECF No.

40 at 29-30; ECF No. 40-1 at 1-2); (d)  a claim of RICO activity, charging that

Defendants "engaged in RICO activity not only to commit fraud, conspiracy to commit

---

[7] As in previous pleadings, the Government respectfully refers the Court to the definitions section of the INA, which defines "alien," immigrant," and other relevant terms.  8 U.S.C. § 1101.  Unless otherwise indicated by quotations of Plaintiff's terms, the Government employs the INA's terms of art in accordance with their statutory meanings.

[8] It is not clear what Plaintiff means by "demographic" effects.  To the extent the statement alleges that changing racial, ethnic, or other demographics injure her, such allegations are meritless.

[9] Plaintiff's original Application did not seek damages for economic injuries, and instead sought injunctive relief only.  *See* ECF No. 1 at 40-42.

fraud, to misappropriate taxpayer funds . . . trafficking illegal aliens . . . duress and

intimidation of a witness . . . obstructing justice . . . to defame the plaintiff and place

plaintiff in false light in the eyes of the court" (ECF No. 40-1 at 8); e) Defamation of

character.  ECF No. 40-1 at 8-12.  The defamation claim does not deal with the

immigration system.  Instead, it relates to the docketing of Plaintiff's Motion for

Subpoenas of four Border Patrol agents in this case, and alleged pressure and duress on

one agent, Ron Zermeno, allegedly "done to defame the plaintiff." *Id.* at 9.  (f)

Violations relating to taxing and spending, on the theory that DACA and *Flores*

constituted "a prohibited taking, without due process, of billions of tax payer

dollars.[*sic*]"  ECF No. 40-1 at 12-17.

> **C.**     **The FAC's Relief Sought**

The FAC's prayer for relief contains a broad set of requests, enumerated in ten

separate points.  *See* ECF No. 40-1 at 19-20.  The requested relief includes a stay of

transportation of aliens, their quarantine, a quarantine or suspension of flights related to

countries with Ebola cases, declaratory and injunctive relief relating to DACA, a writ of

mandamus ordering publication of *Flores v. Reno* compliance policies, "current and

future damages due to exposure to infectious diseases," "current and future damages as a

taxpayer," and "actual and punitive damages."  ECF No. 40-1 at 19-20.  It is not clear

which of this relief is sought as part of the temporary injunctive relief.

## ARGUMENT

## I.     The Court Should Dismiss This Case Under Fed. R. Civ. P. 12(b)(1).

The FAC fails to meet Plaintiff's burden to establish this Court's jurisdiction, and

dismissal under Fed. R. Civ. P. 12(b)(1) is thus appropriate.  Federal courts must have

statutory or constitutional power to adjudicate a claim.  *See Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  In considering a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the Court may grant dismissal considering any of three separate bases:  (1) the complaint alone; (2) the complaint supplemented by undisputed facts as evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981); *Kelly v. Syrian Shell Petroleum Development B.V*, 213 F.3d 841, 845 (5th Cir. 2000).

### A. Plaintiff Lacks Article III Standing.

Plaintiff has established none of the requirements for standing.  For standing, a plaintiff must demonstrate the "triad of injury in fact, causation, and redressability." *Aransas Project v. Shaw*, 756 F.3d. 801, 808 (5th Cir. 2014) (internal quotations omitted).  When a plaintiff "is not the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 575 (1992).

### 1. Plaintiff lacks a legally protected interest.

Plaintiff's alleged injuries fail the first prong, as she has not identified a particularized invasion of a *legally protected* interest.  The only particularized injury Dr. Taitz identifies is a "persistent cough" related to an unspecified respiratory infection. ECF No. 40 at 5.  However, she does not link this health condition to any legally protected interest.  Indeed, Plaintiff can point to no law which gives a private citizen a legally protected interest in being free from communicable disease, although she does point to the health related grounds of inadmissibility applicable only to aliens applying

for admission to the United States.  *See*, *e.g.*, 8 U.S.C. § 1229(a) (governing removal of aliens); 8 U.S.C. § 1182(a)(1) (health grounds of inadmissibility).  But, exposure to – and contraction of – ordinary communicable respiratory infections is an intrinsic, ongoing risk of contact with other people, and especially of being a health care provider.

Plaintiff's other alleged injuries are also too generalized to be cognizable for standing.  The essence of her claim appears to be that alien arrivals heighten the risk to her of infectious diseases or other societal conditions.  S*ee, e.g.*, ECF No. 40 at 19 (describing alleged danger to "plaintiff and others similarly situated" of "infectious diseases, crime, and terrorism," as well as resource constraints).  The Supreme Court has consistently admonished that "'a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in [the] proper application of the Constitution and laws, and seeking relief that no more directly [or] tangibly benefits him than it does the public at large—does not state an Article III case or controversy.'" *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. at 560-61).[10]  These remaining alleged injuries are the essence of a generalized grievance in which Plaintiff lacks a personal stake.[11]

### 2. Plaintiff has not established causation.

Neither has Plaintiff sufficiently established causation.  Causation does not require that Defendants' alleged conduct be the proximate cause of the claim, but it does

---

[10] Similarly, Plaintiff insufficiently alleges standing as a taxpayer.  Although Plaintiff attempts to rely on the narrow exception of *Flast v. Cohen*, 392 U.S. 83 (1968), a challenge based on government expenditures can only be heard where the litigant challenges an exercise of congressional power under Article I, section 8, as violative of the Establishment Clause.  *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1981).  Here, Plaintiff challenges Executive Branch policies. *See* ECF no. 40-1 at 16-17.

[11] The claims in the FAC are inherently political questions which are barred under the political question doctrine, which, like the standing doctrine, originates in Article III's "case" or "controversy" requirement. *See Roman Catholic Diocese of Dallas v. Sebelius*, 927 F. Supp. 2d 406, 415 (2013).

require that her injury be "fairly traceable" to the Defendants' actions.  *Lexmark Int'l, Inc. v. Static Control Components*, 134 S. Ct. 1377, 1391 n.6 (2014).  The evidence attached to the complaint is from a non-physician epidemiologist, Vera Dolan, who has apparently consulted with Dr. Taitz but who does state she has examined Dr. Taitz or any of her patients.  Nonetheless, Ms. Dolan attempts to connect aliens to Dr. Taitz, concluding that "Dr. Taitz's respiratory infection originated from infected *patients* who were sent for treatment to her office," in particular DHS detainees who were transported to California.  ECF No. 40-2 at 3 (emphasis added).  However, even taking Ms. Dolan's conclusions as true, Plaintiff does not establish the required causation element.   Ms. Dolan does not link Plaintiff's condition to any aliens processed in the Governmental conduct complained of in the Complaint, including DHS detainees recently originating from the Texas-Mexico border region, undocumented immigrants, or DACA beneficiaries.  Thus, Ms. Dolan's statement does not establish causation.

The FAC states little more about Plaintiff's patients than that "[s]everal of her patients, who are enrolled in such programs [as Medi-Cal and Denti-Cal], as well as their relatives, showed up in Taitz office with multiple upper respiratory track [*sic*] diseases and persistent cough."  ECF No. 40 at 5.  Plaintiff alleges no apparent basis for connecting these allegedly sick patients to Defendants' actions other than the patients' participation in these programs.  The FAC states, "[a]nyone who lives in California can apply for health insurance" under Medi-Cal and Denti-Cal, regardless of alienage or immigration status, and the FAC strongly implies that the program does not share

immigration status with health care providers, which would indicate that Dr. Taitz lacks knowledge of their immigration status or history.[12]  *See* ECF No. 40-1 at 20-21.

Thus, Plaintiff has failed to allege sufficient facts to trace Defendants' conduct to her alleged injury.[13]  Dr. Taitz has alleged that her patients reside in California, that some of these individuals have had respiratory infections, and that some are enrolled in public health programs.  The FAC does not provide specific factual allegations regarding, the immigration status of any of Dr. Taitz's patients, any information regarding when or how they may have arrived in the United States, whether they were processed in the complained-of fashion and transported near Rancho San Margarita, California, to become her patients, or whether anyone in the complained-of set of Texas arrivals, including any patients, had contagious respiratory infections similar to Plaintiff's.

Even taking her allegations as true, Dr. Taitz's patients with communicable respiratory infections could be U.S. citizens (born or naturalized), lawful permanent residents, refugees or asylees, non-immigrant visa-holders, aliens who arrived at ports of entry with visas and overstayed, undocumented immigrants who entered at a location other than the Rio Grande Valley, or undocumented immigrants whom DHS or HHS detained and/or processed somewhere other than in Texas – in other words, other than via the conduct alleged in the FAC. This Court should find that Plaintiff has failed to show

---

[12] Further, Defendants note that, contrary to Plaintiff's allegations, the Medi-Cal program appears not to cover undocumented aliens in its full-scope program.  The continuation of the FAQs excerpted in the FAC limits such coverage for undocumented aliens to pregnancy services and long-term care. http://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Medi-CalFAQs2014b.aspx#1.  However, even assuming *arguendo* that undocumented aliens qualify for dental services, Plaintiff has not established causation.

[13] For example, Dr. Taitz does not allege that any patient of hers entered through Brownsville, was subjected to DHS detention, processing, and defective health screening, was or became ill with the alleged respiratory infection, then transferred to California (as a minor qualifying for transfer), applied for Medi-Cal and Denti-Cal benefits as an undocumented alien, and visited her dental practice while still suffering from the health condition.

that her purported injury is fairly traceable to the complained-of conduct, and that she lacks standing.

### 3.    Plaintiff has not shown redressability.

Finally, Plaintiff has not shown redressability, that is, "a likelihood that the requested relief will redress the alleged injury."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998).  As stated above, the requested relief includes a stay of transportation of aliens, their quarantine, a quarantine or suspension of flights related to countries with Ebola cases, declaratory and injunctive relief relating to DACA, a writ of mandamus ordering publication of *Flores v. Reno* compliance policies, "current and future damages due to exposure to infectious diseases," "current and future damages as a taxpayer," and "actual and punitive damages."  ECF No. 40-1 at 19-20.

Even assuming *arguendo* that Plaintiff's respiratory infection establishes injury and causation, Plaintiff has not shown that the relief sought would redress her injuries – she impermissibly seeks programmatic change.  She has not shown how injunctive relief would cure her or keep her free of similar infections (particularly given that the diseases which she identifies exist in the United States, and in her pool of patients, apart from any immigration from abroad), let alone that injunctive relief would ameliorate any alleged economic injuries to her.  Ms. Dolan's affidavit states merely that "quarantine and isolation" would "solve the problem of the imminent risk of contracting communicable diseases from such detainees," but Ms. Dolan does not address the other relief requested.  ECF No. 40-2 at 3.   Indeed, even if Dr. Taitz were entitled to the publication of *Flores v. Reno* compliance policies (and the termination of that settlement agreement), that relief would have no likely effect on Plaintiff's health.  Similarly, Plaintiff's request to enjoin

DACA – a policy which only applies to certain aliens who arrived in the United States as minors before 2007 – also would not redress her alleged injury, which she claims is based on the infectiousness of recent arrivals apprehended at or near the Southern border.[14]

For all these reasons, Plaintiff cannot establish standing, and this Court should dismiss the action.

### B.    Plaintiff Also Falls Outside the Statutory Zone of Interests.

Even if Plaintiff could meet Article III's requirements, she still lacks standing. She incorrectly claims, citing the APA, that the release of individuals with infectious diseases places her in the APA's zone of interests for standing purposes.  *See* ECF No. 40 at 16-17.  Although the Supreme Court has indicated that the zone of interests test is "not especially demanding," the test does foreclose suit when a plaintiff's interests "are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed" that Congress has authorized the plaintiff to sue.  *Lexmark*, 134 S.Ct. at 1389; *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S.Ct. 2199, 2200 (2012).

Plaintiff falls outside the statutory zone of interests because the "immigration context suggests the comparative improbability of any congressional intent to embrace as suitable challengers in court all who successfully identify themselves as likely to suffer from the generic negative features of immigration." *Federation for Am. Immigration Reform v. Reno*, 93 F.3d 897, 902 (D.C. Cir. 1996) *cert. denied*, 521 U.S. 1119 (1997). Here, given that Congress set forth a comprehensive process for processing and removing

---

[14] The FAC also continues to ignore the jurisdictional bars to the relief requested.  Congress has mandated that its statutory scheme is "the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."  8 U.S.C. § 1229a(a)(3).

aliens, including broad grounds of inadmissibility, it cannot reasonably be assumed that Congress, in enacting the INA, authorized allegedly aggrieved Plaintiffs to sue over the alleged effects of their alleged contact with aliens.  Instead, the immigration statutes exist to govern, subject to Executive discretion, aliens' admission to the United States, as well as their treatment when they are inadmissible.  Plaintiff, as a health care provider to California residents, falls well outside this zone.

### C.    The APA Does Not Permit This Court to Assume Jurisdiction.

Even if Plaintiff had standing, the FAC does not identify a sufficient waiver of sovereign immunity.  To the extent the FAC's citation to 5 U.S.C. § 702 can be construed as an assertion of a waiver of sovereign immunity here, the APA does not provide the wide avenue for judicial review that Plaintiff seeks.  As a threshold matter, the APA removes the sovereign immunity of federal officers sued in their official capacities if the relief sought is *other than* monetary damages.  *Lundeen v. Mineta*, 291 F.3d 300 (5th Cir. 2002) (citing 5 U.S.C. § 702).  To the extent Plaintiff seeks monetary damages, the Government remains immune from suit on this theory.

Even setting aside the claim to monetary relief, Plaintiff cannot overcome the jurisdictional limits on APA review.  The APA specifically bars review where (1) statutes preclude it, or (2) agency action is committed to agency discretion by law.  5 U.S.C. § 701.  Congress has specifically limited judicial review of detention-related discretionary judgments, including the release of aliens.  The INA states:

> The [Secretary of Homeland Security's][15] discretionary judgment regarding the application of [Section 1226] shall not be subject to review.  No court may set

---

[15] Under the Homeland Security Act of 2002, Congress abolished the INS and transferred the former agency's functions to various agencies within the Department of Homeland Security.  See Pub. Law No. 107-269, 116 Stat. 2135 (Nov. 25, 2002).

> aside any action or decision by the [Secretary of Homeland Security] under this section regarding the detention **or release of any alien** or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e) (emphasis added).  To the extent the individuals of which Plaintiff complains are detained under section 1226(a) and (c) pending removal proceedings, this bar would apply.  But even to the extent the individuals of which Plaintiff complains were apprehended at the border, in which case section 1225(b) would instead govern their detention, a different statute bars review.  *See* 8 U.S.C. § 1252(a)(2)(A) (barring review relating to section 1225(b)(1)).   Thus, Plaintiff's attempt to seek review of the release of aliens must fail.  Further, Congress has specifically limited immigration-related injunctive relief, stating:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, **no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain** the operation of the provisions of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated.[16]

8 U.S.C. § 1252(f)(1) (emphasis added).  Thus, this Court may not review Defendants' exercises of discretion, impose a quarantine, enjoin decisions related to transportation of aliens, or otherwise enjoin the myriad processes of inspection, detention, release and removal implicated in this case.[17]

---

[16] Part IV of the subchapter covers 8 U.S.C. §§ 1221 – 1232, which cover the inspection, apprehension, examination, exclusion and removal of aliens.  Thus, to the extent Plaintiff seeks to restrain alleged violations of section 1225 (inspection of aliens) or 1226 (apprehension and detention of aliens), jurisdiction is barred by statute.

[17] Under section 361 of the Public Health Service Act, 42 U.S.C. § 264, the U.S. Secretary of Health and Human Services is authorized to take measures to prevent the entry and spread of certain communicable diseases from foreign countries into the United States and between states.  Under Executive Order 13295, as amended July 31, 2014, lists quarantinable communicable disease (cholera, diphtheria, infection tuberculosis, plague, smallpox, yellow fever, viral hemorrhagic fever, severe acute respiratory syndromes,

Neither is the DACA policy, or any similar policy determination, subject to judicial review.  The Supreme Court has held that the Immigration and Nationality Act (INA) grants broad discretion to the Executive branch, *including* the decision whether to initiate removal proceedings.  *See Arizona v. United States*, 132 S.Ct. at 2499 ("A principal feature of the removal system is the broad discretion exercised by immigration officials.  Federal officials, as an initial matter, *must decide whether it makes sense to pursue removal at all*.") (emphasis added); *see also Texas v. United States*, 106 F.3d 661, 667 (5th Cir. 1997) ("[The State candidly concedes, however, that [INA § 103] places no substantive limits on the Attorney General and commits enforcement of the INA to her discretion.").  The DACA policy being challenged in this case addresses DHS's guidance regarding the appropriate exercise of prosecutorial discretion in the commencement of civil enforcement proceedings, which is inherently a matter committed to agency discretion.  *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (holding that "an agency's decision not to take enforcement action should be presumed immune from judicial review").  Such discretion is undoubtedly available for immigration enforcement decisions such as those challenged here.  *See* 8 U.S.C. § 1103(a).

Plaintiff's civil RICO claim must fail for lack of a waiver of sovereign immunity. *See* ECF 40-1 at 8.  Although the Fifth Circuit has apparently not addressed the issue of whether a RICO claim can be brought against the Federal government, courts have concluded that RICO claims may not be brought against the United States or its agencies or departments.  *See, e.g. Andrade v. Chojnacki*, 934 F.Supp. 817, 831 (S.D.Tex.1996) (Atlas, J.) ("[p]laintiffs cannot state a claim against the United States for the actions of its

---

and pandemic flu.  The FAC seeks relief for some diseases, including Plaintiff's respiratory infection, which are not quarantinable.

agencies under RICO"); *Tipton v. Northrop Grumman Corp.* 2009 WL 2965905 (E.D. La. September 10, 2009) (unpublished) (collecting cases).[18]

Finally, jurisdiction is only available where an aggrieved party properly invokes sovereign immunity and has exhausted all available administrative remedies required by statute or regulation.  The FAC contains no citation to authority that would permit the United States to be sued in tort, as Plaintiff seeks to do.  But even to the extent the FAC can be construed as permitting a Federal tort claim, a claimant "shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing."  28 U.S.C. § 2675(a); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993).  As the attached declaration shows, the Government has not received any qualifying request from Plaintiff, and Plaintiff does not allege otherwise. *See* Def. Appx. 1.  This failure to exhaust administrative remedies is fatal to Plaintiff's tort claims, and requires their dismissal for lack of jurisdiction.

## II.  The FAC Does Not State Viable Claims.

### A.  Fed. R. Civ. P. 12(b)(6) Requires a Plausible Claim for Relief.

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a complaint if it fails to state a claim upon which the court can grant relief.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

---

[18] This is consistent with the "old and well-known rule that statutes which in general terms divest pre-existing rights or privileges will not be applied to the sovereign without express words to that effect." *United States v. United Mine Workers of America*, 330 U.S. 258, 272 (1947); *United States v. Wittek*, 337 U.S. 346, 358.59 (1949) ("A general statute imposing restrictions does not impose them upon the Government itself without a clear expression or implication to that effect.").

570 (2007)).  However, mere conclusions, labels, or "naked assertions" will not survive a 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Presuming that the Court finds that the APA does provide a limited waiver of sovereign immunity that is applicable here (it does not, as addressed, *supra*), Plaintiff must still have a cause of action that permits her to invoke the power of this Court to redress the violations of law alleged in her complaint.  *See Trudeau v. FTC*, 456 F.3d 178, 188 (D.C. Cir. 2006).  There is a standard presumption that Congress did not intend to create a private right of action, and the Plaintiff generally bears the "relatively heavy burden of demonstrating that Congress affirmatively contemplated private enforcement when it passed the relevant statute." *Lundeen*, 291 F.3d at 311.

### B.    No Private Right of Action Exists in this Case.

Dr. Taitz fails to identify a viable cause of action in this case, because there is no private enforcement action available to a citizen seeking to have the arrival, employment authorization, removal, health screening, or other relevant processing of aliens declared unlawful.  *See, e.g.,* 8 U.S.C. §§ 1225(inspection of aliens and expedited removal); 1226(detention of aliens pending removal); 1229a (removal proceedings, which are the "sole and exclusive procedure" for determining admission or removal); 1252 (limitations on judicial review).  Instead, Congress delegated the authority to enforce the immigration laws of the United States to the Secretary of Homeland Security and the Attorney General.  See 8 U.S.C. §§ 1103(a)(1), 1103(g)(1).  This delegation acts to displace federal common law and the Court's authority to entertain private causes of action in connection with the region occupied by the administrative agency.  *See Am. Electric Power Co. v. Connecticut*, 131 S. Ct. 2527, 2538-39 (2011).  Although the Federal courts do have a

16

role in determining whether an alien is inadmissible or may be removed from the United States, that role is limited to the courts of appeals reviewing determinations made by the immigration courts and the Board of Immigration Appeals.  *See* 8 U.S.C. §§ 1252(a)(5), (b)(9).  There remains no place for Plaintiff to claim fraud, negligence, or defamation, or other violations of law relating to the administration of the immigration statutes.[19]

Further, Plaintiff is unable to show under the prevailing judicial test that Congress expressly or impliedly intended to create a private cause of action to permit her to enforce the immigration laws.  *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."  *Id.*  at 286.

Congress knows how to create a private cause of action under the INA.  For example, Congress specifically provided a private cause of action for persons adversely affected by an employer's discriminatory practices based on national origin or citizenship status by allowing private parties to file a charge of discrimination with the Office of the Chief Administrative Hearing Officer (OCAHO).  See 8 U.S.C. § 1324b(d)(2).  Yet, nowhere else in the statute did Congress establish a private cause of action to enforce the immigration laws, and thus Plaintiff's attempt to pursue her grievances, including alleged violations of 8 U.S.C. §§ 1226 (work authorization detention)[20]  and 1324 (trafficking of aliens), must fail.[21]

---

[19] Neither is there a basis for Plaintiff to pursue a claim of fraud in the Government's compliance with *Flores v. Reno*. *See* ECF No. 40-1 at 1-2.  Dr. Taitz does not claim to be counsel for any *Flores* plaintiff, and she has articulated nothing that would permit her to enlist the aid of this Court to construe *Flores* and oversee the Government's compliance as part of a fraud or any other type of claim.

[20]  Plaintiff claims that Defendants "are flagrantly violating 8 U.S. Code 1226(b)," ECF No. 40 at 14, but the quoted text pertains to 8 U.S.C. § 1226(a)(3).

[21]  Defendants further note that, by its plain language, 8 U.S.C. § 1324, which applies to "persons," does not apply to the Government.  The Supreme Court has recognized the "presumption that 'person' does not

### C.      Plaintiff Lacks a Cause of Action Under the APA.

Plaintiff cannot sweep her wide range of claims within the APA.  The APA provides a general cause of action to "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702; *Block v. Community Nutrition Inst.*, 467 U.S. 340, 345 (1984).  However, only a final agency action is reviewable under the APA. 5 U.S.C. § 704.  As the Fifth Circuit has recently re-stated, programmatic challenges seeking "wholesale improvement" are unreviewable.  *Alabama-Coushatta Tribe of Texas v. U.S.*, 757 F.3d 484 (5th Cir. 2014); *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871 (1990).

Unlike the cases cited in the FAC, such as *N.W. Forest Workers Ass'n v. Lyng*, 688 F. Supp. 1 (D.D.C. 1998), *see* ECF No. 40 at 19-20, Plaintiff does not challenge a final regulation or other discrete final agency action.  Instead, her challenge is programmatic,[22] aimed at policies and overlapping steps in literally hundreds of thousands of cases. *See*, *e.g.,* ECF No. 40 at 26 (alleging more than 290,000 counts of negligence in the processing of aliens).  For instance, the initial or intermediate health screenings of aliens are not final agency actions under the APA.

Further, Plaintiff's grievances about the immigration system fail to allege unlawful activity.  As set forth more fully in Defendants' response to the Order to Show Cause, ECF No. 20, the INA, including the TVPRA provisions codified within the INA, sets forth a comprehensive scheme for the inspection, detention, processing, and removal

---

include the sovereign" in federal statutes is "longstanding." *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989) ("[I]n common usage, the term 'person' does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.")(alterations in original).

[22] The defamation claim, which addresses alleged actions by individuals surrounding the August 27, 2014 hearing and related filings with this Court, cannot plausibly be construed as agency action at all.  *See* ECF No. 40-1 at 8-12.

of aliens.  *See, e.g.*, 8 U.S.C. §§ 1182 (grounds of inadmissibility); 1225 (inspection of

aliens and expedited removal) 1226 (detention of aliens pending removal); 1226a

(terrorist aliens), 1229a (removal proceedings), 1252 (judicial review).  The screening,

processing, transport, and other acts alleged in the Complaint all fit within these

Congressionally mandated parameters and Executive discretion.  For example, neither

statute nor regulations require health examinations for all aliens coming into the United

States.  Further, to the extent Plaintiff claims violations of section 1226, she has not

shown how that section would apply to the complained-of aliens.  And Plaintiff has not

identified, and the undersigned is not aware of, any legal provision requiring the

Government to make disclosures regarding the processing or health status of aliens, or to

have physicians perform the screenings.[23]  The INA requires only that immigration

and/or medical officers subject aliens to observation and examination sufficient to

determine inadmissibility.  *See* 8 U.S.C. § 1222.  *See* ECF No. 20 at 11, 20.

## III.    Preliminary Relief Is Unwarranted.[24]

To obtain preliminary injunctive relief, the moving party must show: (1) a

likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of

preliminary relief; (3) that a balance of equities tips in its favor; and (4) that an injunction

is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[23]  Specifically, and although the undersigned do not represent any Federal employees named in their individual capacity, the defamation claim is implausible and inadequately pled.  The allegation that it is "widely believed" that the FBI and NSA embed individuals to tamper with court records is, even when viewed in the light most favorable to plaintiff, speculative.  *See* ECF No. 40-1 at 10-11.

[24]  Plaintiff's proposed preliminary relief also runs contrary to the "general principle [that] 'injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'"  *See Lion Health Serv., Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011).

As stated above, the FAC suffers from numerous jurisdictional and legal defects, and, Plaintiff cannot show a likelihood of success on the merits of her case.  As for the second factor, Plaintiff's lack of irreparable harm – indeed, as stated *supra*, lack of any legally cognizable harm – is dispositive.  As with the failure to establish standing, Plaintiff's collection of non-cognizable harms is insufficient as a matter of law.

The balance of equities does not tip in Plaintiff's favor.  For Plaintiff to override Federal law enforcement priorities, or to re-order public health concerns according to her personal preferences, does not outweigh the Government's strong interests in its exercises of discretion, as well as the orderly enforcement and administration of these issues.

Finally, Plaintiff's alleged injuries are vastly outweighed by harm to the public interest that would result from the contemplated injunction.  As argued in the Government's earlier briefing, *see* ECF No. 20 at 30, it is in the public interest to focus the Government's limited resources on its highest priority cases – such as aliens who pose national security risks, serious criminals, and repeat offenders, rather than those whom Plaintiff targets.  Plaintiff is unhappy with Executive enforcement discretion and thus invites this Court to replace the agency's expertise.  However, this Court should decline Plaintiffs' invitation to interfere with the agency's lawful processing of aliens.

## **CONCLUSION**

For the reasons stated herein, as well as previously presented to the Court in the Government's earlier filing and at the August 27, 2014 hearing, this Court should dismiss this action with prejudice and deny all relief.  Should this Court find that Plaintiff's Amended Complaint fails to establish standing, Defendants submit that the Preliminary Injunction hearing scheduled for October 29, 2014 would be unnecessary.

Respectfully submitted,

/s/ Colin A. Kisor
COLIN A. KISOR
Deputy Director
District Court Section
Office of Immigration Litigation
Civil Division,
U.S. Department of Justice
450 Fifth Street NW
Washington, DC 20001
Telephone: (202) 532-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Counsel for Defendants

**CERTIFICATE OF SERVICE**

I, Colin Kisor, do hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

/s/ Colin A. Kisor
COLIN A. KISOR
Deputy Director
District Court Section
Office of Immigration Litigation
Civil Division,
U.S. Department of Justice
450 Fifth Street NW
Washington, DC 20001
Telephone: (202) 532-4331
Fax: (202) 305-7000
E-mail: colin.kisor@usdoj.gov

Counsel for Defendants