**DR. ORLY TAITZ, ESQ**

**29839 SANTA MARGARITA, STE 100**

**RANCHO SANTA MARGARITA, CA 92688**

**PH 949-683-5411 FAX 949-766-7687**



United States District Court
Southern District of Texas
FILED

OCT 1 7 2014

David J. Bradley, Clerk of Court

# US DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

**TAITZ,**              )              **Case # 14-cv-00119**

**V**              )      **HONORABLE ANDREW S. HANEN PRESIDING**

**JOHNSON, ET AL**   )

## OPPOSITION TO MOTION TO DISMISS FIRST AMENDED

## COMPLAINT

i

## Table of Contents

Table of Authorities ………………………………….……………….……….......….piii

1. Statement of Facts …………………………………………………….....…p1

2. 12b(1) motion to dismiss is meritless , plaintiff satisfied 12b(1) requirement ……………………………………….……………………………………..p4

3. This court has vast powers to deny admission of aliens……………………..…p6

4. APA states that a court can "hold unlawful and set aside agency actions, findings and conclusions" that meet one or more of six standards. 5 USC § 706(2)………………………………………………………………….p6

5. Plaintiff     has     proven     her     article     3     standing     and causation…………………………………………………….……..p7

Standing includes not only an injury that occurred, but also imminent harm of injury. With Ebola epidemic the plaintiff has stronger standing as she is subjected to even greater  imminent harm……………………….………………....…………….p7

6. Federal employees do not have absolute immunity from common law torts, they can be sued under 28 USC 2679……………………………………………………………p9

7. Risk of exposure to new exotic diseases exceeds regular risk to healthcare provider………….,……………………………………………………………………………p9

8. The fact that an injury is widely shared, is not  barrier to Article III standing……………p9

9.  Plaintiff has standing as a taxpayer, defense  made an error in claiming that taxpayer standing is limited only to Establishment Clause claims ……..…………………………….…………..p11

10. There is no jurisdictional bar to the relief requested………………………………………..p11

11. Defendants do not have a discretion to violate existing us laws and endanger citizens through their actions………………………………………………………………………………p11

12. Argument that plaintiff is outside the statutory zone of interest is without merit, plaintiff is within a statutory zone of interest…………………………………….…………………………p12

13. APA allows this action and waives sovereign immunity………………………………….…p13

14. **Per Darby v Cisneros, plaintiff was not required to exhaust administrative remedies, as there are no mandated statutes or regulations for a relief requested by the plaintiff**………………………………………………………………………………p15

15. Plaintiff satisfied 12b(6) requirement………………………………………………………p16

16. Defense did not deny and conceded that they committed fraud on the court when they claimed that illegal aliens do not get health care through government programs……....…..p18

17. Emergency stay should be granted…………………………………………….…………..p19

18. Conclusion……………………………………………………………………………p20

# TABLE OF AUTHORITIES

Adam Cox, Citizenship, Standing and Immigration Law

http://scholarship.law.berkeley.edu/californialawreview Volume 92, Issue 2, 2-31-2004 …..p17

*Ana International Inc. v. Way,* 393 F.3d886, 890 (9th Cir. 2004)………………………………..p4

*Bangura v. Hansen,* 434 F.3d 487, 499 (6th Cir. 2006)…………………………………….....p12,16

*Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988)…………………………………….p4

*Califano,* 430 U.S. at 105……………………………………………………………………….p4

*Central S.D. Cooperative Grazing District v.Secretary*, 266 F.3d 889, 894 (8th Cir. 2001)….p15

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401U.S. 402, 414 (1971)………………..p6

Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449-50 (1989)……………………………….p10

*Chrysler Corp. v. Brown,*441 U.S. 281, 317 (1979)……………………………………….....p15

*Darby v. Cisneros,* 509 U.S. 137 (1993)…………………………………………………….p16

*Dixie Fuel Co. v. Comm'r of Social Security,* 171 F.3d…………………………………….p5

*Duran Gonzales v. DHS*, No. C06-1411P, 2006 U.S. Dist. LEXIS 82502, *8-9 (W.D. WA. Nov. 13, 2006)……………………………………………………………………………………….p16

Ekiu v. United States, 142 U.S. **651,** 659 (1892)……………………………………………p6

*FEC v. Akins*, 524 U.S. 11,23 (1998)………………………………………………………..p9

*Fed'n for Am. Immigration Reform, Inc.,* 93 F.3d at 900……………………………..…..p17

First Girl, Inc. v. Reg' Manpower Admin, 499 F.2d 122, 124 (7th Cir. 1974)…………p17

Flast v. Cohen, 392 U.S. 83 (1968)…………………………………………………………p10

*Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979)…………………………..p7

*Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995)...................................p12, 15

*Hillcrest Baptist Church v. USA*, No. C06-1042Z, 2007 U.S. Dist. LEXIS.....................p16

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)....................p14

*Japan Whaling Assoc.*, 478 U.S. at 230 n.4...........................................................p15

Jean v. Nelson, 727 F.2d 957, 964 n.5 (1 th Cir. 1984) (en banc)..................................p6

Johnson v. De Grandy, 512 U.S. 997, 1029-30 (1994)..............................................p10

Knauff v. Shaughnessy, **338** U.S. 537, 542 (1950)...................................................p6

Match-E-Be-Nash-Se-Wish Band of Pottawatomi Indians v Patchal, 132 S.Ct. 2199, 2200 (2012)..................................................................................................p12

*Md. Dep't of Human Res. v. Dep't of Health and Human Servs.*, 763 F.2d 1441, 1445 n.5 (D.C.Cir. 1985)........................................................................................p14

*NCUA v. First National Bank & Trust Co.*, 522 U.S. 479, 492 (1998)...........................p12

*N. W Forest Workers Ass 'n,* **688** F. Supp. at **3** n.2....................................................p17

Pesikoff v. Sec'y of Labor, 501 F.2d 757, 760-61 (D.C. Cir. 1974)...........................p17

*Pinho v. Gonzales,* 432 F.3d 193,202 (3d Cir. 2005)...............................................p16

Powers v. Ohio, 499 U.S. 400, 410 (1991)..........................................................p10

*Presbyterian Church v. U.S.,* 870 F.2d 518, 524-25 (9th Cir. 1989)..............................p15

*Sabhari v. Reno*, 197 F.3d 938, 943 (8th Cir. 1999) .....................................................p4

Sec'y of Labor v. Farino, 490 F.2d 885, 889 (7th Cir. 1973)...................................p17

Shaw v. Reno, 509 U.S. 630, 651 (1993).............................................................p10

*Sigman Coal Co. v. Apfel,* 226 F.3d 291, 301 (4th Cir. 2000)....................................p4

*The Chinese Exclusion Case,* 130 U.S. at 603-04.....................................................p6

*Trudeau v. FTC,* 456 F.3d 178, 185 (D.C. Cir. 2006)..............................................p5,14

United States v. Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 687-88 (1973)..................................................................................p10

United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990).......................................p6

*Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1981)..................................................................................p11

*Voting for America, inc v Andrade*  488 Fed.Appx. 890...............................................p19

*Yeboah v. U.S. DOJ*, 345 F.3d 216, 220 (3d Cir. 20031052, 1057 (6th Cir. 1998)................p5


12(b)(1).....................................................................................................p4

12(b)(6).....................................................................................................p4

28 USC §1331..............................................................................................p4

USC Title 8.................................................................................................p4

 RICO.......................................................................................................p4

APA.........................................................................................................p4

5 USC §§ 702 et seq......................................................................................p4,14

5 USC § 706(2).............................................................................................p6

DACA (Deferred Action on Child Arrivals).............................................................p7

28 U.S.C. sec 2679(d).....................................................................................p9

8 USC §§1182, 1225, 1226 , 1324......................................................................p12

5 USC §701.................................................................................................p15

## 1.  STATEMENT OF FACTS

Plaintiff, Dr. Orly Taitz, ESQ, is a Doctor of Dental Surgery in California and a medical provider for several federal programs for immigrants. She was injured and is under a continuous threat of injury of contracting infectious disease due to actions of the defendants, specifically their illegal trafficking of illegal aliens from US-Mexican border to other   areas of the country. Defendants are: Jeh Johnson, Secretary of DHS, Sylvia Burwell, Secretary of HHS, Barack Obama, US President, Border Patrol, Brownsville division and John Does and Jane Does.    Plaintiff submitted with her complaint an expert opinion, sworn affidavit of epidemiologist Vera Dolan, stating that in her professional opinion plaintiff's injury of contracting an upper respiratory diseases and necessitating positive pressure oxygen treatment for the rest of her life, is due to actions by the defendants and their trafficking of sick illegal aliens. Plaintiff, also, provided with the complaint a report by the Inspector General of DHS, as well as a representative of the Border Patrol union, both attesting that a number of illegal aliens in custody of the defendants  are indeed sick with Tuberculosis, upper respiratory diseases, Scabies, Lice and other infectious diseases. Additionally, over 500 individuals from Ebola affected region of Western Africa were apprehended illegally crossing US -Mexican border.   Border Patrol reports and news items submitted as exhibits, show that many of the individuals released from custody by the defendants, also, have an extensive criminal record including murder, kidnapping, and assaults. Some of the released illegal aliens are suspected in having ties with terrorist organizations. Plaintiff is seeking an injunctive relief, a stay of such trafficking by the defendants of individuals carrying infectious diseases, as well as individuals with a criminal record and suspected terrorists. Plaintiff is seeking a two months quarantine of these individuals in the DHS custody and upon completion of the quarantine, a certification by a licensed medical doctor that these

individuals do not carry any infectious diseases. Additionally, she is seeking a criminal record of these individuals to be obtained during this two months quarantine from the countries of origin. Furthermore,  plaintiff is seeking a ban until the end of Ebola epidemic, on all travel from Liberia, Sierra Leon and Guinea, three Western African countries affected by deadly Ebola epidemic, as well as at least twenty one days quarantine of all individuals arriving in the US from these countries legally or illegally. Though 30 countries banned travel from Ebola region and US Congress and public urge defendants to ban such travel, defendants refuse to do so and expose the public to deadly disease. Recent events have made the plaintiff's case stronger and requested relief more urgent and essential. Recently, an immigrant from Liberia, who was apparently in twenty one days incubation period and asymptomatic, travelled to the U.S. in September of this year, and, ultimately, this individual, Thomas Eric Duncan, died in Dallas, TX of Ebola. He exposed some 125 individuals to the disease.   Two nurses, who cared for him, and wore full protective hazmat gear, Nina Pham and Amber Vinson, got infected and are currently fighting for their lives. As a precedent to this requested quarantine order, Dallas county Judge, Clay Jenkins, signed a quarantine order for a number of individuals, who were in contact with Duncan.  CDC allowed one of the nurses, who cared for Duncan, and who reported running fever, to travel by plane from Ohio to Texas. Currently CDC is seeking all passengers, who travelled on the same plane with Vinson. Due to the fact that several children were on the plane with Vinson and came to school, several schools in Ohio and Texas closed and students were told to be in quarantine. It was reported that CDC now considers placing on the no-fly list all 70 health workers, who cared for Duncan and were exposed to Ebola. At the same time CDC, which is a part of the Department of Health and Human Services, presided upon by the defendant Sylvia Burwell, refuse to place on no-fly list travelers from aforementioned West African

countries, even though deadly Ebola epidemic is raging there, over 9,000 people got infected, over 4,500 died and WHO has warned that Ebola epidemic is growing there exponentially and 10,000 new infections are expected per week and a total of one and a half million infections are expected by January 2015. There is no vaccine for Ebola ad no cure. There is no prospect of a vaccine or cure being available any time soon, as reported 94% of a vast $6 billion budget of the CDC, was not used for a stated goal of seeking vaccines and cure for infectious diseases, but rather was diverted and misappropriated to projects such as community outreach and building bicycle paths in communities and providing healthy menus for the communities. Similarly, millions of dollars were diverted and misappropriated from the NIH budget and used for projects such as a study of 12 year old prostitutes in China, study why lesbians are overweight and study of gay man in Moscow. Current mortality from Ebola is 70% and the patients are treated only with hydration, blood transfusions from patients who recovered and formed antibodies to the disease, and with experimental drugs, which are extremely scarce and their side effects on humans are unknown. Current measures of taking temperature of newly arrived individuals are a sham, as these individuals can be in a 21 days incubation period and not exhibit fever yet, but carry a deadly virus. They can, also, take Aspirin of Ibuprophen to reduce fever and evade detection. Ebola is categorized as a BSL-4 by the CDC, Risk Group 4 by WHO. Scientists and medical personnel have always been required to adhere to BSL-4/Risk Group4 precautions when working with Ebola, REQUIRED at BSL-4 are: negative air pressure in the treatment room, positive air pressure in the protective suit, as self-contained air supply to breathe, a chemical decontamination shower upon exit, a HEPA scrub of the air before it circulates to outside the room http://www.cdc.gov/phpr/documents/BSL_infographic. Previously NIH shut down Ebola

research labs which did not have BSL 4 security. http://www.cidrap.umn.edu/news-perspective/2007/09/wisconsin-lab-broke-ebola-rules-watchdog-group-says. US has only 22 BSL -4 beds in the whole country. This nation is not equipped for this epidemic, this nation can competently treat only 22 Ebola patients at a time. Defendants are actively defrauding the public by claiming that Ebola is hard to contract, while all along they knew that hundreds of nurses and doctors died while caring for Ebola patients in West Africa, even though these doctors and nurses wore full hazmat protective gear, and they know that Ebola is the highest Level 4 risk disease and we have only 22 beds in the whole country to safely treat Ebola patients.

## 2. 12B(1) MOTION TO DISMISS IS MERITLESS , PLAINTIFF SATISFIED 12B(1) REQUIREMENT

The enabling statute for federal question jurisdiction, 28 U.S.C. § 1331, provides that the district courts have original jurisdiction in all civil actions arising under the Constitution, laws, or treaties of the United States. The case at hand is brought under federal statutes: Title 8- immigration laws, RICO, APA, 5 USC §§ 702 et seq and other federal statutes which plainly gives this court jurisdiction. The Supreme Court has found that 28 USC § 1331 serves as the jurisdictional basis for federal courts "to review agency action." *Califano,* 430 U.S. at 105; *see also Bowen v. Massachusetts,* 487 U.S. 879, 891 n.16 (1988) ("[I]t is common ground that if review is proper under the APA, the District Court has jurisdiction under 28 USC § 1331"). Courts of Appeals uniformly agree that 28 USC § 1331 is the jurisdictional basis for a suit to review agency action under the APA. *See, e.g., Ana International Inc. v. Way,* 393 F.3d 886, 890 (9th Cir. 2004) (finding that this rule applies in the immigration context); *Yeboah v. U.S. DOJ,* 345 F.3d 216, 220 (3d Cir. 2003) (SIJS visa case); *Sabhari v. Reno,* 197 F.3d 938, 943 (8th Cir. 1999) (immigrant visa case); *Sigman Coal Co. v. Apfel,* 226

F.3d 291, 301 (4th Cir. 2000); *Dixie Fuel Co. v. Comm'r of Social Security,* 171 F.3d

1052, 1057 (6th Cir. 1998); *Trudeau v. FTC,* 456 F.3d 178, 185 (D.C. Cir. 2006).

Additionally, defendants Johnson, Burwell and Obama are citizens of Washington DC and

Brownsville Border Patrol station is a citizen of Texas, while plaintiff is a citizen of California,

there is a complete diversity of citizenship. Full amount of damages is to be determined during

discovery, however, plaintiff asserts that a total amount of controversy is over required $75,000,

as the complaint involved causes of action dealing with exposure to deadly diseases as well as

defamation per se of the plaintiff.

Further, defense takes issue with the fact that FAC has additional defendants, John Doe's and

Jane Does, however defense did not cite any law, any statute, which states that plaintiff is not

allowed to add Jane Doe and John Doe defendants or that plaintiff needs a special leave of court

to do so. As such this issue is of no merit.

Further, defense takes issue with the fact   in the FAC defendants were sued not only as

government employees, but also as individuals and states that they were not served as

individuals, however defense does not cite any law or statute, which states that the same

defendants need to be served the second time. Defendants were served and are represented and

they are free to seek additional representation as individuals if they choose to do so. In the course

of the litigation defendants applied pressure on an important witness and filed a motion to quash

subpoenas, which represented obstruction of justice, fraud on the court and defamation per se of

the plaintiff. These actions were outside their duties as federal employees, as such additional

causes of action were added, where they are sued as individuals. Defense did not provide any

statute stating that plaintiff has to serve the same defendants the second time and such assertion is of no merit.

## 3. THIS COURT HAS VAST POWERS TO DENY ADMISSION OF ALIENS

Jean v. Nelson, 727 F.2d 957, 964 n.5 (1 th Cir. 1984) (en banc) ("Because this 'undefined and undefinable' sovereign power does not depend on any constitutional grant of authority, there are apparently no limitations on the power of [admission] .... Aliens may therefore be denied admission on grounds that would be constitutionally impermissible or suspect in the context of domestic legislation."), *aff'd,* 472 U.S. 846 (1985).

*The Chinese Exclusion Case,* 130 U.S. at 603-04 (suggesting that the power is inherent in the sovereignty of every nation); Ekiu v. United States, 142 U.S. **651,** 659 (1892) Knauff v. Shaughnessy, **338** U.S. 537, 542 (1950) ("The exclusion of aliens is a fundamental act of sovereignty."). These courts conclude that aliens are in some sense "strangers to the Constitution." As such, courts reason, any injuries immigration law inflicts upon aliens are not legally cognizable. And because aliens lack a legally cognizable injury, they cannot contest the constitutionality of immigration policy in court. *See* United States v. Verdugo-Urquidez, 494 U.S. 259, 269 (1990) (suggesting that aliens lack certain constitutional protections because they are not part of the "national community")

### 4. <u>APA states that a court can "hold unlawful and set aside agency actions, findings and conclusions" that meet one or more of six standards. 5 USC § 706(2)</u>.

Four of these standards are applicable here:

- Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;
- Contrary to constitutional right, power, privilege or immunity;
- In excess of statutory jurisdiction, authority, or limitations, or short of statutory right; or

• Without observance of procedures required by law.

5 USC §§ 706(2)(A)-(D); *see also Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 414 (1971) ("in all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion or otherwise no in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.") emphasis added. Challenged agency actions: DACA, perverted application of Flores v Reno, refusal to ban travel from Ebola affected region of Africa, trafficking of illegal aliens by the government and misappropriation or theft of tax payer funds and use of these funds  for trafficking, enticement, fostering, and social, medical and educational needs of illegal aliens satisfy all four standards which allow this court to "hold unlawful and set aside agency actions, findings and conclusions."

### 5. Plaintiff has proven her article 3 standing and causation

### Standing includes not only an injury that occurred, but also imminent harm of injury.

### With Ebola epidemic the plaintiff has stronger standing as she is subjected to even greater imminent harm

Defense claims that Plaintiff's injuries could have been sustained while treating other patients, not immigrants, transported to California by the defendants. For this reason defendants assert that the plaintiff has no standing. This assertion is wrong for two reasons:1.  Exhibit 1 of FAC and Exhibit 1 to this opposition include affidavit from epidemiologist Vera Dolan. Ms. Dolan provided her professional opinion as an epidemiologist with 30 years of experience that in her professional opinion plaintiff's injuries stem from the actions by the defendants and their transportation of sick illegal aliens. 2. Even if one were to question the causation of the actual injury, standing can also be established by "Threatened injury". Based on facts and on expert opinion the injury can be traced to the actions by the defendants and can be redressed by the stay requested.  Plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99 (1979) Dolan states that in her professional opinion Taitz  not only was infected previously from one of these immigrant patients transported by the defendants, but

she is in imminent danger of infection with a number of diseases, including Ebola. Defense did

not provide any expert opinion, which would contradict findings by expert, Vera Dolan, as such

Taitz established her standing. Threatened injury, imminent risk of contracting serious and

deadly diseases, can be traced to actions or inaction by the defendants and this threatened on-

going injury can be redressed by the requested injunction and quarantine, which satisfies

standing requirement.

On August 27, 2014 during the first STAY/Injunction hearing in this case and in motion

pleadings, Plaintiff, Taitz, predicted that this nation will see proliferation of Ebola into the US

and sought a ban on travel from Ebola region and quarantine all newly arrived individuals. Her

prediction became a reality and requested relief became an absolute necessity.

Taitz, as a doctor working with immigrants, is in imminent danger of contracting a deadly Ebola

disease. Placing a ban on travel and quarantine will remove this imminent threat of infection, as

such, a ban on travel and quarantine address the redressability component of standing.

Defense argues that other requested relief would not redress  the injury sustained by the plaintiff.

This is not the case. DACA represents an unlawful action by the defendants, which is a major

magnet for illegal immigration, which in turn brings with it a wave of infectious diseases.

Similarly, current  implementation of Flores v Reno amounts to a massive trafficking of illegal

aliens, which similarly leads to a flood of infectious diseases. While  banning flights from Ebola

affected countries and instituting quarantine is more urgent and the plaintiff is hopeful that this

stay would be granted during October 29th hearing,  DACA and Flores need to be addressed in

the near future as well, in order to limit illegal immigration and stop the wave of infectious

diseases.

## 6.  FEDERAL EMPLOYEES DO NOT HAVE ABSOLUTE IMMUNITY FROM COMMON LAW TORTS, THEY CAN BE SUED UNDER 28 USC 2679

Defense states that 28 U.S.C. sec 2679(d) "accords federal employees absolute immunity from common law tort claims arising out of acts they undertake in the course of their official duties." This is simply a wrong statement, there is nothing in the statute stating that federal employees have absolute immunity, it states quite the opposite, federal employees can be sued and the Attorney General / Department of Justice are tasked in providing defense for such federal employees.

## 7. RISK OF EXPOSURE TO NEW EXOTIC DISEASES EXCEEDS REGULAR RISK TO HEALTHCARE PROVIDER

Defense states "exposure to-and contraction of-ordinary communicable respiratory infections is an intrinsic, ongoing risk of contact with other people, and especially a healthcare provider". Defense is misrepresenting the facts. Plaintiff was exposed and is in imminent threat of contracting new, previously unknown diseases, such as Enterovirus D68, Antibiotic resistant Tuberculosis and Ebola. Actions by the defendants exposed her to a much greater threat than an ordinary threat of known common infections. Aforementioned exposure is not generalized, but concrete and particularized to her as a health care provider working with immigrants.

## 8. THE FACT THAT AN INJURY IS WIDELY SHARED, IS NOT BARRIER TO ARTICLE III STANDING

Recently a number of courts fund, that the fact that an injury is widely shared is not a barrier to Article III standing. In *FEC v. Akins*, 524 U.S. 11,23 (1998) , the Court clarified the generalized

grievance cases by reading them in connection with standing law's requirement that an injury be concrete. The Court concluded that, while the abstractness and breadth of an injury may be correlated, the sheer breadth of an injury is not itself relevant. The Article III question turns only on whether the injury is sufficiently concrete. On this point, the *Shaw* cases concluded that the potential injury at stake in those cases is concrete enough to be judicially cognizable. Accordingly, there is no Article III obstacle to standing for the types of immigration law injuries described herein. Prudential concerns were not at issue in *Akins,* because Congress had decided that the nationwide informational injury at stake in that case should be legally cognizable. *FEC v. Akins*, 524 U.S. 11,23 (1998). *Akins* is consistent with earlier cases in which the Court suggested that the widespread or uniform nature of an injury did not preclude standing. *See* Pub. Citizen v. U.S. Dep't of Justice, 491 U.S. 440, 449-50 (1989) (<u>"The fact that other citizens ...</u> <u>might make the same complaint ... does not lessen appellants' asserted injury."); United States v.</u> <u>Students Challenging Regulatory Agency Procedures (SCRAP), 412 U.S. 669, 687-88 (1973)</u> <u>("[S]tanding is not to be denied simply because many people suffer the same injury ....</u> <u>[Otherwise] the most injurious and widespread Government actions could be questioned by</u> <u>nobody.");</u> *see also* Johnson v. De Grandy, 512 U.S. 997, 1029-30 (1994) (Kennedy, **J.,** concurring in part and concurring in the judgment) ("Furthermore, '[i]t is axiomatic that racial classifications do not become legitimate on the assumption that all persons suffer them in equal degree.'" (quoting Powers v. Ohio, 499 U.S. 400, 410 (1991) (alteration in original)); Shaw v. Reno, 509 U.S. 630, 651 (1993) ("[R]acial classifications receive close scrutiny even when they may be said to burden or benefit the races equally."). Note also that the Supreme Court on at least one other occasion appears to have granted broad, nationwide standing on the basis of an expressive constitutional injury.*See* Flast v. Cohen, 392 U.S. 83 (1968).

## 9.PLAINTIFF HAS STANDING AS A TAXPAYER, DEFENSE  MADE AN ERROR IN CLAIMING THAT TAXPAYER STANDING IS LIMITED ONLY TO ESTABLISHMENT CLAUSE CLAIMS

Defense erroneously claims that taxpayers have standing only in cases challenging government expenses in Establishment clause cases, citing *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464 (1981).  While the court of Appeals standing in Valley Forge, it never stated that taxpayer standing is limited to Establishment clause cases.  Flast v Cohen 392 U.S. 83 (1968), quoted in the FAC provides a three prong test: the action by the government should stem from its taxing and spending power, it affects the taxpayers and it is prohibited. Taitz provided multiple evidence of defense using taxpayer funds to traffic illegal aliens around the country, pay for their health care and education and pay $84,000 per year to foster families to foster them. These actions were clearly prohibited under Flores v Reno, which prohibits release of individuals who might represent harm to themselves and others.

### 10. THERE IS NO JURISDICTIONAL BAR TO THE RELIEF REQUESTED

Defense misrepresents the case in alleging that there is a jurisdictional bar since Congress mandates the statutory scheme. However the plaintiff is not asking the court to create a new statutory scheme, plaintiff is seeking a stay and injunctions to stop defendants from violating the existing statutory scheme. As such there is no jurisdictional bar.

### 11.DEFENDANTS DO NOT HAVE A DISCRETION TO VIOLATE EXISTING US LAWS AND ENDANGER CITIZENS THROUGH THEIR ACTIONS

Defense claims that actions by the defendants were within defendants' discretionary functions. Flores v Reno agreement specifically states that individuals can be released from custody only if they do not represent harm to themselves and others. Plaintiff has shown that defendants are egregiously violating this agreement in releasing individuals who carry serious infectious diseases, among them Tuberculosis and Ebola. When defendants are releasing illegal aliens from custody and trafficking them all over the country and referring them to doctors, like Taitz for treatment through Medicaire/Medical program, they are egregiously violating existing immigration laws and Flores v Reno agreement and they do not have a discretion to do so.

## 12. ARGUMENT THAT PLAINTIFF IS OUTSIDE THE STATUTORY ZONE OF INTEREST IS WITHOUT MERIT, PLAINTIFF IS WITHIN A STATUTORY ZONE OF INTEREST

The "zone of interest" test does not require a plaintiff to establish that Congress specifically intended to benefit the plaintiff. Rather, there is a two-step inquiry. "First, the court must determine what interests the statute *arguably* was intended to protect, and second, the court must determine whether the 'plaintiff's interests affected by the agency action in question are among them.'" *Bangura v. Hansen*, 434 F.3d 487, 499 (6th Cir. 2006) (*quoting NCUA v. First National Bank & Trust Co.*, 522 U.S. 479, 492 (1998)). One court has described this test as "a fairly weak prudential restraint, requiring some non-trivial relation between the interests protected by the statute and the interest the plaintiff seeks to vindicate." *Hernandez-Avalos v. INS*, 50 F.3d 842, 846 (10th Cir. 1995).

Defense concedes that APA provides standing and only forecloses the suit where damages are only marginally related or inconsistent with the purposes implicit in the statute. Match-E-Be-Nash-Se-Wish Band of Pottawatomi Indians v Patchal, 132 S.Ct. 2199, 2200 (2012). This is not

the case here.    Department of Homeland Security and Department of Health and Human services, as well as the whole Title 8, US Immigration laws, particularly 8 USC §§1182, 1225, 1226 , 1324, exist in order to protect the public against infectious diseases and crime. Exhibit 1 to the FAC as well and Exhibit 1 herein, second sworn affidavit of the expert, Epidemiologist Vera Dolan, confirms that Taitz is in a zone of danger, as a doctor who is on the front lines working with immigrants. Additionally, Taitz submits Exhibit 2, Declaration of Otolaryngologist (Ear, Nose and Throat surgeon)   Dr. James Heinrich, who attests that he, as well as an anesthesiology doctor, and the whole team of nurses contracted highly virulent Laryngeal Tuberculosis while operating on an illegal alien patient from Mexico. Similarly, two nurses in Dallas contracted deadly Ebola virus while treating a recent immigrant from Liberia.  This shows not only that Plaintiff is in the zone of danger, but other health professionals are in the zone of danger and the stay should be granted as requested as it is in public interest.

Further, standing in a defamation cause of action is undeniable. Plaintiff was directly defamed, was presented in false light in the eyes of the court and defamed per se, when defendants pressured and intimidated a federal whistleblower to sign a statement that he did not want to testify in order to present Taitz, a licensed attorney, as one who made a fraudulent statement to the court. Defendants and Jane Dows further defamed the plaintiff in the eyes of the court by removing pages from pleadings, sealing exhibits and inferring that it was done by the plaintiff. This is a direct defamation and the plaintiff has undeniable standing.

Similarly, defendants engaged in RICO conspiracy  to violate existing immigration laws, existing Flores v Reno agreement, obstruct justice, commit fraud, intimidate the whistleblowers, which led to spread of infectious diseases, which directly affected the plaintiff and placed her in an imminent danger of re-infection and ongoing injury.

### 13. APA ALLOWS THIS ACTION AND WAIVES SOVEREIGN IMMUNITY

5 USC 702 states that there is jurisdiction and standing:"<u>A person suffering legal wrong</u> <u>because of agency action, or adversely affected or aggrieved by agency action within the</u> <u>meaning of a relevant statute, is entitled to judicial review thereof</u>. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance." The APA's waiver of sovereign immunity applies to agency action or inaction,

including action or inaction by an agency officer or employee. Several courts have held that this waiver applies in suits against unlawful agency action even if the suit is not. *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n.4 (1986) (holding that § 704 expressly creates a "right of action" absent clear and convincing evidence of legislative intention to preclude review); *Md. Dep't of Human Res. v. Dep't of Health and Human Servs.,* 763 F.2d 1441, 1445 n.5 (D.C.Cir. 1985) (describing the APA as a "generic" cause of action for persons aggrieved by agency action). As a "cause of action," the APA provides an individual with a basis to sue a federal agency for unlawful agency action where Congress has not specifically provided such a basis anywhere else in the law. It also "permits the courts to provide redress for a particular kind of 'claim.'" *Trudeau v. Federal Trade Commission,* 456 F.3d 178, 189 (D.C. Cir. 2006). **Because the APA creates this specific cause of action, the Supreme**

**Court has held that a separate indication of Congressional intent of the right to sue is not necessary.** *Japan Whaling Assoc.,* 478 U.S. at 230 n.4; *see also Chrysler Corp. v. Brown,* 441 U.S. 281, 317 (1979) (finding that a private right of action is not necessary because review is available under the APA); *Central S.D. Cooperative Grazing District v. Secretary,* 266 F.3d 889, 894 (8th Cir. 2001) ("Although [the statute at issue] does not authorize a private right of action, the [APA] provides for judicial review of agency action"); *Hernandez-Avalos v. INS,* 50 F.3d 842, 846 (10th Cir. 1995) (a plaintiff who has alleged a cause of action under the APA need not rely on an implied right of action under any other statute). brought under the APA. *Trudeau,* 456 F.3d at 186; *Presbyterian Church v. U.S.,* 870 F.2d 518, 524-25 (9th Cir. 1989)(waiver found in a challenge to INS investigation brought directly under the Constitution). Defense misrepresents limitations of 5USC §701, which do not apply in the case at hand Defense claims that APA review is barred in  per 5 USC §701, and INA § 236, 8 U.S.C. § 1226 (e) Apprehension and detention of aliens

## (e) **Judicial review**
The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

This statute has nothing to do with this case, as plaintiff does not appeal any decision by the Attorney General. There is nothing in this statute preventing this court from banning travel from countries affected by a deadly epidemic or ordering quarantine. So, this argument is of no merit.

## 14. PER DARBY V CISNEROS, PLAINTIFF WAS NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES, AS THERE ARE NO MANDATED STATUTES OR REGULATIONS FOR A RELIEF REQUESTED BY THE PLAINTIFF

The Supreme Court has held, that there are limits on when exhaustion of administrative remedies can be required in a suit under the APA. *Darby v. Cisneros,* 509 U.S. 137 (1993). Specifically, *Darby* held that in federal court cases brought under the APA, a plaintiff can only be required to exhaust administrative remedies that are mandated by either a statute or regulation.
For a case to be exempt from the exhaustion requirement under *Darby,* the following criteria must be met:
• the federal suit is brought pursuant to the APA;
• there is no statute that mandates an administrative appeal;
• Either: a) there is no regulation that mandates an administrative appeal; or b) if there is a regulation that mandates an administrative appeal, it does not also stay the administrative decision pending the administrative appeal; and

• The adverse agency decision being challenged is final for purposes of the APA.

There is no statute or regulation which would mandate the plaintiff to seek an administrative

appeal in a specific type of a case as brought by her. As such, she was not  required to exhaust

administrative remedies.  The *Darby* rule has been applied in recent immigration cases brought

under the APA, with the courts concluding in each that no exhaustion of administrative remedies

was required. *See, e.g., Bangura v. Hansen,* 434 F.3d 487, 498 (6th Cir. 2006) (APA challenge to

denial of a spousal immigration petition); *Pinho v. Gonzales,* 432 F.3d 193,202 (3d Cir. 2005)

(applying *Darby* and finding that possibility that removal proceedings could be instituted in

future in which adjustment application could be renewed did not establish a mandatory

exhaustion requirement); *Duran Gonzales v. DHS,* No. C06-1411P, 2006 U.S. Dist. LEXIS

82502, *8-9 (W.D. WA. Nov. 13, 2006) (APA challenge to DHS's willful refusal to follow

Ninth Circuit law); *Hillcrest Baptist Church v. USA*, No. C06-1042Z, 2007 U.S. Dist. LEXIS

### 15. PLAINTIFF SATISFIED 12B(6) REQUIREMENT

To overcome 12b(6) challenge, the injuries have to be plausible. Plaintiff provided expert

opinion of Epidemiologist Vera Dolan, stating that the injuries sustained by the plaintiff.

occurred due to actions by the defendants. Plausibility was satisfied.

Additionally courts have recognized that " Immigration laws regularly injure citizens in legally cognizable ways....[C]ourts have recognized on occasion, for example, that immigration law can impinge on citizens' associational and economic interests in ways that uncontroversially satisfy Article III's standing requirements" Adam Cox, Citizenship, Standing and Immigration Law http://scholarship.law.berkeley.edu/californialawreview Volume 92, Issue 2, 2-31-2004.

Contrary to the assertion by the defense, multiple courts found that citizens have standing challenging immigration laws and regulations. *N. W Forest Workers Ass 'n,* **688** F. Supp. at **3** n.2 (holding that nonprofit organization "concerned with the economic, environmental and demographic effects of immigration" had standing to challenge immigration regulations on the ground that the regulations improperly expanded the scope of a guest worker program); *cf Fed'n for Am. Immigration Reform, Inc.,* **93 F.3d** at **900** (assuming, without deciding, that a nonprofit immigration group's alleged economic injury stemming from Mariel boatlift sufficed for purposes of constitutional standing).

Pesikoff v. Sec'y of Labor, 501 F.2d 757, 760-61 (D.C. Cir. 1974) (holding that putative employer had standing to seek APA review of denial of labor certification for alien)

Sec'y of Labor v. Farino, 490 F.2d 885, 889 (7th Cir. 1973) (**"It** is clear that these [employers have adequately alleged that they will be economically injured if not permitted to employ these aliens.");* cf* First Girl, Inc. v. Reg' Manpower Admin, 499 F.2d 122, 124 (7th Cir. 1974)

(granting standing, sub silentio, to prospective employer to challenge denial of labor certification).

Based on the above precedents Taitz has standing in challenging government actions in admitting aliens who carry infectious diseases and cause significant harm to her and similarly situated individuals.

## 16. DEFENSE DID NOT DENY AND CONCEDED THAT THEY COMMITTED FRAUD ON THE COURT WHEN THEY CLAIMED THAT ILLEGAL ALIENS DO NOT GET HEALTH CARE THROUGH GOVERNMENT PROGRAMS

During 10.27.2014 hearing Judge Hanen specifically asked the defense whether illegal aliens are receiving health care through the government programs. Defense flagrantly lied, committed fraud on the court, by stating that illegal aliens do not receive health care through government programs, and that the government only pays for their transportation.

Plaintiff provided the court with the excerpt of Medicare –CA division of Medicaid web site, which states that undocumented individuals can  get Medicare. Now defense admits that illegal aliens can get medical care, that they are indeed getting medical care through government programs, however it is limited to pregnant women and individuals with chronic diseases and it does not include dental care.

Firstly, in response to their statement plaintiff advises the court that dental care is a part of complex multispecialty care for both pregnant women and people with chronic diseases. Customarily primary care physicians refer such patients to a dentist within the same government programs to make sure that dental decay and infections do not affect the rest of the body.  As a

matter of fact, surgeons refuse to schedule patients for major surgeries, such as heart surgery, until there is a signed release from a dentist.

Secondly, from the experience of the plaintiff, the programs are not limited to pregnant women and individuals with chronic diseases. Plaintiff sees individuals of both genders, of all ages, with or without chronic diseases, receiving both medical and dental care at the taxpayer's expense. Prior to August 27, 2014 hearing, Plaintiff requested from the defendants production of documents and depositions. Plaintiff was seeking to provide the court with full documentation of thousands of illegal aliens receiving such care. Defendants refused to provide documents or submit to depositions until there is a ruling on their 12b1 and 12b6 motion. Defense should not be rewarded for refusal to provide documents and names of illegal aliens receiving care at taxpayer's expense. At any rate, this is a matter of discovery to be conducted post 12b(1)/12b(6) hearing.

### 17. EMERGENCY STAY SHOULD BE GRANTED

As shown in the recent decision by the Fifth Circuit granting a stay  in the Voter ID case *Voting for America, inc v Andrade*  488 Fed.Appx. 890, Fifth Circuit looks at four parameters:

Whether the applicant has made a strong showing that he
is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  Plaintiff satisfied all four.  Plaintiff is likely to succeed on the merits, as she provided competent plausible evidence supported by an expert opinion that she was harmed by the actions of the defendants and she is in imminent danger and under an ongoing threat of further injury in the form of infection with serious deadly diseases. Plaintiff has shown that she, as a medical provider, as a doctor working with immigrants, will be irreparably harmed by continuous exposure to deadly diseases, if the stay is not granted. Defendants did not show any injury whatsoever to any other parties interested in the proceedings.  Lastly, and most importantly, there is a great public interest in granting the stay and protecting the U.S. citizens from deadly epidemics, such as Ebola, Tuberculosis, Enterovirus D68 and others. Requested relief would prevent damages such as suffered by two Dallas nurses, Nina Pham and Amber Vinson, who contracted Ebola, or demages suffered by Dr. Heinrich and

his staff, who contracted virulent Tuberculosis from an illegal alien patient (Exhibit2). Just as Ron Zermeno, the president of local Border Patrol union issued a statement disclosing that government actions cause spread of epidemics. Rose Anne DeMoro, the president of nurses union issued a statement that nurses and other health care professionals are being lied to, there is no protocol, no proper protective gear and there is a spread of deadly diseases http://www.mediaite.com/online/nurses-union-slams-govt-response-to-ebola-weve-been-lied-to/Noteworthy, is the fact that the Speaker of the House of Representatives, as well members of Congress from both parties urged the defendants to issue a stay, particularly a stay of travel from Ebola affected region http://www.huffingtonpost.com/2014/10/09/ebola-travel-ban_n_5961446.html, http://nation.foxnews.com/2014/10/15/top-house-transportation-republicans-call-ebola-travel-ban. If this court does not sign an injunction order, this might be tantamount to signing a death penalty to Taitz and other doctors and nurses who are in imminent danger of contracting a deadly infectious disease.

**CONCLUSION:**

**This court should  deny defendants' motion to dismiss.**

**Respectfully, /s/ Dr. Orly Taitz, ESQ 10.16.2014**

Proof of Service

I, Lila Dubert, attest that a copy of the attached pleadings was sent to the defense by First Class Mail on 10.16.2014

Lila Dubert