United States District Court
Southern District of Texas
FILED

DEC 2 2 2014

David J. Bradley, Clerk of Court

**DR. ORLY TAITZ, ESQ**

**29839 SANTA MARGARITA, STE 100**

**RANCHO SANTA MARGARITA, CA 92688**

**PH 949-683-5411 FAX 949-766-7687**

# US DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **TAITZ,** | ) | **Case # 14-cv-00119** |
| **V** | ) | **HONORABLE ANDREW S. HANEN PRESIDING** |
| **JOHNSON, ET AL** | ) | |

## REPLY TO OPPOSITION TO 11.26.2014 MOTION

## 1. PLAINTIFF IS NOT ENGAGED IN POLITICAL DISCUSSION

Defense claims that Plaintiff is engaged in political discussion. This is not the case. Plaintiff is not seeking an opinion on whether the US Congress should pass an immigration reform or amnesty.

Plaintiff is seeking to stay immigration policies by the defendant, which violate the law and cause damage to the plaintiff. This is not a political discussion.

## 2. DEFENSE TACITLY ADMITS THAT FLAST V COHEN GRANTS STANDING TO TAXPAYERS AND THAT IT IS NOT LIMITED TO THE ESTABLISHMENT CLAUSE.  DEFENDANT'S OPPOSING CASES ARE NOT RELATED TO FLAST AND NEVER OVERTURNED FLAST STANDING FOR TAXPAYERS WHICH IS CLAIMED BY THE PLAINTIFF

Previously, defense claimed that *Flast v Cohen* **392 U.S. 83 (1968)**

 is limited to Establishment clause cases. Plaintiff provided *Flast v Cohen* Supreme Court opinion, which clearly shows that *Flast v Cohen* is not limited to the Establishment clause cases and grants Article III standing to any taxpayer, like the plaintiff herein, Taitz, and it relates to every action by the government, where the

action originates under the taxing and spending power of the US Congress and the action is unlawful.

Defense attempted to create an impression that Flast v Cohen was somehow overturned and brought four cases, all of which were completely different from Flast v Cohen and different from the case at hand.

Flast governs only cases, which are related to federal spending, originating in taxing and spending clause power of the US Congress. Defense, however, brought forward two cases related to state spending and local taxes, one case related to HEW transfer, not an exercise of Congressional taxing and spending power and one case related to Executive brunch spending, not originating in Congressional spending and taxing power. None of the cases brought by the defense, fall under Flast.

Defense brought forward Valley Forge Coll. v. Americans United, 454 U.S. 464 (1982). However, in Valley Forge the court found that respondents are without standing to sue as taxpayers, because the source of their complaint is not a congressional action but a decision by HEW to transfer a parcel of federal property, and because the conveyance in question was not an exercise of Congress' authority conferred by the Taxing and Spending Clause, but by the Property Clause. *Cf. Flast v. Cohen, supra.* Pp. 454 U. S. 476-482.

Further, Daimler Chrysler v Cuno 547 U.S. 332, 343 (2006), also, does not negate Flast v Cohen. In Daimler, The city of Toledo and State of Ohio sought to encourage DaimlerChrysler Corp. to expand its Toledo operations by offering it local property tax exemptions and a state franchise tax credit. A group of plaintiffs including Toledo residents who pay state and local taxes sued in state court, alleging that the tax breaks violated the Commerce Clause. The taxpayer plaintiffs claimed injury because the tax breaks depleted the state and local treasuries to which they contributed the city of Toledo , Ohio was seeking to give tax relief to Daimler Chrysler. Plaintiffs sought standing as state taxpayers in relation to state tax expenditures. *Daimler* did not overturn *Flast v Cohen* and did not even relate to Flast v Cohen, as in Daimler the plaintiffs sued as state taxpayers challenging local taxes.

In Hein v. Freedom

From Religion Foundation, Inc ., 551 U.S. 587, 599 (2007). In Hein, just as it was with Valley Forge and Az Christian school, the Court of Appeals reversed the District Court and actually found standing, however the Supreme Court ruled no standing due to the fact that the case did not fall under Flast and did not originate in Congressional taxing and spending power.

By a 5-4 vote, the Court ruled that citizens do not have standing as taxpayers to bring Establishment Clause challenges against <u>Executive Branch programs that are funded by appropriations for general administrative expenses.</u>. Since no specific congressional appropriation was implicated in the suit, the Court ruled that there was no "Case or Controversy" under the *Flast* exception.

In Az. Christian Sch. Tuition Org. v. Winn, 131 S. Ct. 1436, 1442 (2011)

A group of Arizona taxpayers challenged **a state law** providing tax credits to people who donate to school tuition organizations providing scholarships to students attending private or religious schools. Again, this is a state law case, not originating in Congress's standing and taxing power. Further, defense misrepresented Az. Christian ruling. Ultimately, the Supreme Court found that any damages or harm claimed by the taxpayers by virtue of simply being a taxpayer would be pure speculation because **the issue at hand was a tax credit and not a government expenditure**. Justice Scalia filed a concurring opinion, joined by Justice Thomas.

Furthermore, it appears that justices of the Supreme Court are considering not to limit, but to extend Flast, to cover state taxpayer actions as well. In her dissent, Justice Kagan said "cash grants and targeted tax breaks are means of accomplishing the same government objective—to provide financial support to select individuals or organizations."id   She further argued: "taxpayers should be able to challenge the subsidy."id   The dissent was joined by Justices Ginsburg, Breyer, and Sotomayor. Bruce Peabody, a political science professor at Fairleigh Dickinson University, remarked "the case brought out four dissents, a signal that those justices were prepared to decide the substantive issue." Equally, Peter Woolley, professor of political science and director of the PublicMind Poll, posited "in making this ruling on such narrow grounds, the court virtually guarantees that plaintiff in one guise or another will be back another day.

So, all four cases brought by the defense do not negate Flast v Cohen, do not overturn it and do not negate taxpayer status of the plaintiff herein.

So, based on Flast v Cohen, as argued in FAC and prior pleadings, Taitz is assured Article 3 legal standing. Moreover, ethically, it is, probably, one of the most important issues of civil rights. With Congressional spending out of control, incomprehensible eighteen trillion dollar debt, taxpayer standing is a paramount right and one of the most important checks and balances, which can be exercised by the citizens, as taxpayers.

## 3. 11.26.2016 MOTION RELATES TO AN ONGOING ACTS AND PROPERLY BEFORE THE COURT

As part of her legal action at hand, Plaintiff is seeking a declaratory relief deeming actions by the defendants in DACA to be unlawful and she is seeking an injunction against DACA.

Plaintiff submits that current expansion of immigration policies in shielding from deportation millions of illegal aliens and granting them work permits and Social Security benefits, represents continuation and expansion of the same lawless action by the defendants, which started in 2012. Such actions are illegal and unconstitutional per Crane v Napolitano 12-cv-03247 (Exhibit 3 April 23, 2013 opinion by USDC Judge Reed O'Connor) "...8 U.S.C. § 1225(b)(1), with id. § 1225(b)(2). Sections 1225(b)(2)(B) and (C) also provide specific exceptions to the initiation of removal proceedings required by Section 1225(b)(2)(A). Given the use of the mandatory term "shall," the structure of Section 1225(b) as a whole, and the defined exceptions to the initiation of removal proceedings located in Sections 1225(b)(2)(B) and (C), the Court finds that Section 1225(b)(2)(A) imposes a mandatory duty on immigration officers to initiate removal proceedings whenever they encounter an "applicant for admission" who "is not clearly and beyond a doubt entitled to be admitted." id

In 2012 defendant Obama announced that he will shield from deportation an estimated 1.2 million illegals, who are minors.

On November 20 2014, he simply expanded the same lawless action by extending it to millions more illegals, who are over 18. According to Obama their number stands at 5 million, according to Sheriff Babeu (Exhibit 1) to 20 million people.

Both DACA and current, November 20, 2014 immigration action represent the same lawless pattern, continuation of the same lawlessness.

In both actions Barack Obama announced that he will shield from deportation large groups of illegal aliens and he will grant them work permits and Social Security cards and benefits.

In both cases Obama never signed any such orders, he only verbally announced them. Plaintiff believes that Obama, who used to be a licensed attorney, before he surrendered his license,  knew that such orders were not grounded in any law or authority and should he sign such executive orders, he would be subject to impeachment and criminal prosecution. So, Obama just made a verbal announcement and left his underlings, secretaries of DHS, to sign lawless memoranda -orders to shield millions of illegal aliens from deportation and grant them work permits and SSN cards.  In 2012, former Secretary of DHS Napolitano signed such orders calling them DACA. Shortly, after signing DACA, Napolitano

was rewarded with a golden parachute, $700,000 per year  in salary and benefits, given to her by Obama's supporters on the board  of regents of the University of California.

After Napolitano's departure, her position was filled with Jeh Johnson, who extended DACA and on November 2014 he extended this shield of deportation further, to include millions more illegals. Johnson and Obama claim that this executive action extends to about 5 million illegals, who have been in the country for at least 5 years.

Sheriff Babeu, of Pima county, Arizona, blew the whistle on Jeh Johnson and publicly revealed that Johnson have forwarded a directive to all 23 agencies under DHS, telling them that anyone who illegally crossed the border and have been in the country since January of this year, 2014, will be eligible to deportation deferral, which is 20 million people.   (Exhibit 1). Taitz suspects that there will be a golden parachute for Johnson as well.

So, based on the actions by the defendants, recent immigration actions by the defendants represent a continuation of the same 2012 lawless shield of deportation, which the plaintiff is seeking to be declared unconstitutional and unlawful and enjoined by the court.

These actions are akin to one being engaged in the same pattern of a repeated tort. Let's take an example of one being engaged  in repeated acts of conversion or embezzlement. In this hypothetical the plaintiff is seeking a declaratory relief and injunctive relief to stop these acts of embezzlement. Let's imagine, there is an additional instance of embezzlement. In this situation the plaintiff would ask the court to issue an injunctive relief to stop an additional act of embezzlement, which is a part and parcel of an ongoing legal action. For that reason plaintiff does not believe that she needed to file for a leave of court to file a second amended complaint. However, if it will please the court, the plaintiff will file a second amended complaint and will expressly include  12.20.2014 immigration actions by the defendants or will file a separate legal action reflecting 12.20.2014 actions by the defendants and will seek the leave of court to consolidate both actions.

## 3.  12.20.2014  IMMIGRATION  ACTIONS  BY  THE  DEFENDANTS INCREASED DAMAGES SUSTAINED BY THE PLAINTIFF

12.20.2014  immigration action by the defendants increases damages suffered by the plaintiff in multiple ways:

a.  First Amended Complaint includes actual and impending damages due to the fact that these acts of massive shield from deportation, became a magnet for thousands of illegals, who cross the border, who are being trafficked by the

defendants all over the country, and who spread multiple infectious diseases affecting a group of doctors, such as plaintiff, who are treating these illegal aliens. This represents an ongoing action, as well as an ongoing violation of the 5th and 14th amendment, taking without due process, taking of thousands of dollars due to missed time from work and medical bills. New immigration action will be a magnet for more  illegal aliens to cross the border and spread more infectious diseases.

b.  12.20.2014 immigration action extended the original 2012 shield from deportation and granted work permits to adults. This means that there will be millions of adults competing for work. Plaintiff is a professional, she is both a licensed attorney and a licensed doctor of dental surgery.  Per *Washington Alliance of Technology workers v US Department of Homeland security* 14-cv-00529-ESH USDC District of Columbia plaintiff will have even stronger standing, as now millions of adults, among them professionals, such as the plaintiff, will be competing with her for work. Under Alliance of Technology workers, the court found that seven month extension of working visas for STEM workers, created an increased competition for US workers. The court concluded that increased competition for work created a concrete and particularized injury.

Several recent court opinions support such declaratory relief and weigh in favor of the ruling for the plaintiff:

1. In US v Escobar 2-14-cr-00180 AJS the court finds executive action by Obama to shield large groups of illegal aliens from deportation and grant them work permits and Social security cards, to be unconstitutional and an abuse of executive power and a violation of separation of powers. Since DACA and November 20, 2014 represent the same action of shielding from deportation large groups of people and granting them work permits and SSN cards, this opinion relates to both actions and weighs in favor of granting defendants requested injunctive relief, specifically declaratory relief deeming DACA unconstitutional(Exhibit 2 December 16, 2014 Opinion by Judge Schwab in US v Juarez -Escobar 14-cr-00180 AJS USDC Western District of PA)

The court in Escobar-Juarez finds: "**1.   Inaction by Congress Does Not Make Unconstitutional Executive Action Constitutional**

President Obama contended that although legislation is the most appropriate course of action to solve the immigration debate, his Executive Action was necessary because of Congress's failure to pass legislation, acceptable to him, in this regard. This proposition is arbitrary and does not

negate the requirement that the November 20, 2014 Executive Action be lawfully within the President's executive authority.  It is not.

"In the framework of our Constitution, the President's power to see that the laws are faithfully executed refutes the idea that he is to be a lawmaker.  The Constitution limits his functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad."  *Youngstown*, 343 U.S. at 587.

Congress's lawmaking power is not subject to Presidential supervision or control.  *Youngstown*, 343 U.S. at 587.  Perceived or actual Congressional inaction does not endow legislative power with the Executive.  This measurement - - the amount/length of Congressional inaction that must occur before the Executive can legislate - - is impossible to apply, arbitrary, and could further stymie the legislative process.

The temporal limits of so called "inaction" is arbitrary because of considerations such as when the "clock" on inaction would begin and how long inaction would have to persist before otherwise unlawful legislative Executive Action would become lawful.  For example, would it be permissible for a President, who was dissatisfied with a high tax rate on long term capital gains (as limiting economic growth), to instruct the IRS to only collect taxes at a rate of

15% rather than the legislative prescribed 20% rate, or defer prosecution of any taxpayer who pays at least 15% but not the full 20%, unless Congress "pass a bill" lowering the rate within a specified time period?  Both this IRS scenario and the Executive Action at issue in this case violate the separation of powers.

President Obama stated that the only recourse available to those members of Congress who question his wisdom or authority in this regard would be to "pass a bill" and that "the day I sign that bill into law, the actions I take will no longer be necessary."  Presidential action may not serve as a stop-gap or a bargaining chip to be used against the legislative branch.  While "the power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration," it does not include unilateral implementation of legislative policies. *Utility Air Regulatory Group v. E.P.A.*, 134 S.Ct. 2427, 2446 (Jun. 23, 2014).

Further, President Obama's belief that this Executive Action is within his executive authority is not dispositive because "the separation of powers does not depend on the views of individual Presidents, nor on whether 'the encroached-upon branch approves the encroachment.'"  *N.L.R.B.*, 719 F.3d at 241, *citing Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 130 S.Ct. 3138, 3155 (2010), *quoting New*

*York v. United States*, 505 U.S. 144, 182 (1992).   Likewise, Congress's

alleged "failure" to pass legislation invalidating or limiting past Executive

Actions or Orders relating to deferred action does not evidence that such

exercises are lawful, and does not constitute a grant of legislative authority

to the Executive.

This Executive Action "cross[es] the line," constitutes "legislation," and

effectively changes the United States' immigration policy.   The President may

only "take Care that the Laws be faithfully executed . . . "; he may not take any

Executive Action that creates laws.   U.S.

Const., Art. II, § 3."

Further, the court finds that Obama's actions exceed prosecutorial discretion:

"However, President Obama's November 20, 2014 Executive Action goes

beyond prosecutorial discretion because:

(a) it provides for a systematic and rigid process by which a broad group

of individuals will be treated differently than others based upon arbitrary

classifications, rather than case-by-case examination; and

(b) it allows undocumented immigrants, who fall within these broad

categories, to obtain substantive rights." *id*

Further, the court finds it unconstitutional, the fact that this executive

action provides illegal aliens with benefits and quasi-citizenship

" The Executive Action provides for a process by which undocumented immigrants will become quasi-United States citizens, such that the status given to those within President Obama's Executive Action could not be "terminated at any time." id

"[President Obama's] Executive Action crosses the line, constitutes legislation, and effectively changes the United States' immigration policy. The President may only 'take Care that the Laws be faithfully executed…'; he may not take any Executive Action that creates laws….President Obama's unilateral legislative action violates the separation of powers provided for in the United States Constitution as well as the Take Care Clause, and therefore, is unconstitutional." id

The court reached a conclusion:

" **Conclusion**

President Obama's unilateral legislative action violates the separation of powers provided for in the United States Constitution as well as the Take Care Clause, and therefore, is unconstitutional. " id

2. Crane v Napolitano 12-cv-03247 (Exhibit 3 April 23, 2013 opinion by USDC Judge Reed O'Connor) states that DHS does not have a prosecutorial discretion in not deporting large groups of illegal aliens. In Crane deportation officers sought injunction relief against 2012 immigration policies shielding illegals from

deportation and granting them work permits.  Judge O'Connor  in his April 23 decision ruled that plaintiffs are likely to prevail on the merits, as such actions by the defendants are unlawful and unconstitutional, however, due to the fact that plaintiffs were federal employees, Judge O'connor ruled that under CSRA (Civil Service Reform Act) plaintiffs have to seek relief administratively within agency, not in federal court.  However, in case at hand, plaintiff is not a federal employee, so such limitation does not apply to her and as such this decision in Crane weighs heavily in favor of ruling for the plaintiff.

3. In their pleadings, defendants claim that individuals do not have standing to challenge immigration policies. This is negated by yet another recent decision in *Washington Alliance of Technology workers v US Department of Homeland security* 14-cv-00529-ESH USDC District of Columbia (Exhibit 4). In her November 21, 2014 opinion Judge Ellen Segal Huvelle  ruled that individuals have standing to challenge immigration policy.

Based on all of the above, motion at hand should be granted.

**Respectfully submitted,**

**/s/ Dr. Orly Taitz, ESQ**

**12.18.2014**

I, Lila Dubert, attest that I served the defense with the attached pleadings via first class mail on 12.19.2014

Signed

Lila Dubert