US DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION



APR 13 2015

David J. Bradley, Clerk of Court

TAITZ, ) Case # 14-cv-00119

V ) HONORABLE ANDREW S. HANEN PRESIDING

JOHNSON, ET AL )

## NOTICE OF NEW FACTS SHOWING DEFENDANTS KNOWINGLY AND INTENTIONALLY INFECTING THE POPULATION WITH DEADLY DRUG RESISTANT TUBERCULOSIS VIA RELEASE OF INDIVIDUALS WITH DEADLY DRUG RESISTANT TUBERCULOSIS FROM DHS CUSTODY INTO GENERAL POPULATION.

## PETITION/MOTION FOR SANCTIONS AGAINST THE DEFENDANTS FOR FRAUD ON THE COURT DUE TO THEIR PRIOR CLAIMS THAT THEY DO NOT RELEASE INTO GENERAL POPULATION INDIVIDUALS WITH INFECTIOUS DISEASES

### SUMMARY OF MOTION

Plaintiff provides this court with additional new information and letters from US Senators and US Representatives as well as one County Health Director showing that DHS is knowingly releasing from DHS custody individuals who are afflicted with deadly drug resistant Tuberculosis, which represents reckless disregard for

human life. Plaintiff and other similarly situated individuals, doctors working with immigrants in Border States, as well as other groups, such nurses, border patrol agents, school children are at constant risk of contracting a deadly infectious disease. Due to the new wave of estimated 34,000 new illegal aliens crossing the border this year, this is a heightened threat of infection and re-infection and it is a justiciable case under ***Roe v. Wade***, 410 U.S. 113 (1973) as a case "capable of repetition, yet evading review". This new information weighs heavily in favor of granting injunctive relief requested, which would require a quarantine of illegal aliens in DHS and HHS custody until they are either deported or no longer are afflicted with infectious diseases.

Plaintiff is also seeking sanctions against the defendants, as through their witnesses and employees and their attorneys, during prior two injunction hearings in the case at hand, defendants claimed that they check illegal aliens before release from custody to make sure they do not have infectious diseases. This new evidence shows that not only they don't check, but they knowingly release into general population infected individuals.

## ARGUMENT

### I. DEFENDANTS KNOWINGLY AND INTENTIONALLY INFECTING THE POPULATION WITH DEADLY DRUG RESISTANT TUBERCULOSIS VIA RELEASE OF INDIVIDUALS WITH DEADLY DRUG RESISTANT TUBERCULOSIS FROM DHS CUSTODY INTO GENERAL POPULATION.

Case at hand was filed on July 14, 2014, where the plaintiff, who is a doctor of Dental Surgery, who works with immigrants in a Border State, sought an injunctive relief of quarantine of illegal aliens who are captured and detained in DHS and HHS custody, until they are either deported or are no longer sick with infectious diseases and are no longer a threat to individuals, like the plaintiff, who come into contact with them. Plaintiff provided the court with evidence that she was infected with a respiratory disease, and she also provided this court with a sworn declaration of Doctor Heinrich, Ear Nose and Throat Surgeon, who attested

that he and his whole staff of nurses contracted drug resistant Tuberculosis from an illegal alien on whom the doctor operated.

During two injunction hearings and via pleadings in the case, defendants' attorneys and their witnesses attested to this court that illegal aliens in DHS and HHS custody are checked for infectious diseases and treated before release and that DHS and HHS do not release infected individuals and do not infect members of the general public.

However, attached exhibits show that defendants knowingly and maliciously are releasing individuals with drug resistant tuberculosis. Attached herein as an exhibit 1 is a letter sent to DHS Secretary, Jeh Johnson ICE Assistant Secretary Sara Saldana by Senators John McCain and Jeff Flake as well as US Representatives Ann Kirkpatrick and Paul Gossar. Congressman Gossar is also a Doctor of Dental Surgery in the border state of Arizona, just as the plaintiff in the case at hand. The letter refers to the attached letter by Thomas Schryer, director of Health of the Pinal county(attached herein as exhibit 2). Congressmen refer in their letter to the fact that now there is a change in policy and defendants are releasing from DHS custody individuals with drug resistant tuberculosis.

Director of Public Health Schryer stated that it was notified by ICE staff that they do not believe that they will have a legal basis to hold in DHS facility individuals with Drug Resistant Tuberculosis.

Director Schryer noted that "Tuberculosis is a very dangerous disease that can spread easily", he further noted that when ICE releases an individual with drug resistant Tuberculosis, someone will have to pay $200,000 to provide treatment for such an individual for 18-24 months.

In attached exhibit 1, senators and congressmen are demanding an answer from the defendant herein, Jeh Johnson, why such individuals are not deported on quarantined by the DHS.

According to 8 US Code §1182 individuals with communicable diseases are aliens ineligible of visas and admission to the US.

8 U.S. Code § 1182 - Inadmissible aliens
 (a) **Classes of aliens ineligible for visas or admission**

Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

**(1) Health-related grounds**

**(A) In general**

Any alien—

<u>**(i)** who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to have a communicable disease of public health significance;</u>

**(ii)** except as provided in subparagraph (C), who seeks admission as an immigrant, or who seeks adjustment of status to the status of an alien lawfully admitted for permanent residence, and who has failed to present documentation of having received vaccination against vaccine-preventable diseases, which shall include at least the following diseases: mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B, and any other vaccinations against vaccine-preventable diseases recommended by the Advisory Committee for Immunization Practices,

**(iii)** who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services in consultation with the Attorney General)—

**(I)** to have a physical or mental disorder and behavior associated with the disorder that may pose, or has posed, a threat to the property, safety, or welfare of the alien or others, or

**(II)** to have had a physical or mental disorder and a history of behavior associated with the disorder, which behavior has posed a threat to the property, safety, or welfare of the alien or others and which behavior is likely to recur or to lead to other harmful behavior, or

**(iv)** who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict,

is inadmissible.

According to 42 CFR part 34 Tuberculosis is a communicable disease of public significance:

***Revision of 42 CFR Part 34 (Medical Examination of Aliens)***
<u>Updated Screening for Communicable Disease of Public Health Significance – Interim Final Rule (IFR)</u>

Key revisions include:

- 1. The definition of a "communicable disease of public health significance" remains as those diseases previously listed in the former regulation plus the addition of
    - Any quarantinable, communicable disease specified by current or future Presidential Executive Orders - current diseases:
        - pandemic flu
        - severe acute respiratory syndromes
        - viral hemorrhagic fevers
        - cholera
        - diphtheria
        - **infectious tuberculosis**
        - plague
        - smallpox
        - yellow fever
    - Any communicable disease that is a public health emergency of international concern reported to the World Health Organization (under revised International Health Regulations of 2005), such as smallpox, poliomyelitis due to wild-type poliovirus, cholera, or viral hemorrhagic fevers (Ebola).
- 2. Addition of a risk-based approach for medical screening and testing based on medical and epidemiologic factors to determine where and for how long additional screening and testing should be conducted.
- 3. Updated screening and testing for tuberculosis using current medical knowledge and practice to screen for tuberculosis.

So, based on the above, defendants are violating 8USC§1182 by admitting or alternatively not deporting or alternatively not keeping in isolation and releasing into general population illegal aliens with drug resistant Tuberculosis. Such actions by the defendants can affect the plaintiff and others. Recently, there was an epidemic in Kansas, where 30 school children in one school were infected. Release into general population of an individual with drug resistant deadly Tuberculosis is akin to reckless disregard to human life.

US code did not change recently and 8 USC §1182 did not change. There is no justification to assertions by ICE/DHS employees that they no longer have

"legal basis to hold" these individuals in DHS custody or alternatively deport them.

Plaintiff provided this court with additional new information and letters from US Senators and US Representatives as well as one County Health Director showing that DHS is knowingly releasing from DHS custody individuals who are afflicted with deadly drug resistant Tuberculosis, which represents reckless disregard for human life. Plaintiff and other similarly situated individuals, doctors working with immigrants in Border States, as well as other groups, such nurses, border patrol agents, school children are at constant risk of contracting a deadly infectious disease. Due to the new wave of estimated 34,000 new illegal aliens crossing the border this year, this is a heightened threat of infection and re-infection and it is a justiciable case under ***Roe v. Wade***, 410 U.S. 113 (1973) as a case "capable of repetition, yet evading review". This new information weighs heavily in favor of granting injunctive relief requested, which would require a quarantine of illegal aliens in DHS and HHS custody until they are either deported or no longer are afflicted with infectious diseases.

## II. SANCTIONS ARE JUSTIFIED

Federal courts have inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a Court has wide authority "to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, 501 U.S. 32, 45-50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). This inherent power allows a Federal Court to vacate or strike various pleadings, extending to its own judgments, upon fraud having been perpetrated upon the Court. Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 88 L. Ed. 1250, 64 S. Ct. 997 (1944). This "historic power of equity" is necessary to the integrity of the Courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." Id. at 245-246. Federal Courts have inherent power to assess an appropriate sanction when a party has acted in bad faith, vexatiously, or for oppressive reasons, as when the party practices a fraud upon the Court. Universal Oil Products Co. v. Root Refining Co., 328 U.S. 575, 580, 66 S. Ct. 1176, 90 L. Ed. 1447 (1946).

In case at hand during two injunction hearings and in pleadings defendants asserted that they test illegal aliens in DHS and HHS custody for infectious diseases and do not release infected individuals into general population.

**Based on the new evidence provided herein, defendants knowingly and maliciously are releasing into general population individuals with drug resistant infectious Tuberculosis, which is the opposite to what the defendants claimed. Such statements not only represent fraud under common law, but also a criminal offense also fraud under the**

18 U.S. Code § 1015 - Naturalization, citizenship or alien registry

(a) Whoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens;

(d) Whoever knowingly makes any false certificate, acknowledgment or statement concerning the appearance before him or the taking of an oath or affirmation or the signature, attestation or execution by any person with respect to any application, declaration, petition, affidavit, deposition, certificate of naturalization, certificate of citizenship or other paper or writing required or authorized by the laws relating to immigration, naturalization, citizenship, or registry of aliens;

**Shall be fined under this title or imprisoned not more than five years, or both**

Defendants and their witnesses perpetrated fraud on the court and knowingly asserted things that are flagrantly not true or there was a recent change of policy which they were obligated to report to this court and they did not do so, which is fraud as well, as this is a material fact, a change in material facts, which they knew would affect decision by this court.

Fraud constitutes not only asserting things that are not true but also omission of things that should have been disclosed and such omission caused justifiable reliance. This court is about to rule in the case at hand in regards to quarantine/isolation requested by the plaintiff. Release into general population by the defendants of individuals afflicted with communicable diseases of public importance is a material fact that should have been disclosed.

Based on the misconduct by the defendants in either flagrant fraud on the court by stating things that are not true or fraud by omission of material facts, egregious misconduct was committed, which warrant sanctions against the defendants and ruling in favor of the plaintiff in ordering quarantine as requested.

## CONCLUSION

1. Based on the above there is a heightened necessity and justification for this court to issue an injunction, as requested in the case at hand and quarantine in the DHS custody illegal aliens who were apprehended and detained by the DHS until they are either deported or cured from infectious diseases.
2. If this court is not willing to issue an injunction in regarding to all illegal aliens in the DHS custody, this court should, at the very minimum, order examination of the detainees for infectious diseases and keep in quarantine or isolation ones who test positive for infectious diseases of public significance, such as Tuberculosis, until their deportation or until they are granted a legal status in the US and cured and can be released into the general population.
3. Issue sanctions against the defendants for fraud on the court in stating that the illegal aliens in the DHS custody are checked for diseases and infected individuals are not released, while in fact infected illegal aliens are released from the DHS custody in the general population and endanger lives of doctors, like plaintiff herein, and other individuals who come in contact with them.
4. If it is found that the new policy of releasing infected illegal aliens from the DHS custody was started after August and October injunction hearings in the case at hand, order the defendants to show cause why they did not notify the court and the plaintiff of this new policy, which is a material fact in the case at hand and which represents a reckless disregard for human life.
5. Order the defendants to show cause why do they release into general population illegal aliens with contagious diseases of public significance, who are inadmissible aliens under 8 USC 1182.

Respectfully submitted,

/s/ Dr. Orly Taitz, Esq 04.10.2015

## CERTIFICATE OF SERVICE

I, Lila Dubert, attest that the defense was served with attached pleadings on 04.10.2015 via first class mail.

_____

Lila Dubert

# EXHIBIT 1

# Congress of the United States
## Washington, DC 20510

April 2, 2015

The Honorable Jeh Johnson  
Secretary  
U.S. Department of Homeland Security  
3801 Nebraska Avenue, N.W.  
Washington, DC 20528

The Honorable Sarah R. Saldaña  
Assistant Secretary  
U.S. Immigration and Customs Enforcement  
500 12th Street S.W.  
Washington, DC 20536

Dear Secretary Johnson and Assistant Secretary Saldaña:

It has come to our attention that Immigration and Customs Enforcement (ICE) plans to release from its Florence, Arizona facility to the community an illegal immigrant with drug-resistant tuberculosis. Please find enclosed a letter from Thomas Schryer, Director of Public Health for Pinal County, Arizona which describes the situation.

This seems to be a change in ICE policy, and one that could put a financial burden on Pinal County. It is our understanding that, if released, Pinal County would be responsible for finishing the treatment of this individual in accordance with Arizona law and standard public health practices. According to the county, the housing and medical attention for the requisite 18-24 months of care is estimated to cost around $200,000.

Therefore, we ask that you respond to the following questions, in writing, at the earliest possible date, but no later than April 8, 2015:

1. Why was this individual detained in the first place, and why does ICE believe it no longer has standing to hold the individual, despite holding him/her for the past seven months?

2. Under what laws, policies, executive orders, or memoranda does ICE cite its authority to release an individual with such a diagnosis into the general public?

    a. Are cases of individuals with an infectious disease considered in a manner differently than those without any such disease?

3. Why is ICE not considering the option of deporting the individual to his/her country of origin?

4. If ICE does release this individual, does it plan to reimburse Pinal County for the medical treatment of the individual?

5. Should this release proceed, will the department honor the county's request to, at a minimum, have 10 days' notice prior to the release of this individual to ensure adequate preparations are arranged?

6. Is ICE required to notify, or have a policy in place to notify, the Center for Disease Control (CDC) when releasing undocumented immigrants with infectious disease into the United States? More specifically, has ICE notified CDC of the release or pending release of an undocumented alien from its custody into the United States in the past 60 days?

7. If ICE is unable to detain the individual, does the CDC have the authority to quarantine?

We are troubled by this situation and we hope that the Department of Homeland Security and ICE considers the public health implications of their decisions. We thank you for your review of these inquiries, and would appreciate a response in a timely matter. Should you have any questions or concerns, please do not hesitate to contact our offices, or the office of Director Schryer.

Sincerely,

John McCain
United States Senator

Jeff Flake
United States Senator

Paul A. Gosar, D.D.S.
Member of Congress

Ann Kirkpatrick
Member of Congress

# EXHIBIT 2

Leo Lew
Assistant
County Manager

Administrative
Services



PINAL·COUNTY
*wide open opportunity*

Greg Stanley
County Manager

March 30, 2015

Steven Bloch
Capitol Strategies

Dear Mr. Bloch,

As you are aware that Pinal County is the home to a major ICE Detention facility in Florence. Recently we were notified that one of the undocumented immigrants who has drug resistant tuberculosis is likely to be released to our community. This individual has been undergoing treatment for the past 7 months in this facility and according to ICE staff they don't believe they will have a legal basis to continue to hold him. I have been the director of public health for Pinal County for the past 11 years and this is the first case where we have had an undocumented immigrant with active TB released to our community so clearly this is a change in policy that has a very real impact to our County.

Tuberculosis is a very dangerous disease that can spread easily, due to the public health threat Arizona Revised Statutes and good public health practice dictates that we provide healthcare to treat tuberculosis for anyone residing in our county (other than those incarcerated) as a result when the ICE facility releases this individual he will be treated at the local tax payers' expense. We anticipate that this case will require housing and medical care for 18 to 24 months and will likely have a $200,000 impact to the County.

Each year we have approximately 35 cases of active TB that go through the ICE facility and until now they are routinely treated and deported. I am very concerned that the recent change in ICE policy will require my county or another Arizona County to foot the bill for these individuals who should be the responsibility of the federal government. From a public health perspective it is essential that anyone who is suffering from TB be treated so they are not a health threat to others, I request that ICE pay the costs of those who are released from their facility.

If you have any further questions feel free to contact me at 520-866-7326.

Sincerely,


Thomas D. Schryer, MBA
Director of Public Health

HEALTH AND HUMAN SERVICES
971 Jason Lopez Circle, Post Office Box 2945   Florence, AZ 85132   T 520-866-7326   F 520-866-7181   www.pinalcountyaz.gov