# Appendix B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| Orly TAITZ, </br></br> Plaintiff, </br></br> v. </br></br> Jeh JOHNSON, *et al.*, </br></br> Defendants. | ) </br> ) </br> ) </br> ) Civil Action No. 1:14-cv-0119 </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## DECLARATION OF LUZVIMINDA PEREDO-BERGER

I, Luzviminda Peredo-Berger, state as follows:

1. I am employed as the Deputy Assistant Director for Clinical Services and the Chief Medical Officer, assigned to the U.S. Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO), ICE Health Service Corps (IHSC).

2. I am a licensed physician holding the rank of Captain in the U.S. Public Health Service.

3. In my capacity as Deputy Assistant Director for Clinical Services, I manage IHSC clinical services programs at the national level. This includes providing administrative supervision to four Unit Chiefs and oversight over their corresponding Units.

4. At all times that I have been detailed to ICE Health Service Corps (or to its predecessor, the Division of Immigration Health Services), I have been an employee of the U.S. Public Health Service.

5. As more fully described below, it is IHSC's practice and policy since 2003, consistent with U.S. Centers for Disease Control and Prevention (CDC) Guidelines, to coordinate with local and state public health authorities when ICE detainees have suspected or confirmed cases of tuberculosis (TB). IHSC followed this practice and policy with respect to the individual whose situation is addressed below.

6. More specifically, IHSC coordinates with local and/or state health authorities on TB case identification, case management, treatment, continuity of care, and contact investigations. Coordination may also include expert consultation for cases with significant medical complications (including multidrug-resistant TB or MDR-TB).

7. IHSC notifies state and/or local health authorities of any suspected or confirmed cases of TB, in accordance with local and state regulations, to ensure that the relevant health department's TB control program is aware of the matter.

8. In treating a detainee with a medically complex suspected or confirmed case of TB or MDR-TB, IHSC medical providers experienced in TB management make TB case management and treatment decisions in consultation with experts and with state and/or local health authorities.

9. IHSC continues to report updated case information to state and/or local health authorities until final culture, drug sensitivity results, and case classification are available, regardless of whether the detainee is still in ICE custody at the time final results are received.

10. IHSC also coordinates with local and/or state health authorities to ensure continuity of care for detainees with TB following their release from ICE custody; this has been agency policy since 2003.

11. Without coordinated continuity of care, detainees with TB are more likely to interrupt or stop treatment, become contagious and infect others, acquire drug resistance, have undetected medical complications, and die from TB.

12. In order to facilitate continuity of care, IHSC does the following:

    a. IHSC will ensure that local and/or state health authorities are notified that a detainee with TB will be released from custody to a U.S. community. If the detainee plans to reside in a different jurisdiction, notification to the receiving public health department is generally accomplished through an interjurisdictional notification process that is undertaken by the local or state public health authority with which ICE has been coordinating.

    b. IHSC obtains and provides contact information for the detainee to public health authorities, including the detainee's intended destination, address, and telephone numbers.

    c. When possible, IHSC will arrange for public health authorities to interview the detainee prior to his or her release.

    d. IHSC staff educate, or arrange for public health authorities to educate, the detainee regarding continuity of care and the importance of receiving supervised treatment for his or her TB following release.

    e. IHSC facilitates domestic or transnational treatment referrals to ensure continuity of care for detainees with confirmed or suspected TB requiring anti-TB therapy.

13. If a contagious detainee must be released from custody, IHSC notifies public health authorities in advance of release so a continuity of care plan may be expedited.

14. I am familiar with the case of John Doe, who is an individual detained at the Florence Detention Center, who has been diagnosed with MDR-TB. The information below is

based on my personal review of Mr. Doe's medical records and information provided by my staff.

15. On February 11, 2015, Mr. Doe was confirmed to IHSC to have MDR-TB by Arizona Department of Health Services (ADHS) TB Control. Thereafter, IHSC conducted internal discussions with clinical leadership.

16. On February 17, 2015, Mr. Doe was interviewed by a representative from ADHS TB Control for a contact investigation. A contact investigation is the process of identifying, evaluating, and treating all persons who have had significant contact with a person with a suspected or confirmed case of contagious TB.

17. On February 18, 2015, IHSC consulted by telephone with Heartland National TB Center, which is a regional TB training and medical consultation center, regarding Mr. Doe's diagnosis. IHSC received treatment recommendations from Heartland National TB Center regarding Mr. Doe's case on February 19, 2015.

18. On March 4, 2015, IHSC discussed Mr. Doe's case with ADHS TB Program Manager Eric Hawkins. During the conversation, the parties discussed the need to plan for Mr. Doe's possible treatment in the event it became necessary for ICE to release him from custody. Mr. Hawkins expressed a willingness to work with the Maricopa and Pinal County health departments to manage Mr. Doe's care in the community if Mr. Doe were to be released from ICE custody, in order to prevent any potential interruption in his treatment following his release.

19. On March 13, 2015, IHSC again discussed Mr. Doe's case with Mr. Hawkins. Mr. Hawkins informed IHSC that the Maricopa County Health Department (MCHD) is willing to care for Mr. Doe should he be released from ICE custody; however, Mr.

Hawkins stated that MCHD was still in the processes of assessing Mr. Doe's needs and an appropriate setting for his care.

20. On March 25, 2015, IHSC again discussed Mr. Doe's case with Mr. Hawkins. As of that date, MCHD continued to express a willingness to provide care for Mr. Doe should he be released from ICE custody.

21. On March 30, 2015, IHSC, ERO, ADHS TB Control, MCHD, and the Pinal County Health Department (PCHD) participated in a conference call about Mr. Doe. During the call, ICE explained that it had no plans to release Mr. Doe from custody, but that if it were required to release Mr. Doe, it would provide advance notice to the state and counties. During that same conversation, ADHS TB Control told ICE that it would prefer that Mr. Doe not be removed from the United States and that ADHS TB Control assume responsibility for his treatment and care upon his release. ICE has not accepted ADHS TB Control's invitation.

22. To date, ICE's contact with the ADHS, MCHD, and PCHD regarding Mr. Doe's condition has been to: (1) ensure that public health officials are aware of his case, (2) to coordinate his treatment, and (3) to ensure that a plan for continuity of care is in place should ICE no longer have authority to detain him and thus be required to release him.

23. IHSC has never indicated to ADHS, MCHD, or PCHD that it would be imminently releasing Mr. Doe.

24. Mr. Doe is currently being medically managed in the Medical Housing Unit at the Florence Detention Center, in an airborne infection isolation room.

25. Mr. Doe is currently contagious, and requires airborne infection isolation under medical supervision until determined by a medical provider to be non-contagious in accordance

with criteria established in CDC Guidelines (see http://www.cdc.gov/mmwr/PDF/rr/rr5509.pdf, page 11).

26. Mr. Doe requires a customized treatment regimen administered with Directly Observed Therapy without interruption for a minimum of 18–24 months but could extend well beyond that. Once he is rendered non-contagious, he can be managed with Directly Observed Therapy in general population or a community setting for the remainder of his treatment.

27. It generally takes several weeks or months for patients with MDR-TB to be rendered non-contagious; the determination must be made by a medical provider experienced in the management of TB based on clinical and laboratory findings.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, DC, this 17th day of April, 2015.

_____
Luzviminda Peredo-Berger, CAPT, USPHS