# US DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

# BROWNSVILLE DIVISION



United States District Court
Southern District of Texas
FILED

MAY 0 5 2015

David J. Bradley, Clerk of Court

TAITZ,                )              Case # 14-cv-00119

V                 )       HONORABLE ANDREW S. HANEN PRESIDING

JOHNSON, ET AL  )

## REPLY IN SUPPORT OF MOTION FOR SANCTIONS

## I.. DEFENSE IS QUILTY OF MISREPRESENTATION AND FRAUD ON THE COURT BY ASSERTING DURING AUGUST AND OCTOBER 2014 HEARINGS THAT THEY DO NOT RELEASE ILLEGAL ALIENS WITH INFECTIOUS DISEASES INTO GENERAL POPULATION, WHILE ADMITTING NOW THAT THEY INDEED RELEASE SUCH INDIVIDUALS AND SIMPLY NOTIFY THE STATES.

This court held two injunction hearings in this case in August and October of 2014.

Defense provided testimony of four witnesses: representatives of immigration services, border patrol, health and human services and health corps of Department of Health and Human Services. All of the

defense witnesses testified that they check illegal aliens in their custody and they do not release into general population individuals with infectious diseases of public significance. Tuberculosis is one of such diseases.

After plaintiff provided this court with evidence that they indeed release individuals with infectious diseases from their custody, defense has changed its tune and now is admitting that they release such individuals, but they notify the states and counties.

In May 1, 2015 opposition to Motion for Sanctions against defendants for fraud, defense is now stating:

""...if it were required to release Mr. Doe (individual with drug resistant Tuberculosis, OT), it (DHS-OT) would provide advance notice to the state and counties". ECF 66-2 Declaration of Luzminda Peredo-Berger, p5.

So, now defense admits to what the plaintiff was stating all along, that defendants  indeed release illegal aliens  with deadly infectious diseases from custody, but they place one and only qualifier, that they will notify the state and counties.

This statement  shows that:

1. Their prior statements during August 2014 and October 2014 were fraudulent

2. This court did not issue preliminary injunction to release of illegal aliens with infectious diseases yet based on fraudulent statements made by the defendants and their witnesses, who are their employees and acted as their agents.

3. A need for an urgent preliminary injunction to stop release from DHS and HHS custody of illegal aliens with contagious diseases of public significance until they are either turned around at the border or deported or until they are cured, and keep such individuals in isolation for as long as they are contagious.

4. To stop release and keep in quarantine all illegal aliens in DHS and HHS custody, who came in contact with infected individuals, until they are confirmed as not infected and not presenting threat to public health.

This issue is extremely important for a number of reasons:

1. According to Alfredo Fiero, Deputy Field Office Director of Immigration and Customes Enforcement, Removal Operations of Department of Homeland Security, who testified before this court on August 27, 2014, all adult illegal aliens in INS custody get x-rays to check for Tuberculosis:

"When they arrive in our adult detention setting, everybody gets a TB x-ray. Usually within four hours we get a result back as to if that's a positive x-ray or not. They get initial screening, and they are housed in our detention facilities" p.135, Sworn testimony of Alberto Fiero, August 27, 2014, Taitz v Johnson

So, by giving this statement Mr. Fiero presented to the court that the x-rays and screenings are given so that infected individuals are not released into general population and" kept in their detention facilities" .

Now, according to 05.01.2015 declaration of Luzminda Peredo-Berger, it is clear that individuals with Tuberculosis are released from custody, but DHS simply notifies the state and county, where this illegal alien states that he would like to go.

This court did not issue a preliminary injunction justifiably relying on August 27, 2014 testimony of Mr. Fiero, believing that individuals, who are tested positively for TB, are not released from custody.

Mr. Fiero knew of such reliance and he had a duty to reveal to the court that infected individuals are still released, but the states are notified.

Additionally, on August 27, 2014 defendants provided testimony of Teresa Brooks, from the HU Department of Health and Human Services, Administration for Children and Families, Office of Refugee Resettlement, Division of Children's services.

On August 27, 2014 she testified:

"Q So you've been sitting here in the courtroom through Chief Oaks testimony, so I am going to cut right through the chase here. So you oversee ORR, that's Office of Refugee Resettlement programs, when unaccompanied minors are sent to ORR from Border Patrol; is that right?

A Yes, sir. I do for the Rio Grande Valley.

Q And are you responsible for the entire Rio Grande Valley?..." p89

" Q And which of these does the health screening?

A All programs utilize- do health screening within 24-48 hours of the child arriving onto their campus. Each program is responsible under their cooperative agreement and under Flores and TVPRA to ensure that the child is screened by a medical professional: Physician, a nurse practitioner, physician's assistant for well child check up. Children are normally then screened for TB ( Tuberculosis-OT), and they receive immunizations" *id*

So, yet again, this testimony was provided to the court in support to opposition to injunction, as proof that individuals with infectious diseases are not released from custody and do not infect the population.

Based on the testimony of both Mr. Fiero of DHS and Ms. Brooks of HHS, defendants argued to the court that sick individuals are screened and not released into general population. This court reasonably believed that their testimony in regards to immediate Tuberculosis screening meant that illegal aliens with contagious diseases are not released from custody. Now, based on May 1, 2015 opposition and declaration of Peredo-Berger we know that such individuals are released and only notification is given to the states.

Defendants had a duty to release this information and they failed to do so.

## II. THE STATES ARE LIMITED IN WHAT THEY CAN DO AFTER SUCH NOTIFICATION. THE STATES ARE LIMITED BOTH JURISDICTIONALLY AND FINANCIALLY.

a. Jurisdictionally the states cannot act and deport individuals with communicable diseases of public significance.

8 U.S. Code § 1182 - Inadmissible aliens

**(a) Classes of aliens ineligible for visas or admission**
Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:
**(1) Health-related grounds**
**(A) In general**
Any alien—

**(i)** who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to have a communicable disease of public health significance; _

So, based on 8 USC 1182 the defendants had jurisdiction, the right and the duty to turn around or legally deport individuals with contagious diseases of public significance, however state and county officials have no jurisdiction to do so. *Arizona v US* 567 US (2012) prevents the states from engaging in any deportations of illegal aliens. Further, as stated in the letter from Pinal County Director of Health, which was attached as an exhibit to this motion, the states simply have no funding. Defense own witness , Peredo-Berger, admits that treatment of Drug resistant Tuberculosis can last 18-24 months  or longer. Such treatment can cost at least $200,000 per patient and can be as much as a million.

Peredo-Berger did not explain, why did they tell the county officials that this illegal alien with TB might be released to those counties, what was the legal justification for such release, why didn't they contact the Department of Health of Mexico and seek to transfer the individual there, as the individual crossed the border from Mexico?

Further, because the counties have no funding, they cannot provide necessary care and cannot enforce quarantine or isolation. Recently, in California,  health officials directed an individual with drug resistant Tuberculois to stay in his motel room in isolation, while officials were bringing him food and medicine. This individual simply took off and infected an untold number of individuals..

When an individual with Multi Drug Resistant TB (MDR-TB)   is in the isolation unit of a detention center of DHS, he cannot take off and cannot infect others.

Similarly, recently in Kansas 30 students in one school were diagnosed with TB. Considering that TB is 12-14 times more likely to be diagnosed

in a foreign born individual than a US born individual, it is highly likely that such individual is one of those illegal aliens released by the defendants.

Further, now defendants are admitting that they release individuals with TB into general population, but they notify the states and counties, however there is a high probability that those individuals will move to another county or another state. Individual described in this motion, John Doe, was expected to reside in Arizona. Defendants and their agents didn't even know where in Arizona he intends to reside and for that reason they contacted two counties: Maricopa and Pinal county. However, what is to prevent this individual to get on a bus and travel to Texas or California or anywhere else in the country.  So, notification of one state or county is not sufficient.

### III. DEFENDANTS CONTINUE MISREPRESENTATION.

Defendants filed their May 1, 2015 opposition to motion for  sanctions, stating that the individual in question, John Doe, is kept in custody, that he is unlikely to be imminently released, however, they   did not admit that the decision to keep John Doe in custody was made  after the Director of Health of Pinal county was told that this individual will be released, Director of Health complained to the US Congress and sought action and US Senators John McCain and Jeff Flake and US Representatives Gossar and Kirkpatrick wrote an open letter to the Director of Homeland Security Jeh Johnson, defendant herein.

A question remains unanswered: what would have happened if Director of Health of Pinal county  were not to be proactive and not file a complaint with the US Congress? Probably, this individual would have been released.

Further, because of public outcry in this case and after letters from the US senators, this individual received a hearing with an immigration judge immediately, however majority of illegal aliens receive a note to appear for immigration/deportation hearing 3-5 years from now. During these 3-5 years this person could infect untold number of individuals, if he were to appear for the hearing at all, 90% of illegal aliens never show up for their deportation hearings.

So, this case shows that there is a need for an injunction order from this court to the defendants, among them Secretary of DHS and Secretary of HHS, forbidding them from releasing from custody individuals with infectious diseases of public significance until these individuals are either deported or cured.

## IV. DEFENDANTS FAILURE TO OBTAIN ISOLATION/QUARANTINE ORDERS FROM CDC AND THEIR STATEMENTS TO THE COUNTY HEALTH DIRECTORS, DEMONSTRATE THAT ORIGINALLY THEY WANTED TO RELEASE A TB PATIENT INTO COMMUNITY AND KEPT HIM IN DETENTION ONLY DUE TO PUBLIC PRESSURE

During October injunction hearing in this case Defendants put on the stand Dr. Escobedo, local director of Public Health Service, who testified that he obtained isolation orders from CDC for TB infected illegal aliens in DHS custody.

Taitz requested a CDC isolation order form from the defendants. They refused to provide it due to the fact that their 12b6 motion was not adjudicated yet. At that point Taitz submitted to CDC division of HHS a

FOIA request for isolation forms. As is the case usually with federal agencies, a response was not received. At that time Taitz filed a FOIA legal action. Only after a FOIA legal action was filed,   defense provided some of the information, which is attached herein as Exhibit 1. This exhibit shows CDC forms and orders pursuant to section 361 of the Public Health Act (42  USC §264) and 42 CFR §70.6. It also provides a declaration from Dr. Alvorado-Ramy, supervisory officer of US Health Service.  Based on the attached declaration and CDC order,  an individual with TB was immediately placed in isolation. This order was signed in 2013.

So, based on this information, if defendants wanted to protect public health, they would have obtained CDC isolation orders immediately. It shows that Peredo-Berger, declarant in the case at hand, had an opportunity, jurisdiction and duty to submit such declaration to CDC and obtain CDC isolation order immediately. There was no reason and there was absolutely no justification for the DHS officials, including Peredo-Berger, to hold meetings and conferences with state and county officials, telling them that an individual with deadly, drug resistant TB may be released into their communities. The fact that DHS officials did not secure a CDC isolation order, shows that they wanted to release an illegal alien with deadly TB into the community and did not do so only after enormous public pressure and after Secretary of DHS, Jeh Johnson, received an inquiry from members of the US Congress.

## DUE TO CONFLICTING STATEMENTS, DEFENDANTS ARE NOT TO BE BELIEVED.

As stated previously, defendants, through their attorneys and agents made conflicting statements in their  statements during injunction hearings, specifically statements by witnesses Fiero and Brooks and current declaration by Peredo-Berger.

Prior statements gave the court an impression that infected individuals are kept in DHS and HHS custody and current declaration revealed the opposite, that they are released from custody and the states are simply notified. However, when credibility of a party is undermined, none of the statements can be believed. We can't even believe their statement that the states and counties are always notified. It is possible that in some instances the states and counties were not notified and that might explain some of the out brakes and epidemics, including but not limited to recent outbreak in Kansas, where 30 students were infected.

## CONCLUSION

Based on all of the above, defendants should be sanctioned for misleading this court. Further, additional information provided in this motion shows the need for a preliminary injunction preventing defendants from releasing from DHS and HHS custody all of the illegal aliens with infectious diseases of public significance.

Respectfully,

/s/Dr. Orly Taitz, ESQ

05.04.15

# Exhibit 1

 **DEPARTMENT OF HEALTH AND HUMAN SERVICES**

Public Health Service

Centers for Disease Control
and Prevention (CDC)
Atlanta GA 30333

January 22, 2015

Orly Taitz
29839 Santa Margarita, Suite 100
Rancho Santa Margarita, California  92688

Dear Dr. Taitz:

This letter is in response to your November 2, 2014, email to cdcinfo@cdc.gov which was
subsequently forwarded to this office for processing under the provisions of the Freedom of
Information Act (FOIA, or the Act). You requested the following:

1. A form quarantine order which explains under which federal statutes/authority
   individuals are being quarantined and/or isolated.
2. Any and all quarantine/isolation orders issues for Ebola patients or individuals exposed to
   Ebola.
3. Any and all Tuberculosis/quarantine orders issued since 2012. Any and all Enterovirus
   D-68 quarantine/isolation orders issued since 2012.
4. Any other quarantine/isolation orders issued since 2012.
5. Certification of Ebola Risk level.
6. Redaction of names and any other identifying information ,"which is redactable under
   HIPAA"
7. Prediction of total Ebola cases expected by January 2015.
8. Any and all documents showing quarantine/isolation of sick individuals in HHS camps
   created to accommodate the surge of minor illegal aliens from 2012-2014.
9. Any and all documents relating to rabies quarantine, particularly regarding rabies related
   to death of.....

Enclosed are the documents you requested (72 pages).

Under authority 5 U.S.C. §552(b)(6) of the Act and 45 CFR §5.67 of the Department's
implementing regulations, personally identifiable information was withheld. The disclosure of
this information would constitute a clearly unwarranted invasion of personal privacy. No pages
were withheld in their entirety.



DEPARTMENT OF HEALTH AND HUMAN SERVICES                                    Public Health Service

Centers for Disease Control
   and Prevention (CDC)
Atlanta GA 30333

January 22, 2015

Orly Taitz
29839 Santa Margarita, Suite 100
Rancho Santa Margarita, California  92688

Dear Dr. Taitz:

This letter is in response to your November 2, 2014, email to cdcinfo@cdc.gov which was
subsequently forwarded to this office for processing under the provisions of the Freedom of
Information Act (FOIA, or the Act). You requested the following:

1.  A form quarantine order which explains under which federal statutes/authority
    individuals are being quarantined and/or isolated.
2.  Any and all quarantine/isolation orders issues for Ebola patients or individuals exposed to
    Ebola.
3.  Any and all Tuberculosis/quarantine orders issued since 2012. Any and all Enterovirus
    D-68 quarantine/isolation orders issued since 2012.
4.  Any other quarantine/isolation orders issued since 2012.
5.  Certification of Ebola Risk level.
6.  Redaction of names and any other identifying information ,"which is redactable under
    HIPAA"
7.  Prediction of total Ebola cases expected by January 2015.
8.  Any and all documents showing quarantine/isolation of sick individuals in HHS camps
    created to accommodate the surge of minor illegal aliens from 2012-2014.
9.  Any and all documents relating to rabies quarantine, particularly regarding rabies related
    to death of…..

Enclosed are the documents you requested (72 pages).

Under authority 5 U.S.C. §552(b)(6) of the Act and 45 CFR §5.67 of the Department's
implementing regulations, personally identifiable information was withheld. The disclosure of
this information would constitute a clearly unwarranted invasion of personal privacy. No pages
were withheld in their entirety.

You have the right to appeal this decision to deny you full access to agency records. Send your appeal, within 30 workdays from the date of this letter, to the Deputy Agency Chief FOIA Officer, Office of the Assistant Secretary for Public Affairs, U.S. Department of Health and Human Services, 5600 Fishers Lane, Room 19-01, Rockville, MD 20857. **Please mark both your appeal letter and envelope "FOIA Appeal."**

Sincerely,

Katherine Norris
CDC/ATSDR FOIA Officer
Office of the Chief Information Officer
Phone: (770) 488-6399
Fax: (404) 235-1852

Enclosures

15-00273-FOIA

**DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR DISEASE CONTROL AND PREVENTION**

**ORDER PURSUANT TO SECTION 361
OF THE PUBLIC HEALTH SERVICE ACT**

**(Isolation Order - Interstate)**

<u>**SECTION A: SUBJECT INFORMATION**</u>

Name: (b)(6)
DOB: (b)(6)
Port of Entry: (b)(6)
Date of Arrival: (b)(6)
A#: (b)(6)
Contact information:

(b)(6)

<u>**SECTION B: FINDINGS**</u>

Based upon the medical declaration, attached hereto and incorporated by reference, I make the following findings and conclusions:

1.      CDC finds that you are infected with multidrug resistant tuberculosis (TB), with additional resistance to second-line anti-TB drugs, which is thus classified as extensively drug-resistant TB.  Tuberculosis is a quarantinable disease in the United States of America under Executive order 13295 (2003), as amended by Executive order 13375 (2005).

2.      Isolation is authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR § 70.6.  Isolation is supported by the facts set forth in the medical declaration, which is attached hereto and incorporated by reference.

3.      CDC finds that you are in the qualifying stage of the quarantinable disease, meaning that that you are in a communicable stage of the quarantinable disease.

4.      CDC reasonably believes that you are moving or about to move from a State to another State, or alternatively, that you constitute a probable source of infection to other individuals who will be moving from a State to another State.

5.      Based on these findings, I HEREBY ORDER THAT YOU REMAIN IN ISOLATION.

6.     This order shall take effect immediately and continue until CDC finds that you no longer pose a public health threat to others, either through clinical cure or through other safeguards to protect the public's health.

## SECTION C: PLACE OF ISOLATION AND MEDICAL EXAMINATION

Place of Isolation and Medical Examination: **(b)(6)**
Street Address
City/State/Zip:       **(b)(6)**
Phone number:

## SECTION D: REQUIREMENTS

1.     You shall undergo such medical examination and testing as necessary to ascertain your health status currently and throughout the duration of your isolation.

2.     You shall take precautions, as directed by medical staff and CDC personnel, to prevent the spread of the disease to others.

## SECTION E: NOTICE

1.     **Legal Authority:** CDC has ordered that you be isolated because CDC has found that you are infected with a quarantinable disease in its qualifying stage. Isolation is authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R § 70.6. CDC may also direct that you undergo medical examination and testing as necessary.

2.     **Medical Examination:** Any medical examinations conducted pursuant to this order will be performed by licensed health care staff who will have primary responsibility for your clinical care. CDC will provide input and consultation to health care staff on issues relating to the diagnosis, management, and methods for preventing the transmission of communicable diseases.

3.     **Duration of Isolation:** CDC has ordered that you remain in isolation until CDC finds that you no longer pose a public health threat to others, either through clinical cure or through other safeguards to protect the public's health. You will be immediately released from federal isolation once CDC makes these findings.

4.     **Automatic 72-Hour Reassessment:** CDC will reassess this order no later than 72 hours after you have been served with this order. CDC will review all the records considered by CDC in issuing this order, including any medical records or other records that may indicate infection, and any other information available since the order was issued. At that time, CDC will also consider whether less restrictive alternatives would adequately protect the public health. At the completion of this reassessment, CDC will issue a written order directing that the isolation be continued, modified, or rescinded.

5.      **Medical Review.** If at the completion of the reassessment, CDC orders that you remain in isolation, you may request a medical review at any time while you are still under isolation. The medical review will not be automatic; you must specifically request a medical review and may do so by calling the number listed on this order in paragraph 8. If you request a medical review, CDC will arrange for the medical review to occur as soon as practicable. During the medical review, you may present medical facts or other evidence before a medical reviewer (e.g., a medical doctor) to refute CDC's finding that you are in the qualifying stage of a quarantinable disease. You may appoint your own medical representative(s) to assist you with the medical review at your own expense. CDC will appoint a medical representative to assist you with the medical review if you are indigent and request appointment of a medical representative.

6.      **Health Monitoring.** CDC will monitor your health condition so that the time that you remain under federal isolation will not last longer than necessary to prevent the potential spread of the quarantinable disease. During the time you are in isolation you must cooperate with the instructions of health care staff and other authorized personnel.

7.      **Penalties for Violating this Order.** You must comply with the requirements listed in this order to protect your health, the health of those with whom you may have come into contact, and the public's health. Violations of this order may subject you to a fine of no more than $250,000 and/or one year in jail, as authorized by 42 U.S.C. § 271; 18 U.S.C. §§ 3559, 3571, or as otherwise provided by federal law.

8.      **Whom to Call About this Order.** If you have any questions regarding this order you should call CDC's Emergency Operations Center at (770) 488-7100 and ask to speak to an official in the Quarantine and Border Health Services Branch of the Division of Global Migration and Quarantine.

<u>SECTION F: AUTHORIZING OFFICIAL</u>

Signature of Authorizing Official

Martin S. Cetron, M.D.
Director
Division of Global Migration and Quarantine
Centers for Disease Control and Prevention

April 18, 2013
Date

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR DISEASE CONTROL AND PREVENTION

DECLARATION OF MEDICAL OFFICER
IN SUPPORT OF ORDER PURSUANT TO
SECTION 361 OF THE PUBLIC HEALTH SERVICE ACT

I, Francisco Alvarado-Ramy, M.D., do hereby declare that

1) I am a Supervisory Medical Officer, Captain of the U.S. Public Health Service, in the Quarantine Border Health Services (QBHS) Branch, Division of Global Migration and Quarantine (DGMQ), at the Centers for Disease Control and Prevention (CDC). CDC is a component of the U.S. Department of Health and Human Services. I serve as Acting Team Lead for Epidemiology and Surveillance within the QBHS Branch. My duties include working with CDC subject matter experts, officials from other federal agencies, and state and local health departments, to identify persons with specified communicable diseases that may require federal isolation and quarantine. I have been a Quarantine Medical Officer since August 2005.

2) I received my medical degree from the University of Puerto Rico School of Medicine and completed an internal medicine residency at the Cleveland Clinic in Cleveland, Ohio. I am board certified in internal medicine, and I am licensed to practice medicine in Puerto Rico and Georgia.

3) The primary mission of DGMQ is to work with other federal agencies, state and local health departments, the travel industry, and other organizations to prevent the introduction, transmission, and spread of communicable diseases into the United States and from one state or possession into another.

4) This declaration is based in part upon my conversations with other DGMQ staff, staff from CDC's Division of Tuberculosis Elimination (DTBE), officials at the Texas Department of State Health Services, and from the U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS).

5) Tuberculosis (TB) is caused by *Mycobacterium tuberculosis* complex. Pulmonary or respiratory tract TB can be transmitted from person to person by airborne droplet nuclei, which are infectious particles expelled by the patient when coughing, sneezing, or talking. These particles can remain suspended in the air for extensive periods of time after the person with TB coughs, sneezes, or talks. Persons with pulmonary TB may experience signs and symptoms such as cough (with or without bloody sputum), fever, lack of appetite, fatigue, unintended weight loss, and night sweats.

6) Persons with pulmonary TB can transmit disease to others through prolonged or frequent close contact. It usually takes several hours of exposure for TB transmission to occur. However, there have been reports of transmission involving only brief contacts with the contagious person. The ability of a person with infectious TB to transmit the infection to someone else depends on the extent of disease, the adequacy and duration of the patient's TB treatment, and the intensity, duration, and frequency of exposure to others. Inadequately treated patients with pulmonary TB may continue to be infectious for years. Recommended precautions for persons with inadequately treated infectious TB include respiratory isolation in an airborne infection isolation room with negative pressure and proper treatment.

7) Multidrug-resistant TB (MDR TB) is TB that is resistant to the two best first-line anti-TB drugs, isoniazid, and rifampin. Resistance to anti-TB drugs can occur when

2

these drugs are misused or mismanaged. Examples include when patients take their medications erratically or do not complete their full course of treatment; when patients do not absorb doses of medication well; when health-care providers prescribe the wrong treatment, the wrong dose, or length of time for taking the drugs; when the supply of drugs is not always available; or when the drugs are of poor quality. Persons with incompletely treated TB are at risk of reactivation of disease and at increased risk of developing drug-resistant TB. Persons may also become infected with MDR TB if exposed to someone with MDR TB who is infectious. Persons with MDR TB can prevent the spread of the disease and prevent development of additional drug resistance by taking all of their medications as prescribed, ideally by directly observed therapy, and adhering to recommendations for infection control, particularly while still infectious. No doses should be missed, and treatment must not be stopped early unless a compelling reason exists to do so (e.g., intolerance to medications or life-threatening adverse events).

8)   Extensively drug-resistant (XDR) TB is TB that is resistant to the two best first line anti-TB drugs, isoniazid and rifampin, (i.e., MDR TB), with additional resistance to any of the fluoroquinolones (such as ofloxacin or moxifloxacin) and to at least one of three injectable second-line drugs (amikacin, capreomycin, or kanamycin). Because XDR TB is resistant to the most potent first- and second-line TB drugs, the remaining treatment options are less effective, have more side effects, and are more expensive.

9)   I have reviewed the following medical records: drug susceptibility testing (DST) results from isolates collected on [ (b)(6) ] and a TB Case and Suspect Report and International Referral Form prepared by the ICE's Division of Immigration Health Services describing the clinical findings related to TB.

3

10) [(b)(6)] who, upon information and belief, is a citizen of [(b)(6)] Upon information and belief, the patient entered the United States without proper documentation. It is believed that [(b)(6)] contracted TB while in [(b)(6)] but [(b)(6)] reported [(b)(6)] was not diagnosed or treated there. [(b)(6)] was presumptively diagnosed with pulmonary TB in the United States on [(b)(6)] in Texas while in ICE custody at the [(b)(6)] TB skin test result was positive with 13 mm of induration [(b)(6)] and a chest x-ray showed a small cavity and scattered patchy consolidation in mid lung zones [(b)(6)] Microscopic examination of three sputum specimens (collected on [(b)(6)] showed many acid-fast bacilli (AFB); *Mycobacterium tuberculosis* was later isolated from cultures of these sputum specimens, confirming the diagnosis of TB.

11) Upon information and belief, personnel at the [(b)(6)] began treating [(b)(6)] for TB on [(b)(6)] with a standard first-line four drug treatment regimen. However, once the patient was found to have drug-resistant TB [(b)(6)] treatment was discontinued until complete DST results were available and an appropriate regimen could be determined and procured.

12) Preliminary DST results from public health laboratories in Texas were consistent with XDR TB, showing resistance to all four first-line drugs (isoniazid, rifampin, pyrazinamide, ethambutol), three second-line injectable drugs (amikacin, kanamycin, capreomycin), and a fluoroquininolone (ofloxacin). These results were confirmed at the CDC TB Reference Laboratory in Atlanta, GA. Additional second-line drugs, ethionamide and streptomycin, were also found to be resistant at both laboratories. All drug susceptibility testing for additional second line anti-TB drugs, performed at CDC

4

and non-CDC reference laboratories, were finalized February 22, 2012; the results

showed susceptibility to linezolid, cycloserine, and clofazimine. The minimal inhibitory

concentration (MIC) of moxifloxacin was 1–4 µg/mL and Levofloxacin was 2 µg/mL,

suggesting that the patient TB was resistant to levofloxacin and not fully susceptible to

moxifloxacin *in vitro*.

13) Upon information and belief, (b)(6) has been under airborne isolation

precautions at the (b)(6) between (b)(6)

(b)(6) was transferred to the (b)(6)

(b)(6) to facilitate medical monitoring, especially once on treatment.

While at (b)(6) remained under airborne infection isolation precautions (b)(6) started a

treatment regimen of moxifloxacin, linezolid, cycloserine, clofazimine, and vitamin B6

on (b)(6) A fifth medication, bedaquiline, newly FDA-approved, will be

added to this regimen once it is procured for compassionate use from the pharmaceutical

company.

14) On (b)(6) was transferred to the (b)(6)

(b)(6) to continue treatment and clinical

management of medication side effects. Microscopic examination of sputum specimens

a (b)(6) are collected every two weeks. Three sputum specimens collected (b)(6)

(b)(6) showed no acid-fast bacilli (AFB); *Mycobacterium tuberculosis* was

later isolated from cultures of these sputum specimens, confirming persistent TB

presence. Results of sputum culture specimens collected (b)(6) and

(b)(6) are still pending (b)(6) remains under airborne infection isolation

precautions.

5

15) Considering (b)(6) history of international travel and irregular entry into the United States (b)(6) may suddenly decide to travel without notice if (b)(6) were to be released on (b)(6) own recognizance, under a bond posting, or if (b)(6) were granted asylum, even while infectious and/or under treatment,.

16) TB patients who are partially treated are at risk of treatment failure, disease relapse, may become re-infectious and pose a risk to persons with whom they come into contact. Moreover, persons with XDR TB, such as (b)(6) are at risk for developing further drug resistance making (b)(6) TB disease, and anyone who becomes infected with (b)(6) strain, untreatable. Extensively-drug resistant TB is considered infectious until patients are on appropriate treatment regimen, have consistently negative culture results, and show evidence of clinical improvement. Consistently negative culture results is generally defined as having two consecutive cultures taken at least one week apart with no subsequent positive cultures.

17) It is my professional judgment that, based upon the information and evidence cited herein, that (b)(6) is infected with extensively drug-resistant (XDR) TB , a communicable disease subject to public health restrictions, including isolation, under section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR §70.6.

18) Under 42 U.S.C. 264(d)(2), a "qualifying stage" of the disease is defined as the communicable stage of the disease or a pre-communicable stage if the disease would be likely to cause a public health emergency if transmitted to other individuals. (b)(6) illness meets the definition of qualifying stage because (b)(6) is presently communicable.

19) Furthermore, it is my professional judgment that if this TB strain were transmitted to others it would represent a public health emergency because XDR TB represents a

6

relatively severe and uncommon type of TB and exemplifies an infectious disease that has been controlled in the United States. Additional infections with this strain would pose a high probability of serious long-term morbidity and substantial future harms to others, including death. Besides the high risk of traveling interstate, in light of (b) (b)( undocumented entry into the United States (b)(6) would also be a probable source of infection to other individuals who, while infected with XDR TB in a qualifying stage, will be moving from one state to another state.

20) I recommend that if (b)(6) is released from ICE custody prior to cure in the United States, that (b)(6) be isolated to allow for airborne infection isolation precautions until public health authorities determine (b)(6) is no longer infectious. (b)(6) should continue on directly observed treatment until cured.

21) Accordingly, pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR §70.6, I recommend that an isolation order be issued, requiring that (b)(6) be admitted at the (b)(6) or another appropriate facility approved by CDC.

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Signed this 18th day of April, 2013.

Francisco Alvarado-Ramy, MD, FACP
Supervisory Medical Officer
Captain, U.S. Public Health Service
Quarantine & Border Health Services Branch
Division of Global Migration & Quarantine

Centers for Disease Control and Prevention

## DEPARTMENT OF HEALTH AND HUMAN SERVICES
### Centers for Disease Control and Prevention
### Atlanta, Georgia 30333

I.     TITLE:  Medical review of quarantine and isolation orders issued under section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R. §§ 70.6, 71.32(a), and 71.33.

II.    PURPOSE:  A medical doctor will be appointed by the CDC Director to conduct a medical review of quarantine or isolation orders issued under 42 C.F.R. §§ 70.6, 71.32(a), and 71.33.

III.   TIMING OF THE MEDICAL REVIEW:

a.     A medical review will be conducted if the individual under quarantine or isolation requests a medical review; provided that a reassessment has occurred and the quarantine or isolation order has been continued or modified.

b.     If a medical review was conducted previously, for instance if the individual was originally bound under a quarantine order (in the same matter) and that order was modified to an isolation order, the individual may request a second medical review, but based only on new facts or medical evidence. For the purpose of this procedure, "new" facts or medical evidence are those which, for whatever reason, did not exist or were not available during the first medical review.

c.     A medical review will be convened as soon as practicable.

d.     The quarantined or isolated individual will be notified in writing of the time and place of the medical review.

IV.    CONDUCT OF THE MEDICAL REVIEW:

a.     The medical review will be an administrative, non-adversarial process to afford the quarantined or isolated individual the opportunity to contest the factual, medical, and scientific basis for the quarantine or isolation order.  The medical review will be *de novo*, meaning that the medical reviewer will examine the medical evidence anew.

b.     Individuals quarantined or isolated under 42 C.F.R. § 70.6 (Domestic) will be provided an opportunity to present facts and other evidence, including expert testimony, refuting the Director's reasonable belief or finding that the individual may be infected with a quarantinable disease, including having been exposed to the infectious agent that causes a quarantinable disease and being in the qualifying stage of the quarantinable disease or being infected with a quarantinable disease in its qualifying stage.  Such individuals may also present facts or other evidence refuting the Director's reasonable belief that the individual was moving or about to move from one State to another State or

constituted a probable source of infection to other individuals who would be moving from a State to another State.

c.       Individuals quarantined or isolated under 42 C.F.R. §§ 71.32(a), or 71.33 (Foreign and U.S. Possessions) will be provided an opportunity to present facts and other evidence, including expert testimony, refuting the Director's reasonable belief that the individual may be infected with a quarantinable disease, including having been exposed to the infectious agent that causes a quarantinable disease or being infected with a quarantinable disease.

d.       The quarantined or isolated individual may authorize a representative, such as a doctor, family member, or legal counsel, to submit medical or other evidence on his/her behalf. The quarantined or isolated individual will be permitted legal counsel at his or her own expense, although the issues to be reviewed during the medical review will be limited to facts, medicine, and science, and will not include legal issues.

e.       Prior to the convening of the medical review, the quarantined or isolated individual and the individual's representative will be afforded a reasonable opportunity to review any available records considered by CDC in issuing the quarantine or isolation order.

f.       If the quarantined or isolated individual is an indigent, CDC will appoint a medical representative at no cost to the individual upon request and certification by that individual of his or her indigent status. "Indigent" is defined as an individual whose annual family income is below 150% of the applicable poverty guidelines updated periodically in the *Federal Register* by HHS under the authority of 42 U.S.C. 9902(2) or possesses liquid assets totaling less than 15% of the applicable poverty guidelines if no income is earned. The certification shall consist of a statement signed by the individual in accordance with 28 U.S.C. § 1746 attesting under penalty of perjury to his or her indigent status.

g.       The Director will take reasonable measures to allow an isolated or quarantined individual to communicate with a medical representative in a manner that protects the health and safety of the medical representative.

h.       The medical reviewer will be appointed by the Director and shall be a medical doctor.

i.       The medical reviewer may conduct the medical review through any means as determined in his/her discretion, such as in person, by telephone, or through written correspondence.

j.       The manner in which the review will be conducted is in the sound discretion of the medical reviewer, but will generally proceed in the following order:

2

(I)     The medical reviewer will call the case and identify the parties, counsel (if any), or the medical representative (if any);

(ii)    The quarantined or isolated individual, or his or her counsel or medical representative, may make an opening statement;

(iii)   The medical reviewer may question any witnesses presented on behalf of the quarantined or isolated individual as necessary to ensure disclosure of all relevant and necessary facts and information; and

(iv)    The quarantined or isolated individual, or his counsel or medical representative, may make a closing statement.

k.     The Federal Rules of Evidence will not apply to the medical review.

l.     The medical review may be transcribed by a professional.

m.     The medical reviewer may, in his/her discretion, order a medical examination of the quarantined or isolated individual when, in the medical reviewer's judgment, such an examination would assist in assessing the individual's medical condition.

n.     The medical reviewer will consider and accept into the administrative record any new evidence submitted by either the quarantined or isolated individual or by an agent of the CDC that may be relevant to the medical or scientific issues of quarantine and/or isolation; and that may be relevant to whether less restrictive alternatives would adequately protect public health.

o.     To protect the privacy of the quarantined or isolated individual, the medical review will be closed to the public unless the quarantined or isolated individual requests otherwise. The quarantined or isolated individual's decision as to whether to open the proceeding to the public will be documented in writing.

p.     The medical reviewer will conduct the medical review in such a manner as to protect the health and safety of all participants.

IV.    FINDINGS:

a.     After the completion of the medical review, the medical reviewer will promptly issue a written report that will include a recommendation as to whether, in the medical reviewer's professional judgment, quarantine or isolation should be continued, modified, or rescinded. This recommendation shall be based on the record, and a review of the medical or scientific facts and other evidence presented during the medical review.

b.     The medical reviewer's written report will be promptly submitted to the Director and to the quarantined or isolated individual.

c.     The Director or a designee will promptly review the medical reviewer's report and recommendation and promptly issue a written order continuing, modifying, or rescinding quarantine or isolation. This written order will not constitute final agency

3

action until it is served upon the individual under quarantine or isolation, or in circumstances where the Director finds that individual service would be contrary to the public interest, it is posted or published.

V.     SUSPENSION OR MODIFICATION:  In the event of a public health emergency the Director, with the concurrence of the Secretary, may suspend or modify any or all of these procedures, commensurate with the circumstances of the emergency, provided that the Director or Secretary finds that adherence to such procedures would be contrary to the public interest.

4

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR DISEASE CONTROL AND PREVENTION**

**ORDER PURSUANT TO SECTION 361
OF THE PUBLIC HEALTH SERVICE ACT
RESCINDING [QUARANTINE] [ISOLATION] [CONDITIONAL
RELEASE] (FOREIGN AND POSSESSIONS)**

On *(date)*, CDC served *(insert patient name)*, with an order for *[quarantine] [isolation] [conditional release]* because the patient was reasonably believed to be *[infected with a quarantinable disease, including having been exposed to the infectious agent that causes a quarantinable disease] [infected with a quarantinable disease]*. Public health restrictions, including *[quarantine] [isolation] [conditional release]*, were put into place and authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 C.F.R. § *[71.32 (quarantine) 71.33 (isolation) 71.33 (public health observation)]*.

This order was necessary and appropriate to protect the public's health from a dangerous communicable disease. *[Insert a sentence explaining resolution, e.g., patient is under treatment, patient is being managed appropriately by local health department, patient is under a state/local isolation order sufficient to protect public health., patient is not infected, patient is no longer infected or capable of infecting others]*.

Accordingly, I **ORDER**, that the *(insert date of order)*, order of *[quarantine] [isolation] [conditional release]* be **RESCINDED**.

_____
Name & Title of Authorizing Official

_____
*(Signature of Authorizing Official)*

_____
Date

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**CENTERS FOR DISEASE CONTROL AND PREVENTION**

**ORDER PURSUANT TO SECTION 361**
**OF THE PUBLIC HEALTH SERVICE ACT**
**RESCINDING *[QUARANTINE] [ISOLATION] [CONDITIONAL***
***RELEASE] (FOREIGN AND POSSESSIONS)***

On *(date)*, CDC served *(insert patient name)*, with an order for *[quarantine] [isolation]*
*[conditional release]* because the patient was reasonably believed to be *[infected with a*
*quarantinable disease, including having been exposed to the infectious agent that causes*
*a quarantinable disease] [infected with a quarantinable disease]*. Public health
restrictions, including *[quarantine] [isolation] [conditional release]*, were put into place
and authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. §
264) and 42 C.F.R. § *[71.32 (quarantine) 71.33 (isolation) 71.33 (public health*
*observation)]*.

This order was necessary and appropriate to protect the public's health from a dangerous
communicable disease. *[Insert a sentence explaining resolution, e.g., patient is under*
*treatment, patient is being managed appropriately by local health department, patient is*
*under a state/local isolation order sufficient to protect public health., patient is not*
*infected, patient is no longer infected or capable of infecting others]*.

Accordingly, I **ORDER**, that the *(insert date of order)*, order of *[quarantine] [isolation]*
*[conditional release]* be **RESCINDED**.

_____
Name & Title of Authorizing Official

_____
*(Signature of Authorizing Official)*

_____
Date

**DEPARTMENT OF HEALTH AND HUMAN SERVICES
CENTERS FOR DISEASE CONTROL AND PREVENTION**

**ORDER PURSUANT TO SECTION 361
OF THE PUBLIC HEALTH SERVICE ACT**

(Isolation Order – Foreign and U.S. Possessions)

SECTION A: SUBJECT INFORMATION

Name:
DOB:
Port of Entry:
Date/Time of Arrival:
Travel Document or other ID #:
Contact information:
    Address while in the United States: _____

    Phone: _____

SECTION B: FINDINGS

Based upon the medical declaration, attached hereto and incorporated by reference, I make the following findings and conclusions:

1.    CDC reasonably believes that you are infected with the infectious agent that causes] [insert *the applicable quarantinable disease*]. *[Insert disease]* is a quarantinable disease in the United States of America.

2.    Public health restrictions, including isolation, are authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR §§ 71.32 and 33 Isolation is supported by the facts set forth in the medical declaration, which is attached hereto and incorporated by reference

3.    *[If further medical examination or testing is ordered add the following, if not delete paragraph:]* Medical examination and/or testing are supported by the facts set forth in the medical declaration, which is attached hereto and incorporated by reference.

4.    Based on these reasonable beliefs, I HEREBY ORDER THAT YOU REMAIN IN ISOLATION.

5.    This order shall take effect immediately and continue until CDC finds that you are no longer infected or capable of infecting others.

6.    *[Add other findings here if relevant, if not, delete this paragraph]*

## SECTION C: PLACE OF ISOLATION AND MEDICAL EXAMINATION

Place of Isolation and Medical Examination:
Street Address:
City/State/Zip:
Phone number:

## SECTION D: REQUIREMENTS

1.      *[Add if further medical examination or testing may be necessary, otherwise delete this paragraph]* You shall undergo such medical examination and testing as necessary to ascertain your health status currently and throughout the duration of your isolation.

2.      You shall take precautions, as directed by medical staff and CDC personnel, to prevent the spread of the disease to others.

3.      You shall provide information to CDC and cooperate with efforts of federal and state or local authorities to contact possibly exposed persons as may be necessary to determine the presence or extent of infection, including but not limited to information regarding people you had contact with, places you visited or worked at, and your medical history.

4.      *[Add other requirements consistent with regulations here, otherwise delete this paragraph].*

## SECTION E: NOTICE

1.      **Legal Authority:** CDC has ordered that you isolated because CDC *[reasonably believes that you are infected with a quarantinable disease, including having been exposed to the infectious agent that causes such quarantinable disease, and are in the qualifying stage of the quarantinable disease] [reasonably believes that you are infected with a quarantinable disease].* Isolation is authorized pursuant to section 361 of the Public Health Service Act (42 U.S.C. § 264) and 42 CFR §§ 71.32(a) and 33. *[CDC may also direct that you undergo medical examination and testing as necessary.]*

2.      *[Add if further medical examination or testing may be necessary, otherwise delete:]* **Medical Examination:** Any medical examinations conducted pursuant to this order will be preformed by licensed health care staff that will have primary responsibility for your clinical care. CDC will provide input and consultation to health staff on issues relating to the diagnosis, management, and methods for preventing the transmission of communicable diseases.

3.      **Duration of Isolation:** CDC has ordered that you remain in isolation until CDC finds that you are no longer infected or capable of infecting others. You will be immediately released from isolation once CDC makes these findings.

4.    **Automatic 72-Hour Reassessment:** CDC will reassess this order no later than 72 hours after you have been served with this order.  CDC will review all the records considered by CDC in issuing this order, including any medical records or other records that may indicated infection which have been provided by you or another individual on your behalf, and any new information obtained since the isolation order was issued.  At that time, CDC will also consider whether less restrictive alternatives would adequately protect the public health.  At the completion of the reassessment, CDC will issue a written order directing that the isolation be continued, modified, or rescinded.

5.    **Medical Review.**  If at the completion of the reassessment, CDC orders that you remain in isolation, you may request a medical review while you are still isolation. The medical review is not automatic; you must specifically request a medical review by calling the phone number listed on this Order.  If you request a medical review, CDC will arrange for the medical review to occur as soon as practicable.  During the medical review, you may present medical facts or other evidence before a medical reviewer (i.e., a medical doctor with specialized knowledge of quarantinable diseases) to refute CDC's reasonable belief that you are infected with a communicable disease for which federal isolation or quarantine is authorized.  CDC will appoint a medical representative to assist you with the medical review if you are indigent[1] and request appointment of a medical representative.

6.    **Health Monitoring.** CDC will remain apprised of your health condition so that the time that you remain in isolation will not last longer than necessary to prevent the potential spread of the quarantinable disease.  During the time you are in isolation you must cooperate with the instructions of health-care staff and other authorized personnel.

7.    **Penalties for Violating this Order.**  You must comply with the requirements listed in this order to protect your health, the health of those with whom you may have come into contact, and the public's health.  Violations of this order may subject you to a fine of no more than $250,000 and/or one year in jail, as authorized by 42 U.S.C. § 271; 18 U.S.C. §§ 3559, 3571; and under 42 C.F.R. § 71.2 or as otherwise provided by federal law.

8.    **Whom to Call About this Order.**  If you have any questions regarding this Order you should call CDC's Emergency Operations Center at (770) 488-7100 and ask to speak to an official in the Quarantine and Border Health Services Branch of the Division of Global Migrations and Quarantine.

## SECTION F: AUTHORIZING OFFICIAL

---

[1] "indigent" means an individual whose annual family income is below 150% of the applicable poverty guidelines updated periodically in the Federal Register by HHS under the authority of 42 U.S.C. 9902(2) or possesses liquid assets totaling less than 15% of the applicable poverty guidelines if no income is earned.

_____

[Printed Name & Title of Authorizing Official]

_____

Signature

_____

Date

---

**NOTICE TO U.S. CUSTOMS OFFICERS, U.S. COAST GUARD OFFICERS OR OTHER FEDERAL, STATE AND LOCAL LAW ENFORCEMENT OFFICIALS:**

Under 42 U.S.C. § 268. U.S. Customs and U.S. Coast Guard Officers are required to aid in the enforcement of federal quarantine rules and regulations. Under 42 U.S.C. § 243. the U.S. Department of Health and Human Services is authorized to cooperate with and aid State and local authorities in the enforcement of their quarantine and other health regulations and to accept state and local assistance in the enforcement of federal quarantine rules and regulations.

Violation of this order, in whole or in part, as well as other federal quarantine rules and regulations, constitutes a criminal misdemeanor, punishable by a fine and/or imprisonment pursuant to federal law, including 42 U.S.C. § 271 and 18 U.S.C. §§ 3559 and 3571, as may be amended from time to time.