DR. ORLY TAITZ, ESQ

29839 SANTA MARGARITA, STE 100

RANCHO SANTA MARGARITA, CA 92688

PH 949-683-5411 FAX 949-766-7687



US DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

TAITZ,                )        Case # 14-cv-00119

V                     )        HONORABLE ANDREW S. HANEN PRESIDING

JOHNSON, ET AL   )

# OPPOSITION TO DEFENDANTS MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT.

# MOTION FOR SUMMARY JUDGMENT FOR PLAINTIFF

# SUMMARY

This court already denied the defendant's motion to dismiss and should not allow a second motion. Additionally, the defendants sent the plaintiff a letter where defendants sought to schedule depositions. See exhibit 1, letter from the plaintiffs. As Taitz was awaiting for the plaintiffs to advise her of dates of depositions, they

suddenly filed a motion to dismiss or in alternative for Summary Judgment. If the plaintiffs believed that Summary Judgment is warranted, they would not be writing to the plaintiff seeking to schedule depositions. Based on their own letter they did not have sufficient evidentiary matter for the motion for Summary Judgment and for that reason they sought depositions. The plaintiff has proven and the defendants did not disprove the fact that she is a doctor working with immigrants and is exposed to infectious diseases. Plaintiffs did not contradict the findings of their own Inspector General and Border Patrol that they transported from Texas to California illegal aliens with infectious diseases. The plaintiffs did not disprove the testimony of the epidemiologist, Dr. Vera Dolan Exhibit 2 , stating that Taitz is at risk of contracting an infectious disease from one of these patients. As such, Taitz has proven that she is in imminent danger of contracting an infectious disease and a requested relief of quarantine and medical release and certification of no infectious diseases prior to the release of individuals from DHS and HHS custody is warranted.

## PLAINTIFF DID NOT GET ECF NOTIFICATION, SECOND INCIDENT OF TAMPERING WITH THE ELECTRONIC RECORD

Plaintiff did not receive a notification of the defendants' Motion to Dismiss. She received a notification from a mailing. Plaintiff is requesting the court to investigate why wasn't the ECF notification sent to her.

## DEFENSE FAILED TO PROVE THAT THERE IS NO LEGITIMATE TRIABLE ISSUE OF FACT AND LAW AS REQUIRED FOR RULE 56 MOTION, WHICH SHOULD BE DENIED

The Court's analysis on Article III standing from its July Opinion fully addressed causation and redressability for Article III purposes. The July Opinion set forth three prudential limitations on standing, including the requirement that a party (1) assert his own legal rights and interests, without (2) asking the courts to adjudicate "generalized grievances," and with claims that (3) fall within the "zone of interests" to be protected and regulated by the statute or constitutional guarantee in question. ECF No. 69 at 11. The court found that Taitz has injury in fact. The court did not expand on the zone of interests and its' motion for

summary judgment the defense claimed that Taitz did not specify the immigration statute where she will be within the zone of interest.

In reality in her First Amended Complaint Taitz precisely identified the immigration statute where Taitz is in the zone of interest (FEC 40, p23): 8USC §§1225, 8USC §§1182

8 U.S.C. §§ 1225 (inspection of aliens and expedited removal)
(A) Screening

In general If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182 (a)(6)(C) or 1182 @l(11 of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

8 U.S. Code§ 1182-Inadmissible aliens

(a) Classes of aliens ineligible for visas or admission
Except as otherwise provided in this chapter, aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States:

(1) Health-related grounds

(A) In general

Any alien-

(i) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to have a communicable disease of public health significance;

(ii) except as provided in subparagraph (C), who seeks admission as an immigrant, or who seeks adjustment of status to the status of an alien lawfully admitted for permanent residence, and who has failed to present documentation of having received vaccination against vaccine-preventable diseases, which shall include at least the following diseases: mumps, measles, rubella, polio, tetanus and diphtheria toxoids, pertussis, influenza type B and hepatitis B, and any other vaccinations against vaccine-preventable diseases recommended by the Advisory Committee for Immunization Practices,

**(iii) who is determined (in accordance with regulations prescribed by the Secretary of**
**Health and Human Services in consultation with the Attorney General)-**

**(I) to have a physical or mental disorder and behavior associated with the disorder that may pose, or has posed, a threat to the property, safety, or welfare of the alien or others,** or

(II) to have had a physical or mental disorder and a history of behavior associated with the disorder, which behavior has posed a threat to the property, safety, or welfare of the alien or others and which behavior is likely to recur or to lead to other harmful behavior, or

(iv) who is determined (in accordance with regulations prescribed by the Secretary of Health and Human Services) to be a drug abuser or addict,

**is inadmissible.**

In clear violation of 8 USC 1182 and based on admissions by the INS, HHS and BP representatives, who testified during 08.27.2014 hearing in the case at hand, defendants violated 8 USC§1182 and did not turn around and admitted reported 290,000 illegal aliens who either had communicable diseases, who had no records of any vaccinations, ones who had mental disorders, ones who were drug abusers and ones who were all of the above.

Based on August 27, 2014 sworn testimony of Teresa M. Brooks, Supervisory Field Program Specialist- South Texas, Division of Children's Services, Office of Refugee Resettlement, Administration of Children and Families, U.S. Department of Health and Human Services, there are only two medical doctors supervising 90 detention facilities. Each facility has between 35 to 200 detainees. Two medical doctors are located in Washington DC, while the detainees are mostly in Texas. This makes a ratio of 1 doctor to some 5,000 detainees, while average ratio in the U.S. is one doctor to 400 people. Insufficient number of doctors led to trafficking of illegal aliens with infectious diseases.

Kevin Oaks, Chief, Rio Grande Valley Sector, Border Patrol, U.S. Customs and Border Protection testified that he signed releases for detainees attesting that they are healthy, however he admitted on the stand that he did not even know what incubation period is. (Transcript of August 27, 2014 hearing Taitz v Johnson.). Recent decision in Flores v Reno 85-cv-4544 USDC Central District

of CA, directs DHS and HHS to release all illegal immigrant minors and their parents immediately, so at this point there is not only a severe shortage of doctors, but also no time to examine the detainees, so they are all released into general population without checks or treatment for infectious diseases and doctors who are working with immigrants are at heightened risk for exposure to contagious diseases of public significance.

Dr. Taitz is a doctor-provider for immigrants through federal Medicare/Medicaid program administered in the state of California by Medical/Dentical program, through which illegal aliens receive health care.

"Medi-Cal Eligibility and Covered California - Frequently Asked Questions

http://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Medi-CaIFAQs2014b.aspx#1" shows that the illegal aliens are offered and encouraged to receive free medical and dental care at the expense of the U.S. tax payers:

Back to Medi-Cal FAQs 2014

Below you will find the most frequently asked questions for current and potential Medi-Cal coverage recipients. If you do not find an answer to your question, please contact your local county office from our County Listings page or email us at Medi-Cal Contact Us.

*Citizenship/Immigration*
1. What eligibility requirements will an undocumented person have to meet come 2014?

An undocumented person must meet the same eligibility requirements as any other beneficiary such as income limits and California residency in 2014.

2. Does everyone on the application have to be a U.S. citizen or U.S. national?

No. You may qualify for health insurance through Medi-Cal even if you are not a U.S. citizen or a U.S. national.

3. Will I qualify for health insurance if I am not a citizen or do not have satisfactory immigration status?

Anyone who lives in California can apply for health insurance using this application. Only people who are applying must provide Social Security numbers or information about immigration status.

But you may qualify for certain health insurance programs regardless of your immigration status and even if you do not have a Social Security number.

We keep your information private and only share information with other government agencies to see which programs you qualify for. "http://www.dhcs.ca.gov/services/medi-cal/eligibility/Pages/Medi-CaiFAQs2014b.aspx#1 Exhibit 7, Printout from online Dentical/Medical directory showing Dr. Orly Taitz as a provider

Plaintiffs seemed to question that Taitz is treating illegal aliens. Taitz provides herein under seal exhibit 3, files of an immigrant, Ismael A., a refugee from Syria, who was enrolled in MediCal, (Medicare federal program managed by the State of California,) and referred by MediCal to Dr. Taitz for treatment. This particular patient advised Taitz of his status, others do not. Additionally, Taitz provides under seal files of recent 16 year old immigrant from Iran Ramina B, who was referred to Taitz through the same program. Exhibit 4-under seal. Further, she provides under seal Exhibit 5 the file of Miriam M, recent 11 year old refugee. Additionally, multiple individuals show up in Taitz's office with forms in Spanish: "Requisito de evalucion de salud dental para ingreso escolar". (Exhibit 6) Typically immigrants released by DHS and HHS show up with those forms. Neither the children, nor the parents speak English when they provide those forms. Taitz, also, provided with her FAC as exhibits, a report of the IG of DHS stating that multiple detainees have

Tuberculosis and other contagious diseases and a press release from the Border Patrol union attesting that individuals with contagious diseases were transported from Texas to California. So, Taitz, who is a doctor-provider for immigrants placed in the above mentioned program, is at heightened risk of infection and is in the "zone of interests".

## ARBITRARY GUIDELINES WERE NOT SUFFICIENT TO IDENTIFY SOURCE OF INFECTION

First of all, typically a plaintiff can review defendants' records to verify that what defendants claim is correct. Here, the plaintiff does not have any opportunity to review the defendants' records and is told to simply take the plaintiffs' word as truth. Even if the plaintiff were to believe the defendants' word that they do not have any records, it is still irrelevant for injunction. Firstly, the records were requested only for a short period. The plaintiff could have been infected before this arbitrary period chosen by the court. As an example, Tuberculosis has a two months incubation period and it takes two months to grow a culture of TB bacteria, so an arbitrary period of three weeks of records prior to filing of the case is not sufficient to ascertain infection. Further, based on the exhibits attached to the defendants Motion to Dismiss, DHS and HHS keep track of all medical visits of the immigrants, as, for example, they stated that an immigrant with a matching name did not have a record of dental visits. So, the best way to ascertain the

magnitude of the problem and utilizing the records in DHS and HHS possession, is for the court to request the records of all the immigrants who were transported to California and who had medical/dental appointments, particularly appointments through federal Medicare/ Medicaid program administered through MediCal in 2014-2015. The court will see that there are thousands of such individuals and, as such, Taitz as a doctor-provider is indeed in the zone of danger as required for proximate cause and she is in the "zone of interest" per aforementioned statute.

## THE PRECEDENT CASE OF NORTHWEST FOREST WORKERS ASS'N V. LYNG CONFIRMS THAT TAITZ IS INDEED IN THE ZONE OF INTEREST

In their motion to dismiss or alternatively for summary judgment defendants argue that only the immigrants and their family members are in the zone of danger under immigration statutes. NORTHWEST FOREST WORKERS ASS'N V. LYNG UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA.APRIL 25, 1988, 688 F.SUPP. 1 clearly shows that the Supreme Court of the United States finds standing for individuals challenging immigration decisions based on a threat of injury, not injury, which already occurred.

*N. W Forest Workers Ass 'n,* **688** F. Supp. at **3** n.2 (holding that nonprofit organization

**"concerned with the economic, environmental and demographic effects of immigration" had standing to challenge immigration regulations on the ground that the regulations improperly expanded the scope of a guest worker program".**

Further, this court's decision in Texas v US is a precedent that shows that Taitz is in the zone of interest and has prudential standing. Immigration laws and DAPA and DACA executive orders were not specifically enacted in order to force the states to provide subsidized drivers licenses to illegal aliens, however the side effect of immigration executive orders was the fact that twenty seven states would have to provide subsidized drivers licensees. Similarly, the 8USC §§1225, 8USC §§1182 stating that aliens with contagious diseases of public significance are inadmissible, were not inacted so Dr. Orly Taitz personally will not be in imminent risk of contamination, however it is inferred that somebody like Dr. Taitz, who is a doctor working with immigrants in the border state will be in the zone of imminent danger if aliens with contagious diseases are admitted.

**In Texas v. U.S. United States District Court, S.D. Texas, Brownsville Division. February 16, 2015 86 F.Supp.3d 591 2015 WL 648579 CIV. B-14-254 this court found:**

"...States sufficiently alleged that they came within zone of interests to be protected by the immigration statutes at issue, as required for prudential standing in action seeking injunctive relief against United States and officials of Department of Homeland Security (DHS), to prevent implementation, pursuant to directive from DHS Secretary, of program of Deferred Action for Parents of Americans and Lawful Permanent Residents (DAPA), which would provide legal presence for illegal immigrants who were parents of citizens or lawful permanent residents; States alleged that DAPA program undermined Immigration and Nationality Act (INA)... "

"... Second, Plaintiffs' claims come within the "zone of interests " to be protected by the immigration statutes at issue in this litigation.... "

"... This Court also finds that Texas' claim has satisfied the requirements of prudential standing: Plaintiffs' suit is not merely a generalized grievance, the Plaintiffs' fall within the "zone of interest "

pertaining to the immigration statutes at issue, and Plaintiffs' suit is not based merely on the interests of third-parties.... "

So, based on this precedent, Taitz is in the zone of danger and the requested injunction is warranted.

# FOR INJUNCTION THE PLAINTIFF DOES NOT NEED TO PROVE PRIOR INFECTION, SHE NEEDS TO SHOW THAT SHE IS IN DANGER OF INFECTION AND SHE HAS PROVEN IT

**In another case originating from the Fifth Circuit: Oceanic Steam Nav. Co. v. Stranahan Supreme Court of the United States June 01, 1909 214 U.S. 320 29 S.Ct. 671 509**
Supreme court wrote: "...The express prohibition against bringing into the United States alien immigrants afflicted with 'loathsome or dangerous contagious diseases,' which the section contains, is so apparent, and the power to enact the prohibition so obvious, that we dismiss these subjects from further consideration"

Further, for injunction the plaintiff does not need to show that she was infected from a specific patient. She had to show that she is in danger of infection and she has proven it. Plaintiff has shown that according to Inspector General of DHS, there are multiple illegal immigrants with Tuberculosis and other infectious diseases in DHS custody. Plaintiff provided the court with the letter from the president of the local border patrol union stating that individuals with contagious diseases were transported to California from Texas by the DHS. Taitz has shown that she is a doctor provider with Medical/Dentical program working with immigrants and as such on a daily basis she is exposed to infectious diseases through close contact with aforementioned immigrant patients

Dr. Taitz provided proof of infections of illegal aliens and she proved that illegal aliens with infectious diseases were transported from Texas to California

In their motion for summary judgment Defense writes: "Taitz claims that the government transported infected individuals to California". However, this is not a claim, but a fact. Taitz provided the letter from the president of the local Border Patrol Officers union attesting to the fact that the government indeed transported infected individuals to California from Texas and this was one of the reasons and basis for this court to allow discovery and production of records.

Taitz provided this court with a statement from Dr. Heinrich, a local Ear Nose and Throat surgeon, who, together with his staff of nurses was infected from an illegal alien patient with drug resistant tuberculosis.

Taitz has provided the court with an affidavit of Expert-Epidemiologist, Vera Dolan, attesting that Taitz is in imminent danger of infection:

"Plaintiff sought a consultation with an expert in epidemiology, Vera Dolan, a graduate of John Hopkins University and University of North Carolina at Chapel Hill, Master of Science in Public Health (MSPH) in Epidemiology and received the following decision from the epidemiologist :"As an epidemiologist, I believe that Dr. Taitz's respiratory infection originated from close contact with infected patients who were sent for treatment to her office, in particular immigrants who were detained by the DHS without quarantine or medical treatment for existing communicable diseases and then transported to California. I believe

that Dr. Taitz is in further imminent danger of similar additional infections from immigrant patients detained by the DHS without quarantine or medical treatment for existing communicable diseases. I believe that quarantine and isolation of these detainees by the DHS to the most stringent current standard of the Centers of Disease Control (CDC) for foreign nationals, examination of each detainee by a trained medical professional to the highest current standard of the CDC for foreign nationals, and a signed medical release prior to transportation and release of each of these detainees into the general public, would solve the problem of the imminent risk of contracting communicable diseases from such detainees by Dr. Taitz and other health care providers who are participating in these programs. I declare that my assessments are true and correct based on my current knowledge and informed consent." (FAC Exhibit1, Statement from an epidemiology expert Vera Dolan).

Taitz had to go for repeated chest x-rays. She was referred by both her internist and pulmonologist (lung specialist) for repeat chest x-rays, as she is in close contact with immigrants, who were referred to her office through Medical/Dentical program. Additionally, this court has received a sworn affidavit and over three hours of testimony from an expert-epidemiologist, Vera Dolan, who attested to the fact that Taitz is in high risk category for contracting infectious diseases from those immigrant patients. So, at the moment there is an opinion of two doctors directly treating Taitz, who believed that she is in danger of contracting Tuberculosis and other respiratory diseases and due to her repeated respiratory infections and proximity to those immigrants, an opinion of the epidemiologist and a statement

from a fellow doctor working nearby, who was infected, all show that Taitz is in real and immediate threat of injury, of contracting an infectious disease. The state never negated this fact. Taitz does not need to be already infected with Tuberculosis, she only needs to show that she is in imminent risk, which necessitates injunctive relief. Requested injunctive relief of requesting that the detainees be checked by a medical doctor and get a medical release showing that they do not have infectious diseases will alleviate the risk, will take away the need to have repeated chest x-rays and doctors visits and will alleviate the emotional distress associated with knowing that she is in danger of contracting dangerous and deadly infectious diseases. The plaintiff established the required risk of future harm and she established that the required relief will redress her injuries.

As a matter of fact, the risk for Taitz went up since the case was filed, Judge Dolly Ge in the Central District of California made a ruling in a 30 year old case, which was supposed to be closed decades ago. This case, started as Flores v Meese on July 11, 1985, during Reagan administration, and later continued as Flores v Ashcroft and Flores v Reno 2:85-cv-04544-DMG-AGR, sought to allow illegal alien minors in DHS detention centers to be released on bail to non-parents. Judge Ge's recently re-opened this dormant 30 year old case and ordered release of all illegal alien minors from all DHS and HHS detention centers. On

top of that she ordered release of all adults, who illegally crossed the US border and travelling with those illegal alien minors.

When the courts like the court in Flores v Reno or the government, as it happened recently in Germany, encourage illegal immigration, there is a flood of infectious diseases. Similarly, recently, Chanceller Angela Merkel announced that she will allow all migrants from the Middle East and Northern Africa. This created an imminent risk for the doctors and nurses who work with immigrants.

Here is an account from a medical doctor in Munich, Germany:

" Relations between the staff and migrants are going from bad to worse. Since last weekend, migrants going to the hospitals must be accompanied by police with K-9 units.

Many migrants have AIDS, syphilis, open TB and many exotic diseases that we, in Europe, do not know how to treat them." "For now, the local hospital staff has not come down with the diseases they brought here, but, with so many hundreds of patients every day – this is just a question of time". "In a hospital near the Rhine, migrants attacked the staff with knives after they had handed over an 8-month-old on the brink of death, which they had dragged across half of Europe for three months. The child died in two days, despite having received top care at one of the best pediatric clinics in Germany. The physician had to undergo surgery and two nurses are laid up in the ICU. Nobody has been punished. The local press is forbidden to write about it, so we know about it through email. What would have happened to a German if he had stabbed a doctor and nurses with a knife? Or if he had flung his own syphilis-infected urine into a nurse's face and so threatened her with infection? At a minimum he'd go straight to jail and later to court. With these people – so far, nothing has happened. And so I ask, where are all those greeters and receivers from the train stations? Sitting pretty at home, enjoying their non-profits and looking forward to more trains and their next batch of cash from acting like greeters at the stations. If it were up to me I would round up all these greeters and bring them here first to our hospital's emergency ward, as attendants. Then, into one building with the migrants so they can look after them there themselves, without armed police, without police dogs who today are in every hospital here in Bavaria, and without medical help." http://pamelageller.com/2015/10/video-czech-doctor-describes-migrant-hospital-invasion.html/#sthash.SpV2FFzv.dpuf

"Cholera has broken out in Syria, with one child having already died after contracting the disease – and the outbreak could constitute an international threat.

The break-out, which follows one in Iraq, could spread rapidly, according to Dr Ahmad Tarakji, president of the Syrian American Medical Society (Sams), the largest medical NGO still working in Syria.

Speaking to *The Independent*, Dr Tarakji said that Syria's already crippled medical infrastructure, and the lack of access available to aid agencies, meant the disease could spread quickly, both inside the country and across borders.
"It spreads so easily. People are being displaced inside and outside, people are going to Europe," he said. http://www.independent.co.uk/life-style/health-and-families/health-news/syria-cholera-outbreak-sparks-fears-of-international-threat-a6708436.html

> http://www.modernreaders.com/alarming-cholera-scurvy-and-tb-resurgence-in-great-britain/36531/ed-jones

**"A special migrant train running from Austria to Germany was intercepted by Federal Police in Munich earlier this week, after authorities were alerted to a passenger with a severe case of tuberculosis.**
The train carrying the passenger with tuberculosis was running from Freilassing on the Austrian border to its destination of Berlin when its journey was interrupted in Munich, reports German newspaper the *Süddeutsche Zeitung*.
Federal Police in Munich have revealed the train was stopped at Munich-Pasing train station in the early hours of Tuesday morning. Authorities had been tipped off by migrant support workers that one of the 150 passengers had a severe cough which could represent a contagious lung disease.The man, who had been given a surgical mask on the train, was removed for safety reasons and transferred to hospital. There it was confirmed that he was suffering from open tuberculosis.In the confusion surrounding the ongoing migrant crisis it is unclear where the man, whose nationality is unknown, was infected. German authorities are now trying to reconstruct his journey and clarify with whom he had contact. Relatively rare in Germany, tuberculosis is caught by the inhalation of infected droplet nuclei often spread by coughs and sneezes and can be fatal if left untreated. In Asian and African countries the disease is widespread. The World Health Organisation (WHO) says that although treatable with extensive use of antibiotics, of the nine million or so cases reported globally each year around 1.4 million sufferers die from the consequences.Tuberculosis used to be relatively common in Western European countries but health authorities had successfully limited its impact. In recent years it has seen something of a resurgence". http://www.breitbart.com/london/2015/12/31/police-intercept-migrant-train-tuberculosis-scare/

**"DENMARK: Unvaccinated Migrants Are Bringing in Diphtheria, Malaria, Tuberculosis**

**Danish authorities announced this week that the third world migrants have brought deadly Diphtheria into the country.**

**Diphtheria was last seen in Denmark 20 years ago.**

**The migrants are also bringing Tuberculosis and Malaria into Denmark.**
The Local reported:

Danish hospitals have been warned by authorities to be on the lookout for diphtheria, an illness that hasn't been seen in Denmark for nearly 20 years but may have returned with asylum seekers.

The Danish State Serum Institute (SSI) said on Tuesday that diphtheria was found in two Libyan refugees.

"The infection can be very dangerous if one isn't vaccinated against it. The dangerous type is very rare and we last saw it in Denmark in 1998," SSI spokesman Kurt Fuursted told Metroxpress.

SSI has warned Danish hospitals about the possible return of diphtheria and Metroxpress reported that asylum seekers have also been found to carry tuberculosis and malaria.

Unlike some European countries, Denmark does not screen arriving refugees for illnesses but Fuursted said that policy might change."

So, the decision by Angela Merkel brought epidemics of infectious diseases of pubic significance to Germany and Europe as a whole. Similarly the decision of Judge Ge in Flores v Reno created a stampede of illegal alien minors, over 10,000 crossed the border recently, particularly crossing in this jurisdiction, in Brownsville-Laredo area and a large number of them carry infectious diseases of public significance. So, the required injunction in this case will not be a situation where a court sets aside the decision by the Secretary of DHS, and somehow violates 8USC 1226(a), but rather be a minor modification of the court decision and precedent in Flores v Reno, whereby prior to the expedited release of detainees as required in Flores, the detainees will be checked by a medical doctor and will get a medical release stating that they do not carry infectious diseases and will not infect others. Ones, who carry infectious diseases, will be kept in detention until they are cured and non-contagious.

## TAITZ SATISFIED REQUIREMENTS FOR THE INJUNCTION

For the injunction Taitz does not need to prove that she was infected from a specific patient, she only needs to show that she is subject to imminent danger

1. Monetary relief will not provide relief.

This case deals with exposure to infectious diseases. It is the matter of health and monetary relief would not suffice.

2. Balance of hardships points in favor of the plaintiff

The plaintiff have shown a hardship of being constantly exposed to contagious diseases. The government did not show any hardship in keeping detainees in quarantine in detention until a doctor signs a release that these individuals do not have contagious diseases and will not infect doctors, who work with immigrants, like Taitz, as well as others. If anything, the government will benefit from this injunction, as the government will save millions of dollars that it will not need to spend on containing and treating epidemics of infectious diseases.

3. Plaintiff will suffer undue hardship if the injunctive relief is not granted.

Plaintiff will suffer from an undue hardship of being constantly exposed to infectious diseases as fully described above.

4. Injunction is in public interest

The injunction is in public interest as with this injunction the public at large is protected from infectious diseases.

Injunction requirements were satisfied.

## CONCLUSION

Based on all of the above Defense Motion to Dismiss or in the alternative Motion for Summary Judgment should be denied, Plaintiff's motion for Summary Judgment for injunctive relief should be granted.

Respectfully submitted:

/s/ Dr. Orly Taitz, ESQ

02.04.16

Certificate of service

I, Lila Dubert, certify that I served the defendants with attached pleadings by certified mail on 02.04.16

_____

Lila Dubert